AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Ashleigh L. Blaylock

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) Case No. 10-[_____] ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS TO CONTINUE THEIR EXISTING CASH MANAGEMENT SYSTEM,
BANK ACCOUNTS AND BUSINESS FORMS, (B) GRANTING POSTPETITION
INTERCOMPANY CLAIMS ADMINISTRATIVE EXPENSE PRIORITY AND
(C) AUTHORIZING CONTINUED INTERCOMPANY TRANSACTIONS**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") seek

entry of an order, substantially in the form attached hereto as Exhibit A (the "***Order***"),

(a) authorizing the Debtors to continue using their existing cash management system, bank

accounts and business forms, (b) granting postpetition intercompany claims administrative

expense priority and (c) authorizing the Debtors to continue intercompany transactions in

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766); and 0887729 B.C. Ltd. (1345).

accordance with the ordinary course of business and historical practices. In support of this motion, the Debtors submit the Declaration of Jeffrey W. Epstein, Chief Executive Officer of TerreStar Networks Inc., in Support of First Day Pleadings (the "***First Day Declaration***"). In further support of this motion, the Debtors respectfully state as follows:

## Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The bases for the relief requested herein are sections 345, 363, 364, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## Background

4.       On October 19, 2010 (the "***Petition Date***"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.       Contemporaneously with the filing of this motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of TerreStar Networks Inc. ("***TSN***"). A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the First Day Declaration, which is being filed contemporaneously with this motion.

**Basis for Relief**

**A.    The Debtors' Existing Cash Management System**

6.    In the ordinary course of business, and as is common with businesses of this kind, the Debtors maintain an integrated cash management system that provides well-established mechanisms for the collection, management, disbursement and investment of funds used in their operations (the "***Cash Management System***").  Such a system provides numerous benefits, including the ability to: (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control corporate funds; (b) ensure cash availability; and (c) reduce administrative costs by facilitating the efficient movement of funds.

7.    As of the Petition Date, the Cash Management System included various bank accounts (collectively, the "***Bank Accounts***") with SunTrust Bank, HSBC Bank Canada, TD Canada Trust and Royal Bank of Canada, (collectively, the "***Banks***") used in the ordinary course of the Debtors' business.  The Debtors utilize a number of methods for disbursing funds, including (a) automatic clearing house transfer ("***ACH Transfer***"); (b) debit; (c) wire transfer; and (d) written check.[2]  The Debtors' primary operating accounts in the Cash Management System are described below.  To supplement that description, each of the Bank Accounts maintained by the Debtors (with the name and contact information of the corresponding Bank) is listed on **Exhibit B** attached hereto.

8.    The Debtors' primary operating accounts are as follows:

---

[2]    The Debtors seldom use checks for payments, however, from time to time certain payments are made by check, including to employees for wages or other compensation not paid in the Debtors' bi-weekly payroll through ADP.

(a) <u>Investment Accounts</u>:  The Debtors maintain one stand-alone investment account in the name of TSN, as well as several Certificate of Deposit accounts at SunTrust Bank.

(b) <u>Disbursement Accounts</u>:  The Debtors pay certain accounts payable, payroll, taxes, and other expenses from various accounts held at SunTrust Bank, HSBC Bank Canada, TD Canada Trust and Royal Bank of Canada (the "***Disbursement Accounts***").  TSN replenishes the Disbursement Account with amounts from the Investment Account as needed.[3]

9.      The Debtors have used their Cash Management System for a number of years, and the Cash Management System has evolved over time into a mainstay of the Debtors' ordinary, usual and essential business practices.  To minimize expenses to the Debtors' estates, avoid delays and facilitate the Debtors' smooth transition into chapter 11, the Debtors seek authority to (a) continue using the existing Cash Management System and Bank Accounts; (b) treat the Bank Accounts for all purposes as accounts for the Debtors as debtors in possession; (c) disburse funds from the Bank Accounts by all usual methods, including written check, wire transfer, debit and ACH Transfer;  and  (d) perform  obligations  under  the  documents  governing  the  Cash Management System and the Bank Accounts, including paying ordinary course bank fees incurred in connection with the Bank Accounts.  The Debtors will ensure that all postpetition transfers and transactions are documented in their books and records to the same extent as before the commencement of their chapter 11 cases and are readily ascertainable from their books and records documenting transfers and transactions.

