AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Ashleigh L. Blaylock

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) Case No. 10-[_____] ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY TAXES AND FEES AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

The above-captioned debtors and debtors in possession (collectively, the "*Debtors*") seek entry of an order, substantially in the form attached hereto as Exhibit A, (a) authorizing, but not directing, the Debtors to pay certain business, franchise, personal property, sales and use, goods and services, excise and other taxes, as well as certain annual reporting, FCC and Canadian Regulatory fees and (b) authorizing financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing. In support of this motion, the Debtors submit the Declaration of Jeffrey W. Epstein, Chief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

Executive Officer of TerreStar Networks Inc., in Support of First Day Pleadings (the "*First Day Declaration*"). In further support of this motion, the Debtors respectfully state as follows:

**Jurisdiction**

1. The Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8) and 541 of title 11 of the United States Code (the "*Bankruptcy Code*").

**Background**

4. On October 19, 2010 (the "*Petition Date*"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5. Contemporaneously with the filing of this motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of TerreStar Networks Inc. A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the First Day Declaration, which is being filed contemporaneously with this motion.

**Basis for Relief**

6. In the ordinary course of their business, the Debtors: (a) collect and incur taxes, including certain business, franchise, personal property, sales and use, goods and services,

excise and other taxes[2] in operating their business (collectively, the "***Taxes***"); (b) charge fees and other similar charges and assessments (collectively, the "***Fees***") on behalf of various taxing, licensing and other governmental authorities (collectively, the "***Authorities***"); and (c) pay Fees to such Authorities for licenses and permits required to conduct the Debtors' business in the ordinary course. The Debtors pay the Taxes and Fees monthly, quarterly or annually to the respective Authorities, in each case as required by applicable laws and regulations.

7. The Debtors' failure to pay the Taxes and Fees could materially and adversely impact the Debtors' business operations in several ways. The Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the tasks required by the reorganization process at a critical time for the Debtors' business. The Authorities may also attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay and pursue other remedies that will be administratively burdensome to the estates. Furthermore, certain directors and officers could be subject to personal liability, which would likely distract those key personnel from their duties related to the Debtors' restructuring. Moreover, with respect to the Fees, the Debtors' failure to pay such Fees to the Authorities and other relevant third parties would cause the Debtors to incur late fees, penalties and other charges in addition to the Fees.

**A.     State Use Taxes**

8. In the ordinary course of business, the Debtors purchase equipment necessary to the Debtors' business operations. In lieu of the Debtors paying or incurring sales or excise taxes in connection with these purchases, applicable state taxing authorities require the Debtors to pay

---

[2] The Debtors do not seek authority to collect and pay state and federal employee withholding taxes under this motion but rather request such authority as part of the Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing, but not Directing, Debtors (I) To Pay Certain Prepetition Wages and Reimbursable Employee Expenses, (II) To Pay and Honor Employee Medical and Other Benefits and (III) To Continue Employee Benefits Programs and (B) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests, filed concurrently herewith.

use taxes on the equipment. The Debtors pay use taxes on a monthly basis, and the Debtors remit approximately $60,000 in the aggregate in use taxes per year to certain of the Authorities. The Debtors estimate that, as of the Petition Date, they have approximately $5,000 in accrued, unpaid prepetition use taxes.

**B.  State Property Taxes**

9. Under applicable law, state and local governments in jurisdictions where the Debtors' operations are located, including Texas, Virginia, Arizona, Florida, Indiana, Louisiana, Maryland, North Carolina, North Dakota, New Mexico, Nevada, Oregon, Utah, and Washington are granted the authority to levy property taxes against real and personal property. The Debtors generally do not own real property but typically pay approximately $300,000 per year in property taxes on their personal property in the ordinary course of business as such taxes are invoiced. The Debtors estimate that, as of the Petition Date, they have approximately $120,000 in accrued, unpaid property taxes that will come due in the first quarter of 2011.

**C.  Business Taxes and Annual Reporting Fees**

10. Certain states require the Debtors to pay various business taxes. These taxes may be based on gross receipts or other bases determined by the taxing jurisdiction. Further, certain states require the Debtors to pay annual reporting fees to state governments to remain in good standing for purposes of conducting business within the state. The Debtors pay approximately $25,000 per year with respect to these various business taxes and annual reporting fees. The Debtors estimate that, as of the date hereof, there are no amounts owing to the various Authorities with respect to prepetition business taxes and annual reporting fees. The Debtors acknowledge that if any amounts are owed, some of these business taxes and annual reporting fees may, under applicable law, be entitled to a priority claim.

