**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) Case No. 10-15446 (SHL) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

### INTERIM ORDER UNDER SECTIONS 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; AND (IV) SCHEDULING A <u>FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u>

Upon the motion, dated October 19, 2010 (the "***Motion***"), of TerreStar Networks

Inc. ("***TSN***") and each of its affiliated debtors and debtors in possession (collectively, the

"***Debtors***") in the above-captioned cases (the "***Cases***") commenced on October 19, 2010 (the

"***Petition Date***"), for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C.

§§ 101, <u>et</u> <u>seq</u>. (as amended, the "***Bankruptcy Code***"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "***Bankruptcy Rules***"), and the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

(the "***Local Rules***"), seeking:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

(I)        authorization (a) for TSN (the "***Borrower***") to obtain up to $75 million (plus fees, interest and other amounts to be capitalized in accordance with the terms of the DIP Documents (defined below)) in aggregate principal amount of postpetition financing (the "***DIP Financing***") on the terms and conditions set forth in this interim order (this **"*Order*"**) and that certain Debtor-In-Possession Credit, Security & Guaranty Agreement (substantially in the form annexed to the Motion as <u>Exhibit A</u>, and as hereafter amended, supplemented or otherwise modified from time to time, the "***DIP Agreement***";[2] and, collectively with all agreements, guaranties, collateral agreements, documents and instruments delivered or executed from time to time in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "***DIP Documents***"), among the Borrower, the Guarantors (as defined below), EchoStar Corporation ("***EchoStar***" or the "***Initial Lender***"), and the other lenders that may become party thereto from time to time (collectively, the "***DIP Lenders***"), and The Bank of New York Mellon, as Administrative Agent and Collateral Agent (in such capacity, the "***DIP Agent***"), and (b) for each of the Debtors other than the Borrower (the "***Guarantors***"), to jointly and severally (except as provided in section 10.17 of the DIP Agreement) guaranty on a secured basis the Borrower's obligations in respect of the DIP Financing;

(II)        authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

(III)    authorization for the Debtors to use the Cash Collateral (as defined in paragraph 3(g) below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(d) below);

(IV)    to grant adequate protection to the PMCA Agent, each PMCA Lender, the 15% Notes Trustee/Agent, and the 15% Noteholders (each as defined below, and together, the "***Prepetition Secured Parties***" and, excluding the 15% Noteholders, the "***Prepetition Secured Notice Parties***") with respect to such use of Cash Collateral and any diminution in the value of the Prepetition Collateral securing the Debtors' obligations (the "***Prepetition Secured Obligations***") under or in connection with:  (i) that certain Terrestar-2 Purchase Money Credit Agreement, dated as of February 5, 2008 (as amended, restated, supplemented or otherwise modified from time to time, and including any mortgage, security, pledge, control or guaranty agreements or other documentation executed in connection with the foregoing, the "***PMCA***"), among TSN, as borrower, U.S. Bank National Association, as collateral agent (in such capacity, the "***PMCA Agent***"), the guarantors party thereto from time to time, and Harbinger Capital Partners Master Fund 1, Ltd., Harbinger Capital Partners Special Situations Fund, L.P. and EchoStar, as lenders (the "***PMCA Lenders***"); and (ii) the 15.0% senior secured payment-in-kind notes due 2014 (the "***15% Notes***") issued pursuant to that certain Indenture, dated as of February 14, 2007, among TSN, as issuer, U.S. Bank National Association, as indenture trustee and collateral agent (in such capacity, the "***15% Notes Trustee/Agent***" and together with the PMCA Agent, the "***Prepetition Agent***"), and the guarantors from time to time party thereto (as amended, restated, supplemented or otherwise modified from time to time, including by that certain First Supplemental Indenture, dated as of February 7, 2008, and that certain Second Supplemental Indenture, dated as of February 7, 2008, and including any mortgage, security, pledge, control or

guaranty agreements or other documentation executed in connection with the foregoing, the "**15% Notes Indenture**" and, together with the PMCA, the "**Prepetition Loan Documents**");

