QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Susheel Kirpalani (SK-8926)
James C. Tecce (JT-5910)
Scott C. Shelley (SS-1013)
Daniel S. Holzman (DH-5770)
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Counsel to Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| TERRESTAR NETWORKS INC., *et al.*,[1] | Case No. 10-15446 (SHL) (Jointly Administered) |
| Debtors. | **[Proposed] hearing date: 11/16/2010 @ 10 a.m. EST**<br>**[Proposed] objection date: 11/11/2010 @ 5 p.m. EST** |

**NOTICE OF SERIES B CUMULATIVE CONVERTIBLE PREFERRED STOCKHOLDERS' MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 1112(b) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 1017(a), TO DISMISS CHAPTER 11 CASES OF MOTIENT HOLDINGS INC., MVH HOLDINGS INC., TERRESTAR NEW YORK INC., MOTIENT COMMUNICATIONS INC., MOTIENT SERVICES INC., MOTIENT VENTURES HOLDING INC., AND MOTIENT LICENSE INC.**

PLEASE TAKE NOTICE THAT upon the annexed motion, dated November 1, 2010, Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation (the

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766); and 0887729 B.C. Ltd. (1345) (collectively, the "Debtors").

"Movants") filed their Motion, Pursuant to Bankruptcy Code Sections 105(a) and 1112(b) and Federal Rule of Bankruptcy Procedure 1017(a), to Dismiss Chapter 11 Cases of Motient Holdings Inc., MVH Holdings, Inc., TerreStar New York, Inc., Motient Communications Inc., Motient Services Inc., Motient Venture Holding Inc., and Motient License Inc. (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT the Movants have filed a Motion, Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 2002 and 9006(c), for Entry of an Order Shortening Time for Notice of the Hearing to Consider Their Motion, Pursuant to Bankruptcy Code Sections 105(a) and 1112(b) and Federal Rule of Bankruptcy Procedure 1017(a), to Dismiss Chapter 11 Cases of Motient Holdings Inc., MVH Holdings, Inc., TerreStar New York, Inc., Motient Communications Inc., Motient Services Inc., Motient Venture Holding Inc., and Motient License Inc. (the "Motion to Shorten"), requesting that a hearing on the Motion be scheduled for November 16, 2010, at 10:00 a.m. EST before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701, United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE THAT the Motion to Shorten proposes that any responses or objections to the Motion be received by November 11, 2010 at 5:00 p.m. EST.

Dated: November 1, 2010
      New York, New York

                                QUINN EMANUEL URQUHART
                                    & SULLIVAN, LLP

                                */s/ Susheel Kirpalani*
                                Susheel Kirpalani
                                susheelkirpalani@quinnemanuel.com
                                James C. Tecce
                                jamestecce@quinnemanuel.com

Scott C. Shelley
scottshelley@quinnemanuel.com
Daniel S. Holzman
danielholzman@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel to Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Susheel Kirpalani (SK-8926)
James C. Tecce (JT-5910)
Scott C. Shelley (SS-1013)
Daniel S. Holzman (DH-5770)
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Counsel to Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TERRESTAR NETWORKS INC., *et al.*,[1] | : | Case No. 10-15446 (SHL) (Jointly Administered) |
| Debtors. | : | **[Proposed] hearing date: 11/16/2010 @ 10 a.m. EST** **[Proposed] objection date: 11/11/2010 @ 5 p.m. EST** |

**SERIES B CUMULATIVE CONVERTIBLE PREFERRED STOCKHOLDERS' MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 1112(b) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 1017(a), TO DISMISS CHAPTER 11 CASES OF MOTIENT HOLDINGS INC., MVH HOLDINGS INC., TERRESTAR NEW YORK INC., MOTIENT COMMUNICATIONS INC., MOTIENT SERVICES INC., MOTIENT VENTURES HOLDING INC., AND MOTIENT LICENSE INC.**

Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation (the "Series B Preferred Stockholders"),[2] by and through their counsel, hereby move this Court for

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766); and 0887729 B.C. Ltd. (1345) (collectively, the "Debtors").

the entry of an order dismissing the chapter 11 cases of debtors Motient Holdings Inc., MVH Holdings, Inc., TerreStar New York, Inc., Motient Communications Inc., Motient Services Inc., Motient Ventures Holding Inc., and Motient License Inc. (collectively, the "Above-the-Line Debtors"), and in support thereof, respectfully state as follows:

## I. PRELIMINARY STATEMENT

1. The Series B Preferred Stockholders move for dismissal of the Above-the-Line Debtors' chapter 11 cases to prevent the misappropriation by EchoStar of those debtors and their assets from their rightful owners, the shareholders of TSC. In a nutshell, this Court is being asked to approve the looting by EchoStar, which controls the Debtors, of assets to which it has no legal claim. Notably absent from the record in these cases is any showing that the Above-the-Line Debtors are in need of chapter 11 protection. The TSN Debtors[3] cannot identify either an intent to reorganize the Above-the-Line Debtors or a reasonable probability that they eventually will emerge from chapter 11. Indeed, on the first day of these cases, counsel for the Debtors advised the Court of their intent to "retire" the Above-the-Line Debtors. Furthermore, the Above-the-Line Debtors, which guaranteed the DIP Agreement, will not borrow any funds under that facility because they have no need for DIP Facility funds. Similarly, inclusion of the Above-the-Line Debtors in the Restructuring Support Agreement serves no useful purpose in support of the TSN Debtors' reorganization. To the contrary, under the Restructuring Support Agreement, the Above-the-Line Debtors will be "retired" – after their boards are replaced with TSN directors and after their assets have been siphoned to EchoStar and other secured creditors of TSN under

[2] The affiliated managed funds of Solus Alternative Asset Management LP and Millennium International Management LP are owners of Series B Cumulative Convertible Preferred Stock of TSC.

[3] The Series B Preferred Stockholders define the "TSN Debtors" to include TerreStar Networks Inc. ("TSN"), TerreStar License Inc., TerreStar National Services Inc., TerreStar Networks Holdings (Canada) Inc., TerreStar Networks (Canada) Inc., and 0887729 B.C. Ltd.

the TSN Debtors' chapter 11 plan (for no consideration). Chapter 11 serves as a tool to further rehabilitative purposes. Here, the use of chapter 11 to turn corporate law upside down should not be countenanced.

2. The Above-the-Line Debtors' chapter 11 cases should be dismissed for two independent reasons. ***First***, their bankruptcy petitions were not filed in good faith or in furtherance of a rehabilitative purpose. They are neither in need of rehabilitation nor would they benefit from a reorganization. Rather, they were incorporated into TSN's bankruptcy merely in order to provide EchoStar, an insider of TSC[4] and the so-called "Plan Sponsor," with additional value – value that properly should flow upward under state law to the exclusive benefit of the Above-the-Line Debtors' ultimate parent, TSC, without any sharing with TSN and its stakeholders.

3. The First Day Affidavit does nothing to explain the factors contributing to the filing of the Above-the-Line Debtors for chapter 11 protection. (See Aff. ¶¶ 63-73). Nor does it explain the role the Above-the-Line Debtors will play in the TSN Debtors' reorganization. Rather, the terms of the Restructuring Support Agreement (the "RSA") among the TSN Debtors, the Above-the-Line Debtors, Terrestar Corporation ("TSC") (non-debtor), TerreStar Holdings

---

[4] According to TSC's 10-K/A for the year ended December 31, 2009, EchoStar holds 26.9% of TSC's voting stock, including notes exchangeable into common stock. Specifically, the 10-K/A provides, "Pursuant to a Schedule 13D dated June 19, 2008, as filed with the Commission, EchoStar Corporation reported it had shared voting and dispositive power over 39,180,172 shares, including 9,180,172 shares of Common Shares issuable upon the conversion of its Exchangeable Notes." In addition, to its TSC common stock, EchoStar is the sole holder of Series C preferred stock, which gives it certain consent rights relating to certain fundamental corporate actions, including, among other things, certain sales of assets, making any material change in TSC's line of business, amending or permitting the amendment of TSC's certificate of incorporation, by-laws, or other of TSC's organizational documents or those of any of its subsidiaries, certain acquisitions of assets, certain capital expenditures, consolidations and mergers, and rights to appoint directors.