---

[3]   With respect to TerreStar Networks (Canada) Inc. ("***TSN Canada***"), after TSN receives a request and invoice for operational expenses from TSN Canada, TSN will send funds from its disbursement account to TSN Canada's Royal Bank of Canada account in U.S. dollars.  From that account, the funds are exchanged to Canadian dollars and transferred to TSN Canada's second Royal Bank of Canada account, from which TSN Canada makes its disbursements.

## B. The Debtors' Existing Business Forms and Checks

10. In the ordinary course of business, the Debtors use a variety of business forms, including various check types. Additionally, the Debtors use a variety of correspondence and business forms, including, but not limited to, letterhead, purchase orders and invoices. The Debtors keep a large quantity of the appropriate business forms on hand at each of their offices and facilities. To minimize delay and expenses to their estates and to avoid unnecessarily confusing their employees and trade partners, the Debtors seek authority to continue to use all business forms as such forms were in existence immediately before the Petition Date and without reference to the Debtors' status as debtors in possession, the bankruptcy case name and number, and the type of account, rather than incurring the expense and delay of ordering entirely new business forms immediately. The Debtors will order new business forms with a "Debtor in Possession" designation once their existing stocks are depleted.

## C. The Debtors' Intercompany Transactions and Resulting Intercompany Claims

11. In the ordinary course of business, the Debtors and certain non-Debtor entities utilize a cost allocation system, through which expenses initially paid by a Debtor or a non-Debtor affiliate for the benefit of other Debtors or non-Debtor affiliates are allocated to the appropriate entities in proportion to the benefits received by such entities (the "***Intercompany Transactions***"). As a result of the Intercompany Transactions, intercompany receivables and payables are created in the ordinary course of business (the "***Intercompany Claims***").[4] In

---

[4] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises similar to the Debtors', the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. The continued performance of the ordinary course Intercompany Transactions is integral to ensuring the Debtors' ability to operate their business as debtors in possession.

addition, the Debtors have in the past created notes to evidence the Intercompany Transactions (the "***Intercompany Notes***").  The Debtors also maintain a credit facility (the "***Intercompany Credit Facility***") between TSN and TerreStar Networks (Canada) Inc. which is used to fund operating and other expenses of TerreStar Networks (Canada) Inc.  The Intercompany Transactions are sometimes settled by book entry rather than by an actual transfer of cash and are not always evidenced by Intercompany Notes or through the Intercompany Credit Facility.  The Debtors track all Intercompany Transactions through the methods described above and electronically in their accounting system and can ascertain, trace and account for them as needed. Continuing these Intercompany Transactions and other intercompany services will benefit the Debtors' estates and will preserve the value of the Debtors' ownership interest in their non-filing affiliates.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' detriment.

12.  The Debtors maintain records of all transfers and can ascertain, trace and account for all Intercompany Transactions and will continue to do so during these chapter 11 cases. Accordingly, the Debtors seek authority to continue the Intercompany Transactions and request, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, that postpetition Intercompany Claims resulting from ordinary course Intercompany Transactions be accorded administrative priority.  Discontinuing the Intercompany Transactions would disrupt the Debtors' Cash Management System and related administrative controls to the detriment of the Debtors' estates, their creditors, and other parties in interest.  Indeed, the Intercompany Transactions provide the only mechanism for payment of expenses incurred by those Debtors that do not have bank accounts.  By allowing the Debtors to continue Intercompany Transactions and providing administrative priority to postpetition Intercompany Claims, the Court will ensure

that (a) the Debtors without bank accounts can continue operating, (b) no Debtor or non-Debtor affiliate permanently funds the operations of other Debtors or non-Debtor affiliates and (c) each entity utilizing funds flowing through the Cash Management System continues to bear ultimate repayment responsibility for such ordinary course transactions.