**D.  Delaware Franchise Taxes**

4

11. The Debtors pay franchise taxes to the state of Delaware to operate their business in that state. The Delaware franchise taxes are paid on an annual basis, in the approximate amount of $405,000 per year. The Debtors estimate that, as of the Petition Date, they have approximately $177,000 in accrued, unpaid Delaware franchise taxes that will come due in the first quarter of 2011.

**E. Canadian Taxes**

12. In connection with the operation of their Canadian affiliates, the Debtors are responsible for paying Canadian corporation, retail sales and capital taxes each year (the "***Canadian Taxes***").[3] The amount of Canadian Taxes the Debtors incur varies from year to year. In 2009, the Debtors paid approximately CDN $119,000 in Canadian Taxes and estimate that they will owe approximately CDN $50,000 in Canadian Taxes for tax year 2010. The anticipated reduction is based on the phasing out of the Ontario capital tax in July 2010, which tax comprised the vast majority of the Debtors' Canadian tax liability.

**F. FCC and Canadian Regulatory Fees**

13. Section 9 of the Communications Act of 1934 empowers the Federal Communications Commission (the "***FCC***") to "assess and collect regulatory fees to recover the costs of . . . enforcement activities, policy and rulemaking activities, user information services, and international activities." 47 U.S.C. § 159(a)(1). As a satellite communications company, the Debtors are subject to regulation and oversight by the FCC and, as such, incur such "regulatory fees" in the ordinary course of business (the "***FCC Fees***"). The Debtors' annual FCC Fees are approximately $1,500 and are due in August 2011. The Debtors estimate that, as of the Petition

---

[3] All references to the Canadian Taxes and Canadian Regulatory Fees paid by the Debtors are listed in Canadian dollars. All other Taxes and Fees referenced in this motion are listed in U.S. dollars.

5

Date, they have approximately $240 in accrued prepetition FCC Fees that will come due in August 2011.

14. In addition to the FCC Fees, the Debtors, in the ordinary course of business, incur approximately CDN $39,000 in Canadian regulatory fees per year (the "**Canadian Regulatory Fees**") in connection with the operation of the TS-1 Satellite and five Canadian calibration earth stations. The Canadian Regulatory Fees are payable to the Canadian Government on an annual basis. Included in the Canadian Regulatory Fees are mobile satellite service license fees, radio license fees and spectrum fees. The Debtors estimate that, as of the Petition Date, they have approximately CDN $16,250 in accrued prepetition Canadian Regulatory Fees that will come due in March 2011.

## Relief Requested

15. By this motion, the Debtors seek entry of an order, pursuant to sections 105(a), 363(b), 507(a)(8) and 541 of the Bankruptcy Code, authorizing, but not directing, the Debtors to pay any amounts that may come due on account of prepetition claims relating to certain business, franchise, personal property, sales and use, goods and services, excise and other Taxes, as well as certain annual reporting, FCC and Canadian Regulatory Fees.

16. The Debtors further request that the Court authorize financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that all such financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this motion.

## Supporting Authority

**A.  Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

17. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

18. Certain of the Taxes and Fees may constitute "trust fund" taxes, which the Debtors are required to collect from their customers and hold in trust for payment to the Authorities. As a result, courts have held that such taxes are not part of a debtor's estate. *See, e.g.*, *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *Shank v. Wash. State Dept. of Revenue* (*In re Shank*), 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d). *See, e.g.*, *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-105 (Bankr. E.D. Pa. 1987); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties are not property of debtor's estate). The Debtors, therefore, generally do not have an equitable interest in funds held on account of such "trust fund" taxes, and the Debtors should be permitted to pay those funds to the Authorities as they become due.

19. Additionally, a constructive trust may be imposed on collected taxes where there exists a reasonable nexus between the funds and the taxes in question. *See In re Integrated*

*Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006). The Debtors, therefore, may not have a legally cognizable interest in funds held on account of such "trust fund" taxes and, accordingly, such taxes, which generally consist of sales taxes, would not constitute "property of the [Debtors'] estate[s]" as such term is defined in section 541 of the Bankruptcy Code. The Debtors should be permitted to pay such funds to the Authorities as they become due.