(V) authorization for the DIP Agent to, subject to paragraph 8 below, upon the occurrence and continuance of an Event of Default: (a) reduce the amount of or terminate any outstanding Commitments under the DIP Agreement, (b) terminate the DIP Agreement, (c) charge the default rate of interest on the Loans, (d) declare the entirety of the Loans to be due and payable, and/or (e) subject to the Carve-Out (as defined in paragraph 6(b) below), exercise any and all remedies under applicable law (including the UCC and PPSA);

(VI) **subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable law or principle of equity, which grant constitutes an "extraordinary provision" (a "*Material Provision*") under General Order M-274 of the United States Bankruptcy Court for the Southern District of New York;**

(VII) at an interim hearing (the "**Interim Hearing**") on the Motion before this Court, pursuant to Bankruptcy Rule 4001, entry of this Order: (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement an aggregate principal amount, not to exceed $18 million (plus fees, interest and other amounts to be capitalized in accordance with the terms of the DIP Documents) at any time outstanding prior to the entry of the Final Order, (b) authorizing the Debtors, on an interim basis, to use the Cash Collateral and the other Prepetition Collateral, and (c) granting, on an interim basis, adequate protection to the Prepetition Secured Parties; and

(VIII)  scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "***Final Hearing***") for this Court to consider entry of a final order, substantially in the form attached to the DIP Agreement as <u>Exhibit D</u> (the "***Final Order***"), authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Borrower on a final basis to utilize the DIP Financing and for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of the DIP Documents and the Final Order.

The Interim Hearing having been held by this Court on October 20, 2010, and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the admission into evidence of (i) the First Day Declaration, (ii) the Epstein DIP Declaration, and (iii) Zelin Declaration (each as defined in the Motion), each of which was filed on the Petition Date, and the other evidence submitted or adduced and the arguments of counsel made at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction/Venue*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     *Notice*.  Based upon the Debtors' representations, notice of the Motion and the relief requested therein, and the relief requested at the Interim Hearing was served by the Debtors by electronic mail, facsimile, or overnight mail to:  (a) the Office of the United States Trustee for the Southern District of New York (the "***U.S. Trustee***"); (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) The Bank of New York Mellon as agent for the Debtors' proposed

postpetition debtor-in-possession financing; (d) Emmet, Marvin & Martin LLP as counsel to the agent for the Debtors' proposed postpetition debtor-in-possession financing; (e) U.S. Bank National Association as Collateral Agent for the Debtors' purchase money credit facility and Harbinger Capital Partners Master Fund I, Ltd., Harbinger Capital Partners Special Situations Fund, L.P. and EchoStar Corporation as Lenders thereunder; (f) Weil, Gotshal & Manges LLP as counsel to Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. in their capacity as Lenders under the Debtors' purchase money credit facility; (g) Willkie Farr & Gallagher LLP as counsel to EchoStar Corporation in its capacity as Lender under the Debtors' purchase money credit facility and Initial Lender under the Debtors' proposed postpetition debtor-in-possession financing; (h) U.S. Bank National Association as Indenture Trustee for the Debtors' 15% Senior Secured Notes; (i) U.S. Bank National Association as Indenture Trustee for the Debtors' 6.5% Senior Exchangeable Notes; (j) Quinn Emanuel Urquhart & Sullivan, LLP as counsel to an Ad Hoc group of the Debtors' 6.5% Senior Exchangeable Notes; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Attorney for the Southern District of New York; and (n) the Federal Communications Commission.  Under the circumstances, the notice provided of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(c) and (d) and the Local Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

3.      *Debtors' Stipulations*.  Subject to the limitations contained in paragraph 16 below, the Debtors admit, stipulate, and agree that:

(a)	as of the Petition Date, certain of the Debtors were justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the PMCA Lenders, in the amount of not less than $85.9 million of principal and accrued interest (such obligations, in addition to the obligations described below, the "***Prepetition PMCA Obligations***"), in respect of loans or other financial accommodations made by the PMCA Lenders pursuant to, and in accordance with the terms of, the PMCA, plus, in each case, accrued and unpaid interest thereon and costs and expenses and other obligations owing under the PMCA;