Inc. ("TS Holdings") (non-debtor) and EchoStar Corporation ("EchoStar") contemplate the merger of the Above-the-Line Debtors' assets with and into TSN.

4. As stated at the First Day Hearing, EchoStar and the Debtors do not contemplate the Above-the-Line Debtors' emergence from bankruptcy, but rather that they will be "retired" in the chapter 11 cases, as explicitly stated by the Debtors' counsel. *See* Hr'g Tr. 20:7, October 20, 2010. Debtors' counsel uses the term "retired" as a euphemism for merging the Above-the-Line Debtors out of existence, and EchoStar taking their assets without any consideration as part of the reorganization of the TSN Debtors, even though TSN has no valid legal or corporate claim to these assets.

5. ***Second***, the directors of TSC and the Above-the-Line Debtors owe independent fiduciary duties to their respective estates and stakeholders. The appropriate discharge of those duties, however, is not dictating the directors' actions in these cases. Instead, those entities (and their directors) are beholden to EchoStar and the TSN Debtors at the expense of the stakeholders of TSC and the Above-the-Line Debtors. Indeed, they have agreed to the terms of, and are seeking to assume, the RSA, an agreement that effectively hands control over to EchoStar and denies the Above-the-Line Debtors' existing equity holders any distributions on account of their interests. It is improper for the fate – let alone the value – of the Above-the-Line Debtors to be siphoned from its stakeholders to EchoStar and other TSN creditors, who have no valid claim to these entities or their assets. Accordingly, the Series B Preferred Stockholders submit the Above-the-Line Debtors' chapter 11 cases should be dismissed.

## II. BACKGROUND

6. The Debtors filed petitions for relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") on October 19, 2010

(the "Petition Date"). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Also on the Petition Date, the Debtors filed their Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Authorizing Debtors to Use Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Parties; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "DIP Motion"), and their Motion for an Order (A) Authorizing the Debtors to Assume a Restructuring Support Agreement and (B) Granting Related Relief (the "RSA Assumption Motion").

8. Pursuant to the DIP Motion, the Debtors seek to obtain debtor in possession financing (the "DIP Financing") in accordance with the terms and conditions of a $75 million secured debtor in possession credit agreement (the "DIP Agreement") among TSN as borrower, the other Debtors, including the Above-the-Line Debtors, as guarantors, The Bank of New York Mellon, as administrative and collateral agent, and EchoStar, as the initial DIP Lender. In addition to providing guarantees under the DIP Agreement, the Above-the-Line Debtors also are required to pledge their assets as collateral securing the DIP Facility. Proceeds of the DIP Financing will fund TSN's postpetition operating expenses incurred in the ordinary course of business and certain other costs and expenses incurred in connection with the administration of the Debtors' chapter 11 cases.

9. The Above-the-Line Debtors are not borrowers under the DIP Agreement, and most likely will not receive any benefit from the DIP Financing. Instead, the Above-the-Line Debtors are parties to the DIP Agreement in order to guarantee TSN's debt thereunder, and to pledge their assets as collateral securing the DIP Facility.