## Relief Requested

13.     By this motion, the Debtors request authority to:   (a) continue (i) using their existing Cash Management System, Bank Accounts and business forms, and paying any related fees as set forth herein; (ii) transferring funds between the Debtors; and (iii) use of electronic debit, wire transfers and automated clearing house payments; (b) grant postpetition Intercompany Claims administrative expense priority pursuant to sections 364, 503(b)(1) and 507(a)(2) of the Bankruptcy Code; and (c) continue their Intercompany Transactions in the ordinary course of business and in accordance with historical practices, subject to the limitations contained in the Debtors' postpetition debtor-in-possession financing facility.  The Debtors also request that the Order be entered on an interim basis, and, in the absence of objections to the interim relief granted, become final on the date specified in the Order.

## Supporting Authority

**A.      The Continued Use of the Debtors' Cash Management System and Existing Bank Accounts is Essential to the Debtors' Ongoing Operations and Restructuring Efforts.**

14.     The Debtors' business and financial affairs are complex, requiring the collection, disbursement and movement of funds through several bank accounts.   The U.S. Trustee Guidelines require debtors to, among other things, establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), close all existing bank accounts and open new debtor in possession accounts, maintain a separate debtor in possession account for cash collateral, obtain checks that bear the designation "debtor in

possession" and reference the bankruptcy case number and the type of account on such checks. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the petition date. Strict enforcement of those guidelines in these chapter 11 cases, however, would severely disrupt the ordinary financial operations of the Debtors, reducing efficiencies and causing unnecessary expense.

15.     In other large, complex and/or well publicized chapter 11 cases, such as here, courts in this district routinely waive certain U.S. Trustee Guideline requirements and allow the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g., In re Uno Rest. Holdings Corp.,* No. 10-10209 (Bankr. S.D.N.Y. Feb. 17, 2010); *In re ION Media Networks, Inc.,* No. 09-13125 (Bankr. S.D.N.Y. July 2, 2009); *In re DBSD N. Am., Inc.,* No. 09-13061 (Bankr. S.D.N.Y. June 15, 2009); *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. May 1, 2009). Recognizing that the U.S. Trustee Guidelines are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts, these courts have authorized alternative procedures that provide the same protection.

16.     Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, a chapter 11 case involves affiliated debtors with complex financial affairs. In *Charter Co. v. Prudential Ins. Co.* (*In re Charter Co.*), 778 F.2d 617, 618 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to 'continue to consolidate the

management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors.'" *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

17.     Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993); *see also In re US Airways, Inc.*, No. 04-13819 (Bankr. E.D. Va. Sept. 14, 2004); *In re NTELOS, Inc.*, No. 03-32094 (Bankr. E.D. Va. Mar. 4, 2003). As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

18.     Consistent with the foregoing authority, the Debtors hereby seek authority to continue utilizing their current integrated Cash Management System and prepetition Bank Accounts, as described above, and a waiver of the U.S. Trustee's requirement that the Bank Accounts be closed and that new postpetition bank accounts be opened. It is critical both to continuing to operate the Debtors' business and preserving the value of the business that the Debtors be allowed to continue to utilize their existing Cash Management System and prepetition

Bank Accounts without disruption. Substantially disrupting these cash management procedures would severely impair the Debtors' ability to preserve and enhance their value and to successfully reorganize during these chapter 11 cases. Moreover, creating an entirely new cash management system would inevitably have some level of negative effect on the Debtors' recordkeeping—which would subvert the goal of the U.S. Trustee Guidelines.