**B.     Certain of the Taxes and Fees May Constitute Secured or Priority Claims Entitled to Special Treatment.**

20.     Payment of certain of the Taxes and Fees likely will give the Authorities no more than what they otherwise would be entitled to receive under a chapter 11 plan. Such payment at this time will save the Debtors interest expense, legal expense and penalties that otherwise might accrue on the Taxes during these chapter 11 cases.

21.     Claims for some or all of the use taxes owed by the Debtors are or may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code. Section 507(a)(8) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for: (a) taxes on or measured by income or gross receipts for a taxable year ending on or before the Petition Date, for which a return, if required, is last due after three years prior to the Petition Date, and which is assessed within 240 days before the Petition Date (*see* 11 U.S.C. § 507(a)(8)(A)); (b) property taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date (*see* 11 U.S.C. § 507(a)(8)(B)); and (c) taxes required to be collected or withheld and for which the Debtor is liable in whatever capacity (*see* 11 U.S.C. § 507(a)(8)(C)). Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the governmental unit also may attempt to assess penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to

"a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

22. In addition, certain of the Taxes and Fees may be the subject of tax liens. Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(3). In fact, the creation and perfection of such a lien may not violate the automatic stay. *See* 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition."); *see also* 3 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 362.05[17] (15TH REV. ED.) (section 362(b)(18) reversed case law that had held that the creation of a statutory lien for ad valorem property taxes violated the automatic stay). Thus, the Debtors' failure to pay their property taxes, for example, may inadvertently increase the scope of priority claims held against the Debtors' estates.

23. Indeed, absent the granting of the relief requested herein, many Authorities may hold oversecured claims against the Debtors' estates related to the Taxes and Fees. The Bankruptcy Code provides that oversecured claims accrue interest during the pendency of a chapter 11 case. *See* 11 U.S.C. § 506(b); *United States. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code). If the Debtors are required to pay interest on such tax claims, section 511 of the Bankruptcy Code provides that "the rate of interest shall be the rate determined under applicable nonbankruptcy law," which rate may exceed prevailing market

interest rates by a considerable degree. *See* 11 U.S.C. § 511(a). Accordingly, prompt payment of the Taxes and Fees may eliminate claims for interest at these high rates for any secured claims.

24. In addition, Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full pursuant to a confirmable plan of reorganization under section 1129(a)(9)(c) of the Bankruptcy Code. Thus, payment of the Taxes and Fees at this time only affects the timing of the payment for the vast majority of the amounts at issue and therefore should not unduly prejudice the rights of other creditors.

C. **Payment of the Taxes and Fees May Eliminate Unnecessary Distractions from Reorganization Efforts.**

25. If the Debtors fail to pay the Taxes and Fees in a timely manner, the Authorities may assert that the Debtors' directors and officers are personally liable for payment of the Taxes and Fees. This is the case even if the failure to pay such Taxes and Fees was not a result of malfeasance on their part. Any litigation related to the failure to pay Taxes and Fees would prove distracting for the Debtors, their named directors and officers, as well as this Court, which may be asked to entertain various motions seeking injunctions relating to potential court actions. As such, it is in the best interest of the Debtors' estates to eliminate the possibility of these distractions and to enable the Debtors to continue operating without interruption.

D. **Ample Authority Exists to Support Payment of the Taxes and Fees.**

26. The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code where a sound business purpose exists for doing so. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor

to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims for suppliers who were potential lien claimants because the payments were necessary for general contractor to release funds owed to debtors).  As discussed herein, paying the Taxes and Fees will benefit the estate and its creditors by allowing the Debtors' operations to continue without interruption and by reducing both the amount and priority of claims that could be asserted against the Debtors' estates.  Moreover, failure to pay some of the Fees, such as the FCC and Canadian Regulatory Fees, may result in a loss of the Debtors' FCC and Canadian licenses, which, in turn, would bring the Debtors' operations to a halt.

27. The Court may rely on its general equitable powers to grant the relief requested in this motion as codified in section 105(a) of the Bankruptcy Code to the extent any of the Taxes and Fees may not constitute "trust fund" taxes in a particular jurisdiction.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Section 105(a) authorizes a court to "permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).