(b)	as of the Petition Date, certain of the Debtors were justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the holders of 15% Notes (the "***15% Noteholders***"), in the amount of not less than $943.9 million of principal and accrued interest (such obligations, in addition other obligations described below in this paragraph, the "***Prepetition 15% Notes Obligations***" and, together with the Prepetition PMCA Obligations the "***Prepetition Obligations***"), in respect of loans or other financial accommodations made by the 15% Noteholders pursuant to, and in accordance with the terms of, the 15% Notes Indenture, plus, in each case, accrued and unpaid interest thereon and costs and expenses and other obligations owing under the 15% Notes Indenture;

(c)	the liens and security interests granted to the PMCA Agent to secure the Prepetition PMCA Obligations (the "***PMCA Liens***") are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the PMCA) liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the PMCA (including Cash Collateral, the "***PMCA Collateral***"), (ii) not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and

subordinate only to valid, perfected and unavoidable liens permitted under the PMCA to the extent such permitted liens are senior to the liens securing the PMCA (the "***PMCA Permitted Prepetition Liens***") and the Carve-Out (as defined in paragraph 6(b) below);

(d)     the liens and security interests granted to the 15% Notes Trustee/Agent to secure the Prepetition 15% Notes Obligations (the "***15% Notes Liens***" and, together with the PMCA Liens, the "***Prepetition Secured Party Liens***") are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the 15% Notes Indenture) liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the 15% Notes Indenture (including Cash Collateral, the "***15% Notes Collateral***" and, together with the PMCA Collateral, the "***Prepetition Collateral***"), (ii) not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate only to valid, perfected and unavoidable liens permitted under the 15% Notes Indenture to the extent such permitted liens are senior to the liens securing the Prepetition 15% Notes Obligations (the "***15% Notes Permitted Prepetition Liens***" and, together with the PMCA Permitted Prepetition Liens, the "***Permitted Prepetition Liens***") and the Carve-Out;

(e)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code);

(f)     (i) no portion of the Prepetition Obligations shall be subject to objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Debtors do not have, and hereby forever release, any claims (as defined in section 101(5) of the Bankruptcy Code),

counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the

Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Secured Parties and

their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and

advisors, in each case, solely in their capacity as Prepetition Secured Parties; and

(g)     a portion of the Debtors' cash constitutes Prepetition Collateral and,

therefore, is cash collateral of the Prepetition Secured Parties within the meaning of section

363(a) of the Bankruptcy Code (the "*Cash Collateral*").

4.     *Findings Regarding the DIP Financing.*  The Court is satisfied based upon

the Debtors' representations that:

(a)     The Debtors have an immediate need to obtain the DIP Financing and to

use the Prepetition Collateral, including any Cash Collateral, in order to, among other things,

permit the orderly continuation of their businesses, preserve the going concern value of the

Debtors, pay the costs of administration of their estates and for the other purposes set forth in the

DIP Documents.   The Debtors' use of the Prepetition Collateral (including the Cash Collateral)

and the DIP Financing is necessary to ensure that the Debtors have sufficient working capital and

liquidity to preserve and maintain the going concern value of the Debtors' estates.  Good cause

has, therefore, been shown for entry of this Order.

(b)     The Debtors are unable to obtain financing on more favorable terms from

sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP

Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1)

of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain

secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy

Code without the Debtors granting to the DIP Agent for the benefit of itself and the DIP Lenders,

subject to the Carve-Out, (i) the DIP Liens (as defined in paragraph 7 below), including the priming DIP Liens described in paragraph 7(b) below, and (ii) the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Order and the DIP Documents. Specifically, no party or parties other than the DIP Lenders would provide postpetition financing to the Debtors absent the Debtors granting such parties priming liens on the Debtors' assets pursuant to section 364(d)(1) of the Bankruptcy Code, and the Debtors were unable to satisfy the requirements of section 364(d)(1) of the Bankruptcy Code.