10. Pursuant to the RSA Assumption Motion, the Debtors seek to assume the RSA. Through the RSA, EchoStar has committed to support a plan of reorganization (a "Plan") consistent with the Restructuring Term Sheet attached to the RSA (the "Term Sheet"). Among other things, the Term Sheet provides that (i) EchoStar will select the members of TSN's board of directors, who will also serve as the members of the initial boards of directors of the other reorganized Debtors, including the Above-the-Line Debtors to the extent they are not "retired," (ii) the Debtors, TSC, and TS Holdings cannot enter into any material contractual obligations or settlements without EchoStar's prior written consent, and (iii) the legal entities that own the Debtors' existing equity shall receive no distributions on account of their equity interests, and instead these entities will be "retired."

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## IV. RELIEF REQUESTED

12. By this Motion, the Series B Preferred Stockholders seek entry of an order, pursuant to sections 105(a) and 1112(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1017(a), dismissing the chapter 11 cases of the Above-the-Line Debtors.

## V. BASIS OF RELIEF REQUESTED

13. Section 1112(b) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate, the court shall convert a case under [chapter

11] to a case under chapter 7 or dismiss a case under [chapter 11]…if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

14. Section 1112(b)(4) enumerates a non-exclusive list of items that constitute "cause," including, *inter alia*, substantial or continuing loss to or diminution of the estate, absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, failure to timely provide information or attend meetings, and failure to timely file a disclosure statement, or file or confirm a plan of reorganization. 11 U.S.C. § 1112(b)(4).

15. "[I]t is well established that the listed factors are not exclusive." *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001). Therefore, the court "will be able to consider other factors than those enumerated in § 1112(b) as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *Id.* (internal quotations omitted). As one court noted:

> [t]he precise perimeters of 'cause' are intentionally omitted from the statute so as to afford maximum flexibility and, among other things, to enable a bankruptcy court to dismiss a Chapter 11 case for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process.

*Id.* (quoting *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988).

**A. Cause Exists To Dismiss The Above-the-Line Debtors' Chapter 11 Cases When They Were Not Filed In Good Faith Or In Furtherance Of A Rehabilitative Purpose.**

16. To prevent abuse of the protections of chapter 11, courts have imposed a requirement that the petition be filed in good faith. *In re Marsch,* 36 F.3d 825, 828 (9th Cir. 1994). "The purpose of the good faith requirement is to ensure that the hardships imposed on creditors are justified by fulfillment of statutory objectives." *In re Liberate Technologies,* 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004) (dismissing chapter 11 case upon creditor's motion

because, although the Debtors' business was unsuccessful, it had cash that exceeded its liabilities and did not need bankruptcy protection).

17. The good faith requirement operates through section 1112(b), and is "a species of cause for dismissal." *Id.*; *see also Fraternal Composite Services, Inc. v. Karczewski*, 315 B.R. 253, 256 (N.D.N.Y. 2004). Whether a petition fails to satisfy the good faith requirement, so as to warrant its dismissal, requires "careful examination of the facts on a case-by-case basis." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Grounds for dismissal exist if it is clear on the filing date that "there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from the bankruptcy proceedings." *In re C-TC 9th Ave. Partnership*, 113, F.3d 1304, 1309 (2d Cir. 1997) (internal quotations omitted). "[A] determination of bad faith requires a full examination of all the circumstances of the case," and a court may draw inferences from the record to dismiss a chapter 11 case. *Id.* at 1312.

18. Whether a debtor is in need of chapter 11 relief is "the most conspicuous element of the good faith requirement." *Liberate Technologies*, 314 B.R. at 211. "Courts, therefore have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11. Those courts have recognized that if a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." *Id.* (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999)).

19. "Although the debtor need not be *in extremis* to file a Chapter 11 petition, it must, at least, be experiencing a level of financial difficulty that, if it did not file at that time, it would likely need to file in the future." *Fraternal Composite Services*, 315 B.R. at 256-57

(affirming bankruptcy court's dismissal of chapter 11 case of corporate debtor that was solvent, profit-earning, and up-to-date on all of its obligations to its creditors when it filed its chapter 11 petition). The mere possibility that the debtor may need to file for chapter 11 protection in the future does not establish the debtor's good faith, and courts have found bad faith in cases where the debtor had no reason to reorganize or rehabilitate. *Id.* at 257.