19. Indeed, if the Debtors were required to open additional separate bank accounts as a consequence of their chapter 11 filings, it would necessitate opening numerous new accounts for cash concentration and disbursements. The delays that would result from opening additional new accounts would negatively impact the Debtors' ability to operate their business while pursuing these arrangements. Conversely, maintaining the Bank Accounts would greatly facilitate the Debtors' transition to operations under chapter 11. Therefore, to avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to maintain the existing Bank Accounts and, if necessary, to open new accounts and close existing accounts in the normal course of business operations. To require the Bank Accounts to be transferred would be tremendously disruptive, time consuming and expensive.

20. In a similar vein, were the U.S. Trustee Guidelines strictly enforced, the Debtors would be subject to significant administrative burdens and expenses because they would need to execute new signatory cards and depository agreements and create an entirely new manual system for issuing checks and paying postpetition obligations. *See* U.S. Trustee Guidelines, at pp. 4-5. The Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors, related to the postpetition obligations

described herein. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this motion. To ensure that prepetition checks are not honored, except as provided herein or pursuant to further order of the Court, the Debtors will serve a copy of this motion with exhibits and any order entered approving the relief requested herein on the Banks that make disbursements under the Cash Management System as soon as practicable. The Debtors also have served or will serve upon such Banks a copy of any pleadings filed by the Debtors on the Petition Date seeking to honor prepetition obligations.

21.    The Debtors represent that, if the relief requested herein is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them before the Petition Date, other than those authorized by this Court. Procedures the Debtors have implemented and will implement include: (a) notification to banks of all prepetition checks that should not be honored; (b) segregation of the Debtors' accounts payables into prepetition and postpetition; (c) training of the Debtors' accounting staff on procedures for identifying and segregating prepetition obligations; and (d) specific authorization procedures to issue a check for any prepetition liabilities to assure that it is authorized by a specific Court order.

22.    Accordingly, the Debtors request that this Court waive the strict enforcement of bank account closing requirements and replace them with alternative procedures that provide the same protection. The Debtors further request that the Bank Accounts be deemed debtor-in-possession accounts and that the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period.

23.     The Debtors respectfully submit that permitting the Debtors to utilize their existing Cash Management System and Bank Accounts, to open new accounts and close existing accounts in the normal course of business operations, and to continue existing disbursement practices would avoid delays in paying debts incurred postpetition or otherwise approved by the Court, preserve the "business as usual" atmosphere, and facilitate the Debtors' seamless transition into chapter 11.  Under the circumstances, the requested relief is both essential and in the best interests of the Debtors' estates, their creditors, and other parties in interest.

**B.      The Debtors Should Be Granted Authority to Use Existing Business Forms and Checks.**

24.     To minimize expenses to their chapter 11 estates, the Debtors request authority to continue to use all correspondence and business forms (including letterhead, purchase orders, invoices, and the like) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession.  The Debtors also request authorization to use their existing check stock without the "debtor-in-possession" label for checks that they manually write until such check stock runs out.  As soon as practicable after the Petition Date, the Debtors will include "debtor-in-possession" on the checks they print electronically.  Upon depletion of the Debtors' check stock and/or business forms stock, the Debtors will obtain new check stock and/or business forms stock reflecting their status as debtors in possession.

25.     In other large, complex or well publicized cases, this Court has allowed debtors to use their prepetition check forms without the "debtor in possession" label, at least until the debtors' existing check stock was depleted. *See, e.g., In re Uno Rest. Holdings Corp.,* No. 10-10209 (Bankr. S.D.N.Y. Feb. 17, 2010); *In re ION Media Networks, Inc.,* No. 09-13125 (Bankr. S.D.N.Y. July 2, 2009); *In re DBSD N. Am., Inc.*, No. 09-13061 (Bankr. S.D.N.Y. June 15,

2009); *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. May 1, 2009); *In re Tower Auto.,*

*Inc.*, No. 05-10578 (Bankr. S.D.N.Y. Feb. 3, 2005) (holding U.S. Trustee's requirement

prohibiting issuance of checks without "debtor in possession" designation to be unenforceable).