28. Application of section 105(a) of the Bankruptcy Code in the context of this motion is appropriate because the relief requested herein is consistent with the rehabilitative policy of chapter 11 of the Bankruptcy Code. A debtor in possession is a fiduciary with a duty to protect and preserve the estate, including the value of the business as a going concern. *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this [fiduciary] duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). Absent the relief requested herein, the Debtors' business could be significantly disrupted. As discussed more fully herein, the Debtors could incur penalties and liens arising from their failure to pay the Taxes and Fees, thereby increasing unnecessarily both the value and priority of claims against their estates — all to the detriment of the Debtors and their stakeholders. The Debtors' key personnel could also be exposed to personal liability and needlessly distracted from the present reorganization. Thus, granting the relief requested in this motion will enhance the likelihood of the Debtors' successful rehabilitation, maximize the value of the estates' assets and thus benefit the estates' creditors.

29. Courts in this district regularly grant relief similar to that requested herein. *See, e.g.*, *In re Uno Restaurant Holdings Corp.,* No. 10-10209 (Bankr. S.D.N.Y. Feb. 17, 2010); *In re ION Media Networks, Inc.,* No. 09-13125 (Bankr. S.D.N.Y. May 21, 2009); *In re DBSD North America Inc.,* No. 09-13061 (Bankr. S.D.N.Y. June 5, 2009); *In re Chemtura Corp.,* No. 09-11233 (Bankr. S.D.N.Y. April 13, 2009).

**E. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

30. The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor-in-possession

financing. Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment made to an Authority. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Taxes and Fees.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

31. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14 day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### Debtors' Reservation of Rights

32. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim. The Debtors expressly reserve their rights to contest any claim of an Authority under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an

admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Motion Practice

33. This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Notice

34. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) The Bank of New York Mellon as agent for the Debtors' proposed postpetition debtor-in-possession financing; (d) Emmet, Marvin & Martin LLP as counsel to the agent for the Debtors' proposed postpetition debtor-in-possession financing; (e) U.S. Bank National Association as Collateral Agent for the Debtors' purchase money credit facility and Harbinger Capital Partners Master Fund I, Ltd., Harbinger Capital Partners Special Situations Fund, L.P. and EchoStar Corporation as Lenders thereunder; (f) Weil, Gotshal & Manges LLP as counsel to Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. in their capacity as Lenders under the Debtors' purchase money credit facility; (g) Willkie Farr & Gallagher LLP as counsel to EchoStar Corporation in its capacity as Lender under the Debtors' purchase money credit facility and Initial Lender under the Debtors' proposed postpetition debtor-in-possession financing; (h) U.S. Bank National Association as Indenture Trustee for the Debtors' 15% Senior Secured Notes; (i) U.S. Bank National Association as Indenture Trustee for the Debtors' 6.5% Senior Exchangeable Notes; (j) Quinn Emanuel

Urquhart & Sullivan, LLP as counsel to an *Ad Hoc* group of the Debtors' 6.5% Senior Exchangeable Notes; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Attorney for the Southern District of New York; and (n) the Federal Communications Commission. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A, (i) authorizing, but not directing, the Debtors to pay certain business, franchise, personal property, sales and use, goods and services, excise and other Taxes, as well as certain annual reporting, FCC and Canadian Regulatory Fees and (ii) authorizing and directing banks and other financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing and (b) grant such other and further relief as is just and proper.

New York, New York
Dated: October 19, 2010

*/s/ Ira S. Dizengoff*
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

Ira S. Dizengoff
Arik Preis
Ashleigh L. Blaylock

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) | Case No. 10-[_____] ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## ORDER (A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY TAXES AND FEES AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Upon the motion (the "*Motion*")[2] of the above-captioned debtors (collectively, the "*Debtors*") for entry of an order (a) authorizing, but not directing, the Debtors to pay certain business, franchise, personal property, sales and use, goods and services, excise and other Taxes, as well as certain annual reporting, FCC and Canadian Regulatory Fees and (b) authorizing financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the foregoing; and upon the First Day Declaration; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and notice of the Motion appearing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Motion is granted to the extent set forth herein.

2. The Debtors are authorized, in their sole discretion, to pay prepetition claims relating to certain business, franchise, personal property, sales and use, goods and services, excise and other Taxes, as well as certain annual reporting, FCC, and Canadian Regulatory Fees (as more fully described in the Motion) as may be necessary.

3. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and that all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

4. Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Order are valid, and the Debtors expressly reserve the right to contest the extent, validity or perfection or seek the avoidance of all such liens.

5. Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor-in-possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor-in-possession financing agreement.

6. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute (a) an admission to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

8. Notwithstanding the possible applicability of Rules 6004(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure or, otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2010            United States Bankruptcy Judge