(c)     The terms of the DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order and the DIP Agreement reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Financing and all other financial accommodations provided under the DIP Documents and this Order.

(d)     The DIP Documents and the terms and conditions of the Debtors' use of the Prepetition Collateral (including the Cash Collateral) have been the subject of negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the PMCA Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all Loans made to, and guaranties issued by, the Debtors pursuant to the DIP Agreement, (ii) the Debtors' obligation to pay all reasonable costs and expenses of (a) the Initial Lender (including all reasonable, actual and documented fees, expenses and disbursements of the Initial Lender's counsel and financial advisors, i.e., Willkie Farr & Gallagher LLP, Sullivan & Cromwell LLP, Goodmans LLP, Steptoe & Johnson LLP, and Lazard Ltd., and (b) the DIP

Agent (including all reasonable, actual and documented fees, expenses and disbursements of the DIP Agent's counsel, i.e., Emmet, Marvin & Martin, LLP) in connection with the preparation, execution and delivery of the DIP Agreement and the funding of the DIP Financing, and (iii) all other obligations (including, without limitation, indemnification and fee obligations) of the Debtors under the DIP Documents and this Order now or hereafter owing to the DIP Agent or any DIP Lender (collectively, (i), (ii) and (iii), the "***DIP Obligations***") shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(e)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2.  Absent the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

5.     *Authorization Of The DIP Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized, without stockholder, member or board of directors (or similar body) approval, to enter into and perform their obligations under the DIP Documents and, in the case of (i) the Borrower, to borrow thereunder up to an aggregate principal amount of $18 million (plus fees, interest and other amounts to be capitalized in

accordance with the terms of the DIP Documents) for working capital and other general corporate purposes of the Debtors and to pay interest, fees and all other expenses provided for in the DIP Documents, pending entry of the Final Order, all in accordance with the terms of this Order, the DIP Agreement and the other DIP Documents, and (ii) the Guarantors, to jointly and severally (except as provided in section 10.17 of the DIP Agreement) guaranty such borrowing and all other DIP Obligations.

(b)     The Debtors are authorized to use the proceeds of borrowings under the DIP Agreement and Cash Collateral in accordance with and to the extent permitted by the DIP Documents.

(c)     On an interim basis, in furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, to perform all acts and to execute and deliver all instruments and documents that the DIP Agent or the Initial Lender determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for immaterial amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans or (B) increase the Commitments or the rate of interest payable on the Loans under the DIP Agreement; <u>provided</u>, that a copy of any

amendment, waiver, consent or other modification to the DIP Documents shall be provided by the Debtors to (X) the U.S. Trustee, (Y) counsel to any statutory committee of unsecured creditors appointed in the Cases (the "***Committee***"), if any and (Z) counsel to the Prepetition Secured Notice Parties;

(iii)     the non-refundable payment to the DIP Agent, its affiliates and the DIP Lenders, as the case may be, of (A) the fees set forth in the DIP Documents (including, without limitation, the fees provided for in the Fee Schedule, dated October 7, 2010, between the Borrower and the DIP Agent) and (B) such reasonable, actual, and documented costs and expenses as may be due from time to time under the DIP Documents, all as provided in the DIP Documents and all of which constitute DIP Obligations; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents.

(d)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents, without the need for approval by any equity holder, member, or board of directors (or similar body) of any Debtor.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(e) The Debtors have provided the DIP Lenders with the 13-week cash flow projection annexed hereto as Exhibit A (the "***Initial 13-Week Projection***").  On a bi-weekly basis, the Debtors will provide the DIP Agent and DIP Lenders with an updated cash flow projection for the following 13 weeks.

6. *Superpriority Claims.*

(a) Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "***Superpriority Claims***") against the Debtors and, except to the extent expressly set forth in this Order in respect of the Carve-Out, such Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  For the avoidance of doubt, the DIP Obligations of any Non-Subsidiary Guarantor shall be limited to the extent set forth in section 10.17(a) of the DIP Agreement.