20. While courts may consider the interests of a debtor-group as well as the interests of an individual debtor, the cases focusing on the purported need of an entire debtor-group to remain in chapter 11 have generally involved the chapter 11 filings of solvent wholly-owned subsidiaries crucial to the parent's reorganization, *see In re U.I.P. Engineered Prods. Corp.*, 831 F.2d 54, 56 (4th Cir. 1987), or where a principal member of a corporate family is placed in chapter 11 in conjunction with the necessary filings by its affiliates. *See In re Mirant Corp.*, 2005 WL 2148362, *5 (Bankr. N.D. Tex. 2005) (noting that the subsidiary likely would have faced repercussions from the filing of its affiliates if it had not been included in the bankruptcy filing, and that "[a] failure to file for an entity that is a principal member of the family could prove disastrous if relief in fact was necessary"); *see also In re General Growth Properties, Inc.*, 409 B.R. 43, 61-2 (Bankr. S.D.N.Y. 2009) (considering interests of debtor-group where lenders seeking dismissal of corporate group's bankruptcy-remote special purpose entities "did not contend that they were unaware that they were extending credit to a company that was part of a much larger group," and noting that "[i]f the ability of the [g]roup to obtain refinancing became impaired, the financial situation of the subsidiary would inevitably be impaired").

21. ***First***, the TSN Debtors have not shown that the Above-the-Line Debtors have any need for rehabilitation or reorganization. There is no indication of their insolvency or

other threat to their financial health that would necessitate their chapter 11 filings. Significantly, most of the Above-the-Line Debtors have no creditors or liabilities, and, to the extent they do, Solus Alternative Asset Management LP, a holder of TSC's Series B Cumulative Convertible Preferred Stock, is willing to loan the necessary funds to finance operations or satisfy their claims on an unsecured basis. Indeed, the First Day Affidavit does nothing to explain how the purported confluence of factors that compelled the TSN Debtors to file for chapter 11 contributed to the need for the Above-the-Line Debtors to file for chapter 11 protection or otherwise impacted them.

22. ***Second***, there is no apparent reason for the Above-the-Line Debtors' inclusion in the bankruptcy filings except to gratuitously offer their assets to EchoStar. They filed for chapter 11 in order to allow for the misappropriation by EchoStar of value and assets that properly belong to stakeholders of TSC. This is not a legitimate purpose for filing or maintaining the Above-the-Line Debtors' chapter 11 cases.

23. ***Third***, there is no intent to reorganize the Above-the-Line Debtors or for them to emerge from bankruptcy – a fact known from day-one. Pursuant to the Plan contemplated by the Term Sheet, the Above-the-Line Debtors will be "effectively retired through this chapter 11 case," and their assets will flow both horizontally and downward to TSN and TSN's subsidiaries. *See* Hr'g. Tr. October 20, 2010 20:7-8. This prospect is not merely academic – but a reality with economic impact. For example, pursuant to the current construct of the Term Sheet, the assets, including a valuable orbital spot, of TerreStar Global Ltd, a subsidiary of Above-the-Line Debtor Motient Ventures Holding Inc., will be diverted to TSN (in reality, EchoStar) upon Motient Ventures Holding Inc.'s equity "retirement." Such abuse of the chapter 11 process further evidences the Above-the-Line Debtors' lack of intent to reorganize,

and warrants dismissal of their chapter 11 cases. Accordingly, the Above-the-Line Debtors' chapter 11 petitions do not embody "any relation to the statutory objective of resuscitating a financially troubled debtor." *Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir. 1989).

24. ***Fourth***, the Above-the-Line Debtors place in the corporate structure is not such that their own lack of need for rehabilitation should be discounted.