26.     For these reasons, the Debtors submit that authority to use their existing business

forms will minimize expenses and administrative delays without harming the interests of those

parties conducting business with the Debtors postpetition.

**C.     The Court Should Authorize the Debtors to Continue Using Debit, Wire Transfer and ACH Transfers.**

27.     The Debtors request further relief from the requirement in the U.S. Trustee

Guidelines that all receipts and all disbursements of estate funds be by check with a notation

representing the reason for the disbursement.   Considering the complexity of the Debtors'

operations, it is necessary for the Debtors to conduct transactions by debit, wire or ACH

Transfers and other similar methods, as discussed above.   To deny the Debtors the opportunity to

conduct transactions by debit, wire or ACH Transfers or other similar methods would likely

interfere with the Debtors' performance of their contracts and unnecessarily disrupt the Debtors'

business operations, as well as create additional costs to be borne by the Debtors and their

creditors.

**D.     Permitting the Debtors to Continue Intercompany Transactions, Honor Intercompany Claims and Granting Administrative Priority Status to Postpetition Intercompany Claims is Necessary to Protect the Debtors' Claims.**

28.     As described above, in general, the Debtors utilize a cost allocation system in

connection with the Cash Management System to recoup expenses paid by a Debtor or non-

Debtor affiliate for the benefit of other Debtors or non-Debtor affiliates.   Indeed, certain of the

Debtors provide necessary operating capital to their foreign and domestic affiliated Debtors and

non-Debtors pursuant to the Intercompany Transactions.   The Debtors track all fund transfers by

Intercompany Notes, the Intercompany Credit Facility and electronically in their accounting system and can ascertain, trace and account for all Intercompany Transactions. If the Intercompany Transactions that permit use of the consolidated Cash Management System were to be discontinued, that system and related administrative controls would be disrupted to the Debtors' detriment. Furthermore, preserving the "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial disruption in the Debtors' Cash Management System will facilitate the Debtors' reorganization efforts.

29.     Accordingly, the Debtors respectfully request that the Court permit the Debtors and their non-Debtor affiliates to continue the Intercompany Transactions and to honor the Intercompany Claims arising from such transactions, whether arising prepetition or postpetition, in the ordinary course of their business, between a Debtor and another Debtor, or between a Debtor and a non-Debtor. Additionally, to ensure each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors respectfully request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all intercompany claims against a Debtor by another Debtor or a non-Debtor affiliate arising after the Petition Date, as a result of ordinary course Intercompany Transactions through the Cash Management System, be accorded administrative priority expense status. If Intercompany Claims are accorded administrative priority expense status, each entity utilizing funds flowing through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary course transactions.

30.     Administrative expense treatment for intercompany transactions, as requested here, has been granted in other comparable chapter 11 cases in this district. *See, e.g., In re Uno Rest. Holdings Corp.,* No. 10-10209 (Bankr. S.D.N.Y. Feb. 17, 2010); *In re ION Media*

*Networks, Inc.,* No. 09-13125 (Bankr. S.D.N.Y. July 2, 2009); *In re DBSD N. Am., Inc.*, No. 09-13061 (Bankr. S.D.N.Y. June 15, 2009); *In re Chemtura Corp.*, No. 09-11233 (Bankr. S.D.N.Y. May 1, 2009).

31.     Accordingly, the Debtors respectfully submit that the interests of the Debtors' estates, their creditors and other parties in interest are best served by authorizing the Debtors to continue the Intercompany Transactions and honor Intercompany Claims arising from such transactions in the ordinary course of business without further order of the Court and by granting administrative priority to postpetition Intercompany Claims pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code.