(b) For purposes hereof, the "***Carve-Out***" shall mean:  (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under

section 1930(a) of title 28 of the United States Code; ( ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) with respect to the information officer (the "***Information Officer***") to be appointed by the Canadian Court in connection with the proceedings commenced pursuant to the Companies' Creditors Arrangement Act (Canada) R.S.C. 1985, c. C-36 as amended in the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "***Canadian Proceedings***"), all fees and expenses required to be paid to the Information Officer in connection with the Canadian Proceedings, including to the extent secured by the charge to be granted by the Canadian Court over the Debtors' assets in Canada, in the maximum amount of CDN $125,000, to secure payment of any such fees and expenses of the Information Officer; and (iv) after the occurrence and during the continuance of an Event of Default under the DIP Documents, the payment of allowed professional fees and disbursements incurred by the Debtors or the Committee after the occurrence of the Event of Default not in excess of $800,000 (plus all unpaid professional fees and expenses allowed by this Court that were incurred prior to the occurrence of such Event of Default); provided that (X) the Carve-Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or liens and claims held by DIP Agent, the DIP Lenders, the Prepetition Secured Parties, (Y) so long as no Event of Default shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees and expenses allowed by this Court under sections 328, 330 and 331 of the Bankruptcy Code, and (Z) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

7.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "***DIP Collateral***"), subject only to the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the ***"DIP Liens"***):

(a)     *First Lien on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, and excluding any property that is excluded from the definition of "Collateral" in section 10.01 of the DIP Agreement, the "***Unencumbered Property***"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, instruments, investment property, goods, satellites, spare satellites, ground stations, commercial tort claims, proceeds from the disposition of Federal Communications Commission

and/or Industry Canada licenses (and the Federal Communications Commission and/or Industry Canada licenses themselves, to the fullest extent permitted by applicable law), books and records, in each case, wherever located, and the proceeds, products, rents and profits of all of the foregoing.

(b)     *Liens Junior to Certain Existing Liens.*  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether now existing or hereafter acquired and all proceeds thereof, that is subject to the Prepetition Secured Party Liens or the Permitted Prepetition Liens, which security interest and lien shall be junior to (i) the Prepetition Secured Party Liens and the Permitted Prepetition Liens (but only to the extent such liens secure valid and enforceable Prepetition Secured Obligations), and (ii) the Carve-Out, but senior to all other liens.

(c)     *Liens Priming TSN Secured Party Liens.*  Pursuant to section 364(d)(1) of the Bankruptcy Code, and based upon the consent of the TSN Secured Party (as defined below), a valid, binding, continuing, enforceable, fully-perfected, priming lien on, and security interest in, all now existing or hereafter acquired property of TerreStar Networks (Canada) Inc. that constitutes "Collateral" (as defined in the TSN Security Agreement (defined below)) (the "***TSN Collateral***") under that certain Second Amended and Restated Security Agreement, dated August 11, 2009, as amended, by and between TerreStar Networks Inc., as Secured Party (the "***TSN Secured Party***"), and TerreStar Canada Inc., as Obligor (the "***TSN Security Agreement***").  The DIP Liens on the TSN Collateral shall be senior in all respects to the security interests in, and liens on, the TSN Collateral of the TSN Secured Party (the "***TSN Security Agreement Liens***"),

but shall be junior to:  (a) the 15% Notes Permitted Prepetition Liens; (b) the 15% Notes Liens; and (c) the Carve-Out.