**B. The Above-the-Line Debtors Are Not Acting In Accordance With Their Fiduciary Duties To Their Estates And Stakeholders, Warranting Dismissal Of Their Chapter 11 Cases.**

25. The Above-the-Line Debtors owe duties to their estates and their stakeholders to maximize value. Their actions in these cases are not consistent with or in furtherance of these duties.[5] *See, e.g., Cenargo International, PLC*, 294 B.R. 571, 599 n. 32 (Bankr. S.D.N.Y. 2003) ("There is no question that a debtor in possession is a fiduciary, like a chapter 11 trustee, for the estate, creditors and shareholders") (citing *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985); *In re Bidermann Indus., U.S.A., Inc.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997)); *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 246 (5th Cir. 1988) (noting

[5] These duties of a debtor in possession are specifically delineated in the Bankruptcy Code. Section 1107 provides that a debtor in possession has the same duties to the estate and creditors as those of a chapter 11 trustee. 11 U.S.C. § 1107(a). Section 1106(a)(1) of the Bankruptcy Code requires a chapter 11 trustee (and by virtue of section 1107(a), a debtor in possession as well), to fulfill certain of the duties contained in Bankruptcy Code section 704. *See* 11 U.S.C. § 1106(a)(1) (stating that a trustee "shall perform the duties of a trustee specified in sections 704(2), 704(5), 704(7), 704(8) and 704(9) of this title."). Bankruptcy Code section 704(2) requires a trustee, and therefore, a debtor in possession, to "be accountable for all property received, 11 U.S.C. § 704(2), and to "carefully preserve the estate's assets from deterioration or dissipation." 6 Collier on Bankruptcy ¶ 704.04[2] (15th ed. rev. 2010); *see also In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (approving estate asset sale for a lesser sum on trustee's recommendation that lower bid was more secure, because section 345 of the Bankruptcy Code mandates that a "trustee must [] avoid undue risk, particularly when dealing with money of the estate"); *In re Mondie Forge, Inc.*, 148 B.R. 499, 502 (Bankr. N.D. Ohio 1992) ("the [t]rustee has a duty to realize the maximum return for the estate for further distribution to the [d]ebtor's creditors").

that debtor in possession is "duty bound to [act] if doing so would maximize the value of the estate") (citation omitted); *In re Texasoil Enters., Inc.*, 296 B.R. 431, 435 (Bankr. N.D. Tex. 2003) (debtor in possession is "charged with the duties of a fiduciary, holding the estate and operating the business for the benefit of . . . creditors and equity owners").

26. The willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *CFTC*, 471 U.S. at 355. As such, stakeholders have the right to require the debtor in possession's management to exercise its powers for their benefit, and the benefit of the estate as a whole. *See In re Penick Pharmaceutical, Inc.*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[I]n the case of an inanimate debtor in possession such as a corporation, the fiduciary duties borne by a trustee for a debtor out of possession fall on the debtor's directors, officers and managing employees … who have a duty to maximize the value of the estate … and who are burdened to ensure that the resources that flow through the debtor in possession's hands are used to benefit the unsecured creditors and other parties in interest.) (citations omitted).

27. The Bankruptcy Code requires debtors in possession to have undivided loyalty to the estate and its stakeholders, as "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust." *Mosser v. Darrow*, 341 U.S. 267, 271 (1951). Thus, when acting on behalf of two separate but affiliated debtor estates, management must observe the distinct fiduciary duties that are owed to each estate. *See In re N.S. Garrott & Sons*, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986) (noting that when a fiduciary of two jointly administered estates chooses to favor the rights of one estate's creditors over the other's, that fiduciary holds an adverse interest in relation to the first estate); *In re Herberman*, 122 B.R. 273, 281-82 (Bankr. W.D. Tex. 1990) (stating that

"the higher duty of the debtor as trustee/fiduciary must take precedence over the more [] self-interested concerns of the debtor"); *see also* Raymond T. Nimmer & Richard B. Feinberg, Chapter 11 Business Governance: Fiduciary Duties, Business Judgment, Trustees and Exclusivity, 6 Bankr. Dev. J. 1, 42 (1989) (stating that absent substantive consolidation, the assets of each jointly-administered debtor must be treated as separate, with fiduciary duties owed to each individual estate).