**D.     The Requirements of Bankruptcy Rule 6003 are Satisfied.**

32.     Under Bankruptcy Rule 6003, the Court may authorize the Debtors to continue using the Cash Management System because such relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); *see also* Fed. R. Bankr. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

33.     The Cash Management System is crucial to the Debtors' continued operations. Without the Cash Management System, payments may not be made in a timely manner.  Late payments may cause the Debtors' contract counterparties to be unwilling to provide necessary services.  Moreover, lack of an integrated cash management system would make the tracking of cash movements and balances much more difficult, potentially causing the Debtors to lack

critical information on current liquidity.  As a result, it is clear that immediate and irreparable harm would result without the relief requested herein being granted.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

34.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## Motion Practice

35.    This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.  Accordingly, the Debtors submit that this motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Notices

36.    The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) The Bank of New York Mellon as agent for the Debtors' proposed postpetition debtor-in-possession financing; (d) Emmet, Marvin & Martin LLP as counsel to the agent for the Debtors' proposed postpetition debtor-in-possession financing; (e) U.S. Bank National

Association as Collateral Agent for the Debtors' purchase money credit facility and Harbinger Capital Partners Master Fund I, Ltd., Harbinger Capital Partners Special Situations Fund, L.P. and EchoStar Corporation as Lenders thereunder; (f) Weil, Gotshal & Manges LLP as counsel to Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. in their capacity as Lenders under the Debtors' purchase money credit facility; (g) Willkie Farr & Gallagher LLP as counsel to EchoStar Corporation in its capacity as Lender under the Debtors' purchase money credit facility and Initial Lender under the Debtors' proposed postpetition debtor-in-possession financing; (h) U.S. Bank National Association as Indenture Trustee for the Debtors' 15% Senior Secured Notes; (i) U.S. Bank National Association as Indenture Trustee for the Debtors' 6.5% Senior Exchangeable Notes; (j) Quinn Emanuel Urquhart & Sullivan, LLP as counsel to an Ad Hoc group of the Debtors' 6.5% Senior Exchangeable Notes; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Attorney for the Southern District of New York; and (n) the Federal Communications Commission.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) authorizing the Debtors to continue using their Cash Management System, Bank Accounts and business forms, (ii) granting postpetition Intercompany Claims administrative expense priority, and (iii) authorizing continued performance under Intercompany Transactions in accordance with the ordinary course of business and historical practices; and (b) grant such other and further relief as is just and proper.

New York, New York
Dated: October 19, 2010

*/s/ Ira S. Dizengoff*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York  10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Ashleigh L. Blaylock

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) Case No. 10-[_____] ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING DEBTORS TO
CONTINUE USING THEIR CASH MANAGEMENT SYSTEM, BANK ACCOUNTS
AND BUSINESS FORMS, (B) GRANTING POSTPETITION INTERCOMPANY
CLAIMS ADMINISTRATIVE EXPENSE PRIORITY AND (C) AUTHORIZING
CONTINUED INTERCOMPANY TRANSACTIONS**

Upon the motion (the "***Motion***")[2] of the above-captioned debtors (collectively, the

"***Debtors***") for the entry of an order (a) authorizing the Debtors to continue using their existing

Cash Management System, Bank Accounts and business forms, (b) granting postpetition

Intercompany Claims administrative expense priority, and (c) authorizing the Debtors to

continue Intercompany Transactions; and upon the First Day Declaration; and it appearing that

the relief requested is in the best interests of the Debtors' estates, their creditors and other parties

in interest; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-
identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient
Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc.
(5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537);
TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar
Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion appearing to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.     The Motion is granted as set forth herein on an interim basis, subject to becoming a final order as provided herein.