(d)     *Liens Senior to Certain Other Liens.*  The DIP Liens and the Adequate Protection Liens (as defined in paragraph 12(a) below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (ii) subordinated to or made *pari passu* with any other lien or security interest (other than the Permitted Prepetition Liens, the Prepetition Secured Party Liens, and the Carve-Out) under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.     *Remedies After Event of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of ten (10) days' prior written notice to the Debtors, with a copy to counsel for the Debtors, counsel to the Committee (and, if no Committee is formed, the Debtors' largest thirty (30) unsecured creditors on a consolidated basis), counsel to the Prepetition Secured Notice Parties and to the U.S. Trustee, all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default

18

has occurred and is continuing. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

9. *Limitation on Charging Expenses Against Collateral.* Subject to and effective upon entry of the Final Order, except to the extent of the Carve-Out with respect to the DIP Collateral and the Prepetition Collateral, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied from any other action or inaction by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

11. *Use of Prepetition Collateral (including Cash Collateral).* The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date under the DIP Agreement for, among other things, working capital and general corporate purposes in

accordance with the terms and conditions of this Order and the DIP Documents; <u>provided</u> that the Prepetition Secured Parties are granted adequate protection as hereinafter set forth.

12.     *Adequate Protection*.  The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Secured Parties' security interests in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including the Cash Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "***Adequate Protection Obligations***").  As adequate protection, the Prepetition Secured Parties are hereby granted the following (the "***Adequate Protection***"):

(a)     *Adequate Protection Liens*.

(i)     As security for the payment of the Adequate Protection Obligations with respect to the PMCA, the PMCA Agent (for itself and for the benefit of the PMCA Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on the PMCA Collateral (the "***PMCA Adequate Protection Lien***"), subject and subordinate only to (A) the Permitted Prepetition Liens, (B) Prepetition Secured Party Liens, (C) the DIP Liens, and (D) the Carve-Out, and senior to all other liens (including, without limitation, the TSN Liens).

(ii) As security for the payment of the Adequate Protection Obligations with respect to the 15% Notes, the 15% Notes Trustee/Agent (for itself and for the benefit of the 15% Noteholders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements): (A) a valid, perfected replacement security interest in and lien on the 15% Notes Collateral, and (B) a non-avoidable, valid, enforceable and perfected security interest in and lien on all of the DIP Collateral not included in (A) above (collectively, (A) and (B), the "***15% Notes Adequate Protection Liens***" and together with the PMCA Adequate Protection Lien, the "***Adequate Protection Liens***"), each of which shall be subject and subordinate only to (W) the Permitted Prepetition Liens, (X) Prepetition Secured Party Liens, (Y) the DIP Liens, and (Z) the Carve-Out, and senior to all other liens (including, without limitation, the TSN Liens).

(b) *Section 507(b) Claims*. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "***507(b) Claims***"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 726, 1113 and 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order or the Final Order, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash and the Commitments have been terminated.

(c)     *Fees and Expenses*.  The Prepetition Agent shall receive from the Debtors reimbursement of all reasonable, actual and documented fees and expenses incurred or accrued by the Prepetition Agent under and pursuant to the Prepetition Loan Documents, including, without limitation, the reasonable, actual and documented fees and disbursements of counsel to the Prepetition Agent, whether incurred or accrued prior to or after the Petition Date.  None of the fees and expenses payable pursuant to this paragraph 12(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Subject to any *bona fide* dispute as to the reasonableness of such fees and expenses, the Debtors shall pay the reasonable, actual and documented fees and expenses provided for in this paragraph 12(c) promptly (but no later than ten (10) business days) after invoices for such fees and expenses shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the Committee (if any) and the U.S. Trustee.

(d)     *Information*.  The Debtors shall promptly provide to the Prepetition Agent any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders (or their advisors) and shall continue to provide to the Prepetition Agent and the Prepetition Secured Parties all financial and other reporting as provided prepetition in accordance with the Prepetition Loan Documents.

13.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision

hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection; provided, however, that any such additional or modified adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Order and the DIP Documents. Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any other Prepetition Secured Party.

14. *Perfection of DIP Liens and Adequate Protection Liens.*

(a) The DIP Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent on behalf of the DIP Lenders, or the Prepetition Agent on behalf of the respective Prepetition Secured Parties shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b) A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices

in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)      The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(d)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to do and perform all acts to make, execute and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

15.      *Preservation of Rights Granted Under the Order.*

(a)      No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Agent and other the Prepetition Secured Parties shall be granted or allowed while any portion of the DIP Obligations, the Commitments, the Adequate Protection Obligations or the 507(b) Claims remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest (other than the Permitted Prepetition Liens, the Prepetition Secured Party Liens, and the Carve-Out).