28. While a debtor in possession does have latitude to exercise its business judgment in deciding whether to take actions affecting the estate, the freedom from oversight will be constrained where management has conflicting interests that lead to actions or decisions falling outside the scope of good business judgment. *See, e.g., Mission Iowa Wind Co. v. Enron Corp.*, 291 B.R. 39, 43 (S.D.N.Y. 2003) (holding that bankruptcy court should not "defer in conclusory fashion to the debtors' business judgment" and must have regard for "the duty of bankruptcy courts to preserve the integrity of separate estates").

29. Courts have found section 1112(b) "cause" based on breaches of a debtor in possession's fiduciary duty to the estate and its stakeholders. *See, e.g., Hampton Hotel Investors*, 270 B.R. at 358 (court's lack of confidence in the debtor in possession's ability and inclination to comply with its fiduciary duties constituted "cause" under section 1112(b)); *In re Federal Roofing Co., Inc.*, 205 B.R. 638, 642-43 (Bankr. N.D. Ala. 1996) (citing debtor in possession's breach of fiduciary duty to the estate – maintaining an ongoing financial transaction with an insider – as a ground for dismissal or conversion).

30. In filing their chapter 11 petitions and entering into the RSA, the Above-the-Line Debtors' assets have been given away, with no corresponding benefit. Specifically, the Above-the-Line Debtors have granted EchoStar a lien on their assets in order to secure the DIP

Financing – a loan that the Above-the-Line Debtors do not need and will not benefit from. Moreover, the Term Sheet provides, among other things, that (i) to the extent the Above-the-Line Debtors are not retired, their boards of directors will be replaced by the members of reorganized TSN's initial board of directors – directors selected entirely by EchoStar, (ii) EchoStar may terminate the RSA if the Debtors, TSC, or TS Holdings enter into any material contractual obligations or any material settlements without EchoStar's prior written consent, and (iii) the Above-the-Line Debtors' existing equity shall receive no distributions on account of their interests.

31. Here, the decision to guarantee the DIP Financing and pledge the assets of the Above-the-Line Debtors is not the product of good business judgment. Rather, it reflects the decision of the directors, who serve on both TSC's board and TSN's board, to wear solely their TSN hat and ignore their fiduciary duties to TSC's stakeholders. There is no plausible reason why a director of TSC would agree to give away assets without any consideration to parties that have no valid claim to these assets. These actions cannot be justified by claiming that TSC's stakeholders will receive value by virtue of any distribution TSC receives in TSN's bankruptcy as an unsecured creditor. No other unsecured creditor is being required to give up assets in order to receive its pro rata share of three percent of reorganized TSN's equity. Moreover, based on the allocation of value proposed by the RSA, ninety-seven percent of the value taken from the Above-the-Line Debtors will be given to senior stakeholders of TSN and TSC, as a general unsecured creditor of TSN, will only receive back its pro rata share of the remaining three percent.

32. This decision to guarantee the DIP Financing and pledge the assets of the Above-the-Line Debtors utterly fails to comply with the mandate that management be

accountable as trustees for preserving and maximizing estate values. The pledge of the Above-the-Line Debtors' assets in connection with a loan to TSN that is linked to the RSA,[6] which usurps these assets, will result in the Above-the-Line Debtors' assets being reallocated to creditors of TSN, with no benefit to the Above-the-Line Debtors and their stakeholders. There is no valid justification for giving away the Above-the-Line Debtors' assets in this manner. *See Bakalis*, 220 B.R. at 532 (stating that "trustee must [] avoid undue risk, particularly when dealing with money of the estate").