2.     The Debtors are authorized to continue using their integrated Cash Management System as described in the Motion.

3.     The Debtors are authorized to: (a) continue to use, with the same account numbers, all of the bank accounts in existence as of the Petition Date, including, without limitation, those accounts identified on <u>Exhibit B</u> to the Motion (the "***Bank Accounts***"); (b) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders and invoices), as well as checks written manually and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided, however*, that upon depletion of the Debtors' correspondence and business forms, the Debtors will obtain new business forms reflecting their status as debtors in possession; and, *provided, further, however*, that as soon as practicable after the Petition Date, the Debtors will note their status as "debtors in possession" on checks that are electronically printed; and (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession.

4.     Except as otherwise expressly provided in this Order, all Banks are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process,

honor and pay any and all checks, drafts, wires and automated clearing house transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided*, *however*, that the Debtors may only open a new bank account with a bank designated as an Authorized Depository under the U.S. Trustee Guidelines, unless first obtaining the consent of the U.S. Trustee.

6.      All Intercompany Claims against a Debtor by another Debtor or non-Debtor affiliate arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

7.      Subject to the terms of the DIP Facility, the Debtors are authorized, but not required, to continue using their Cash Management System to manage their cash, to pay intercompany payables, if any, to extend intercompany credit, if necessary, and to continue performing under and honoring their respective obligations and commitments related to Intercompany Transactions and the resulting Intercompany Claims, whether arising prepetition or postpetition, that reflect intercompany receivables and payments made in the ordinary course of the business between and among the Debtors and their non-Debtor affiliates.

8.      The Debtors shall keep records of any postpetition intercompany transfers and services that occur during the chapter 11 cases.

9.      The Debtors are authorized to direct the Banks and the Banks are authorized and directed to pay obligations in accordance with this or any separate order of this Court.

10.     Except as otherwise provided in this Order or in a separate order of this Court, all Banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued prior to the Petition Date.

11.     As soon as practicable after the entry of this Order, the Debtors shall serve a copy of this Order on those Banks that make disbursements pursuant to the Debtors' Cash Management System except as expressly directed by the Debtors pursuant to paragraph 10, above.

12.     Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor-in-possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor-in-possession financing agreement.

13.     Any objections to the relief requested in the Motion on a permanent basis must be filed no later than [_____ __], 2010 at 4:00 p.m. (Prevailing Eastern Time) (the "***Objection Deadline***").  If an objection is timely filed and served so as to be received on or before the Objection Deadline, such objection shall be set for hearing on [_____ __], 2010 at [_:__] [a/p].m. (Prevailing Eastern Time).  This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective notwithstanding the filing of an objection.

14. Any objections or responses to this Order becoming a final order shall be filed on or before the Objection Deadline and served on the following parties: (a) TerreStar Networks Inc., 12010 Sunset Hills Road, 6th Flr., Reston, Virginia 20190, Attn:   Doug Brandon, Esq.; (b) proposed counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park,

New York, New York 10036, Attn: Ira S. Dizengoff, Esq. and Arik Preis, Esq.; (c) the Office of the United States Trustee for the Southern District of New York; (d) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) or the official committee of unsecured creditors, if appointed; (e) Bank of New York Mellon as agent for the Debtors' proposed postpetition debtor-in-possession financing; (f) Emmet, Marvin & Martin LLP as counsel to the agent for the Debtors' proposed postpetition debtor-in-possession financing; (g) U.S. Bank National Association as Collateral Agent for the Debtors' purchase money credit facility and Harbinger Capital Partners Master Fund I, Ltd., Harbinger Capital Partners Special Situations Fund, L.P. and EchoStar Corporation as Lenders thereunder; (h) Weil, Gotshal & Manges LLP as counsel to Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. in their capacity as Lenders under the Debtors' purchase money credit facility; (i) Willkie Farr & Gallagher LLP as counsel to EchoStar Corporation in their capacity as Lender under the Debtors' purchase money credit facility and Initial Lender under the Debtors' proposed postpetition debtor-in-possession financing; (j) U.S. Bank National Association as Indenture Trustee for the Debtors' 15% Senior Secured Notes; (k) U.S. Bank National Association as Indenture Trustee for the Debtors' 6.5% Senior Exchangeable Notes; (l) Quinn Emanuel Urquhart & Sullivan, LLP as counsel to an *Ad Hoc* group of the Debtors' 6.5% Senior Exchangeable Notes; (m) the Internal Revenue Service; (n) the Securities and Exchange Commission; and (o) the United States Attorney for the Southern District of New York.