(b) The Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent, or (ii) an order converting or dismissing any of the Cases.

(c) Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Parties granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Adequate Protection Obligations, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, any other administrative expense claims granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Parties granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

16. *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order: (a) shall be binding upon the Debtors for all purposes; and (b) shall be binding upon all other parties in interest, including without limitation, the Committee (if any), unless (i) any such Committee, which shall be deemed to have requisite standing, or any other party-in-interest with requisite standing, has duly filed an adversary proceeding (subject to the limitations contained herein, including, without limitation, in paragraph 17) by no later than (A) the date that is the later of 60 days from the date of an order approving counsel for the Committee, 60 days from the entry of the Final Order, or, if no Committee is appointed, 75 days after the date of entry of the Final Order, subject to extension by the Court, after notice and a hearing, for cause shown, and (B) any such later date agreed to in writing by the Prepetition Agent in its sole and absolute discretion (X) challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing such Prepetition Obligations or (Y) otherwise asserting or prosecuting any claims or causes of action arising under sections 542-553 of the Bankruptcy Code or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "***Claims and Defenses***") against the Prepetition Agent or any of the other Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral, and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding is duly and timely filed in respect of the

26

Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3, not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the Prepetition Agent and the Prepetition Secured Parties, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by the Committee (if any) or any other party-in-interest, and such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding is duly filed, the stipulations and admissions contained in paragraph 3 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee (if any) and any other party-in-interest, except as to any such stipulations and admissions that were expressly and successfully challenged in such adversary proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code) (other than the Committee (if any) as provided above), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing.  Notwithstanding anything to the

contrary in this Interim Order, nothing herein shall prejudice the right or ability of Harbinger Capital LLC or any of its affiliates to challenge the validity, enforceability, priority or amount of the Prepetition Obligations or the liens on the Prepetition Collateral securing such Prepetition Obligations.

17. *Limitation on Use of DIP Financing and DIP Collateral*. The Debtors shall use the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents. Notwithstanding anything herein, no Loans under the DIP Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve-Out may be used to (a) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the other Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, in each case, solely in their capacity as Prepetition Secured Parties, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the other Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such applicable party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted

under the DIP Documents; provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $200,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP Collateral or the Carve-Out may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations, or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Secured Parties.

18. *Exculpation.* Nothing in this Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, or any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agent, the DIP Lenders and the Prepetition Secured Parties comply with their obligations under the DIP Documents and the Prepetition Loan Documents (as applicable) and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent, DIP Lenders and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

19. *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

20. *Master Proofs of Claim.*

(a) To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, subject to entry of the Final Order, (i) the PMCA Agent is authorized (but not required) to file a single master proof of claim (a "**Master Proof of Claim**") on behalf of itself and the PMCA Lenders on account of their claims arising under the PMCA and hereunder against all Debtors in the Borrower's case only; and (ii) the 15% Notes Agent/Trustee is authorized (but not required) to file a Master Proof of Claim on behalf of itself and the 15% Noteholders on account of their claims arising under the 15% Notes Indenture and hereunder against all Debtors in the Borrower's case only.

(b) Upon filing of a Master Proof of Claim by the PMCA Agent and/or the 15% Notes Agent/Trustee (as applicable), the PMCA Agent and/or the 15% Notes Agent/Trustee (as applicable) and each PMCA Lender and/or 15% Noteholder (as applicable) and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the applicable Prepetition Loan Documents and the claims (as defined in section 101 of the Bankruptcy Code) of the PMCA Agent and/or the 15% Notes Agent/Trustee (as applicable) and each PMCA Lender and/or 15% Noteholder, as applicable (and each of their respective successors and assigns) named in the Master Proof of Claim shall be allowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the Master Proof of Claim; provided that the the PMCA Agent and/or the 15% Notes Agent/Trustee (as applicable) may, but shall not be required to, amend the Master Proof of Claim from time to time, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any

such claims.