33. By entering into and seeking to assume the RSA, the Above-the-Line Debtors are in complete derogation of the independent duties owed to their stakeholders and estates, and clearly are not exercising their business judgment on behalf of their stakeholders. The Term Sheet provides that EchoStar will select the initial board of directors of TSN, who will also serve as the board of directors for each of the Above-the-Line Debtors (to the extent the Non-Subsidiaries exist after the bankruptcy), and prohibits the Above-the-Line Debtors from entering into any material contractual obligations or material settlements without EchoStar's prior written consent. The Term Sheet also provides that the existing equity shall receive no distributions on account of their interests, "effectively retiring" the Above-the-Line Debtors. Moreover, the Above-the-Line Debtors lack a true "fiduciary out" because termination or rejection of the RSA by the Debtors is an Event of Default under the DIP Agreement.

**C. It Is In Their Creditors' and Estates' Best Interests That The Above-the-Line Debtors' Chapter 11 Cases Be Dismissed Rather Than Converted To A Chapter 7 Liquidation.**

[6] Section 7.01(cc) of the DIP Agreement provides that it is an Event of Default if the RSA is terminated or rejected by the Debtors, thus making their "fiduciary out" illusory because the Debtors will lose their financing if the Debtors agree to pursue a competing plan of reorganization, even if it provides greater value to the Debtors' estates.

34. The Bankruptcy Code requires the court to determine whether conversion or dismissal is in the best interest of the creditors and the estate. *In re The V Companies*, 274 B.R. 721, 740 (Bankr. N.D. Ohio 2002). However, the Bankruptcy Code does not define the "best interests of creditors and the estate." Therefore, "courts are required to consider and weigh the totality of the facts and circumstances of the individual case when determining what is in the best interests of creditors." *In re Hampton Hotel Investors*, 270 B.R. at 358. This entails comparing the creditors' rights in a chapter 7 liquidation and the rights they would have under non-bankruptcy law upon dismissal. *In re V Companies*, 274 B.R. at 740.

35. As discussed above, the Above-the-Line Debtors are not in need of rehabilitation or reorganization. The Above-the-Line Debtors do not belong in bankruptcy, whether pursuant to chapter 7 or chapter 11. There is no need for liquidation, nor would their creditors, to the extent there are any, benefit from liquidation. Rather, dismissal of the Above-the-Line Debtors' cases is in the best interests of their creditors and estates.

## WAIVER OF MEMORANDUM OF LAW

36. The Series B Preferred Stockholders respectfully submit that the citation of applicable authorities and argument set forth herein satisfies the requirement that a memorandum of law in support of this Motion be filed pursuant to Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

37. Notice of this Motion has been provided by overnight mail to the master service list (the "Master Service List") maintained by The Garden City Group Inc., the claims and noticing agent for the Debtors, as well as any other parties that have filed a notice of appearance in these cases and are not on the Master Service List (collectively, the "Notice of

Appearance Parties"). A list of creditors has not been filed yet in these chapter 11 cases. In light of this, and the nature of the relief sought, the Series B Preferred Stockholders respectfully submit that notice by overnight mail to the Master Service List and the Notice of Appearance Parties is sufficient, and that no other or further notice is required.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Series B Preferred Stockholders respectfully request that the Court (a) enter an order, substantially in the form annexed hereto as Exhibit A, dismissing the Above-the-Line Debtors' chapter 11 cases, and (b) granting such other and further relief as may be appropriate.

Dated: November 1, 2010
New York, New York

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

*/s/ Susheel Kirpalani*

Susheel Kirpalani
susheelkirpalani@quinnemanuel.com
James C. Tecce
jamestecce@quinnemanuel.com
Scott C. Shelley
scottshelley@quinnemanuel.com
Daniel S. Holzman
danielholzman@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel to Series B Cumulative Convertible Preferred Stockholders of TerreStar Corporation*