15.     In the event that no objection to the Motion or this Order is timely filed and served, then this Order shall become a final order as of the day immediately following the

Objection Deadline, *nunc pro tunc* to October 19, 2010, without further hearing or order of this Court.

16.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18.     Notwithstanding the possible applicability of Rules 6004(a) and 6004(h) of the Federal Rules of Bankruptcy or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2010                    _____
                                                United States Bankruptcy Judge

**EXHIBIT B**

**Checking, Savings, or Other Financial Accounts**

| Debtor | Institution | Account # | Type of Account | Bank address | City | State | Zip | Contact | Phone # | Fax # |
|---|---|---|---|---|---|---|---|---|---|---|
| TerreStar Networks Inc. | SunTrust Bank | 704193639 | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar Networks Inc. | SunTrust Bank | 7900296 | Investment | 1445 New York Ave., NW 6th Floor | Washington | DC | 20005 | Meylin Doram | (202) 879-6439 | (202) 879-6333 |
| TerreStar Networks Inc. | SunTrust Bank | 120920000 | Certificate of Deposits | 8330 Boone Boulevard 7th Floor | Vienna | VA | 22182 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar Networks Inc. | SunTrust Bank | | CD 17516380676 | 8330 Boone Boulevard 7th Floor | Vienna | VA | 22182 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar Networks Inc. | SunTrust Bank | | CD 17517102947 | 8330 Boone Boulevard 7th Floor | Vienna | VA | 22182 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| Motient Communications Inc. | SunTrust Bank | 704193213 | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| Motient Communications Inc. | SunTrust Bank | 704193256 | Disbursement | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar National Services Inc. | SunTrust Bank | 1000052242558 | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar New York Inc. | SunTrust Bank | 1000103362405 | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| 0887729 B.C. Ltd. | HSBC Bank Canada | 031-433170-001 | Demand Deposit | 131 Queen Street | Ottawa | | Canada | K1P 0A1 | Marie-Claude Antoniades | (613) 238-4853 | (613) 238-3553 |
| TerreStar Networks (Canada) Inc. | TD Canada Trust | 102025319637 | Demand Deposit | 55 King Street West, | Toronto, Ontario | | Canada | M5K 1A2 | Jennifer Lipton | (416) 982-8222 | (416) 982-5654 |
| TerreStar Networks (Canada) Inc. | TD Canada Trust | 102027376155 | Demand Deposit | 55 King Street West, | Toronto, Ontario | | Canada | M5K 1A2 | Jennifer Lipton | (416) 982-8222 | (416) 982-5654 |
| TerreStar Networks (Canada) Inc. | SunTrust Bank | | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar Networks Holdings (Canada) Inc. | SunTrust Bank | | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| 0887729 B.C. Ltd. | SunTrust Bank | | Demand Deposit | 25 Park Place, NE | Atlanta | GA | 30303 | Linda Jameson | (703) 442-1623 | (703) 442-1626 |
| TerreStar Networks (Canada) Inc. | Royal Bank of Canada | 101-679-9 | Demand Deposit | 1 Place Ville-Marie | Montreal, Quebec | | Canada | H3C 3B5 | Enza Baldino | (514) 874-2130 | (514) 874-4986 |
| TerreStar Networks (Canada) Inc. | Royal Bank of Canada | 400-494-1 | Demand Deposit | 1 Place Ville-Marie | Montreal, Quebec | | Canada | H3C 3B5 | Enza Baldino | (514) 874-2130 | (514) 874-4986 |