(c)    The provisions set forth in paragraphs (a) and (b) above are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Prepetition Agent, the other Prepetition Secured Parties or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Secured Party (or its successor in interest) to vote separately on any plan of reorganization proposed in the Cases.

21.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties, the Committee (if any), and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

22.    *Limitation of Liability*.  Subject to entry of the Final Order, in determining to make any Loan under the DIP Agreement, permitting the use of Cash Collateral or in

exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Parties shall not be deemed to be in "control" of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 <u>et</u> <u>seq.</u> as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Parties any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

23. Notwithstanding anything to the contrary herein or in any DIP Document, the maximum liability of any Non-Subsidiary Guarantor under the DIP Documents shall not exceed the sum of (i)(x) the aggregate amount of funds transferred (including as dividends or loans) to any Non-Subsidiary Guarantor or any subsidiary of any Non-Subsidiary Guarantor (excluding the Borrower, the Domestic Subsidiary Guarantors and the Canadian Guarantors) after the Petition Date by the Borrower, any Domestic Subsidiary Guarantor or any Canadian Guarantor (including funds transferred pursuant to section 6.03(h) of the DIP Agreement and payments to TerreStar New York Inc. specified in section 6.05 of the DIP Agreement) minus (ii) the aggregate amount of any funds contributed, loaned or otherwise paid by any Non-Subsidiary Guarantor or any subsidiary of any Non-Subsidiary Guarantor (excluding the Borrower, the Domestic Subsidiary Guarantors and the Canadian Guarantors) to the Borrower, any Domestic Subsidiary Guarantor or any Canadian Guarantor and the aggregate amount paid to the DIP

Agent or any DIP Lender under the DIP Documents by any Non-Subsidiary Guarantor plus (y) the fees and expenses incurred by the DIP Agent or any DIP Lender incurred in connection with the enforcement of the obligations of such Non-Subsidiary Guarantor under the DIP Documents under section 10.17 of the DIP Agreement; *provided, however*, that the maximum liability of all Non-Subsidiary Guarantors, taken together, under the DIP Documents shall not exceed $15,000 in the aggregate at any time (the "***Guarantee Cap***").  The Debtors may request that the Court increase the Guarantee Cap after notice and hearing; *provided, however*, that all parties reserve their rights to object to such increase request in all respects, including, but not limited to, whether the Non-Subsidiary Guarantors should be jointly and severally liable under any guarantee obligations to the DIP Lenders or the DIP Agent.

24.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

25.     *Final Hearing*.  The Final Hearing is scheduled for November 16, 2010 at 10:00 a.m. (prevailing Eastern time) before this Court.

26. *Final Hearing Notice*. The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee (if any) after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York (with a courtesy copy to be sent to the Court's chambers) and be served upon (a) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Ira S. Dizengoff, Esq. and Arik Preis, Esq., attorneys for the Debtors; (b) Emmet, Marvin & Martin, LLP, 120 Broadway, New York, NY 10271, Attn: Elizabeth Clark, Esq., counsel to the DIP Agent, (c) the Prepetition Agent, (d) Willkie Farr & Gallagher, 787 Seventh Avenue, New York, NY 10019, counsel to the Initial Lender; Attn: Matthew A. Feldman, Esq. and Rachel C. Strickland, Esq., (e) counsel to the Prepetition Secured Notice Parties; and (f) the Office of the U.S. Trustee for the Southern District of New York, Attention: Susan Golden, Esq. and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than November 9, 2010 at 4:00 p.m. (prevailing Eastern time).

27.     For the avoidance of doubt, this Order and each of the provisions thereof are being entered on an interim basis and remain subject to entry of a final order.

Dated:     **October 20, 201**0
        New York, New York

                                */s/ Sean H. Lane*
                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Initial 13-Week Projection