AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Ashleigh Blaylock

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| TERRESTAR NETWORKS INC., *et al.*,[1] | Case No. 10-15446 (SHL) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF FIRST AMENDMENT**
**TO DEBTOR IN POSSESSION FINANCING AGREEMENT**

**PLEASE TAKE NOTICE** that on October 19, 2010, the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") filed the Motion of the Debtors for Interim and Final Orders Under Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Parties; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) [Docket No. 13] (the "**DIP Motion**") to which the Debtor in Possession Financing Agreement ("**DIP Agreement**") was attached as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that on October 20, 2010, the Court approved the Interim Order Under Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Postpetition Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Adequate Protection to Prepetition Secured Parties; and (IV)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar Corporation (6127); TerreStar Holdings Inc. (0778); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) [Docket No. 35] (the "**Interim DIP Order**").

**PLEASE TAKE FURTHER NOTICE** that on November 12, 2010, the Debtors entered into the First Amendment to Debtor-in-Possession Credit, Security & Guaranty Agreement (the "**DIP Amendment**"), a copy of which is annexed hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve all rights to further amend, revise or supplement the DIP Amendment in accordance with the terms of the DIP Agreement.

**PLEASE TAKE FURTHER NOTICE** that the DIP Motion, the DIP Agreement, the Interim DIP Order and the DIP Amendment (collectively, the "**DIP Documents**") are available on the Court's internet website at http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to Court Electronic Records ("**PACER**") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. A copy of the DIP Documents may also be examined between the hours of 9:00 a.m. and 4:30 p.m., Monday through Friday, at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 511, New York, New York 10004-1408 or online at http://www.terrestarinfo.com.

Dated: New York, New York
November 12, 2010

                AKIN GUMP STRAUSS HAUER & FELD LLP

                By:   /s/ Ira Dizengoff
                    Ira S. Dizengoff
                    Arik Preis
                    Ashleigh Blaylock

                    One Bryant Park
                    New York, New York 10036
                    (212) 872-1000 (Telephone)
                    (212) 872-1002 (Facsimile)

                    *Proposed Counsel to the Debtors and*
                    *Debtors in Possession*

# **EXHIBIT A**

# FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT, SECURITY & GUARANTY AGREEMENT

This First Amendment, dated as of November 12, 2010 (this "Amendment"), to the Debtor-in-Possession Credit, Security & Guaranty Agreement, dated as of October 21, 2010, by and among:

(i) TerreStar Networks Inc., a Delaware corporation (the "Borrower");

(ii) Motient Holdings Inc., a Delaware corporation, Motient Communications Inc., a Delaware corporation, Motient License Inc., a Delaware corporation, Motient Services Inc., a Delaware corporation, TerreStar New York Inc., a New York corporation, MVH Holdings Inc., a Delaware corporation, and Motient Ventures Holding Inc., a Delaware corporation (collectively the "Non-Subsidiary Guarantors"); TerreStar National Services, Inc., a Delaware corporation, and TerreStar License Inc., a Delaware corporation (together the "Domestic Subsidiary Guarantors");

(iii) TerreStar Networks Holdings (Canada) Inc., an Ontario corporation, TerreStar Networks (Canada) Inc., an Ontario corporation ("TerreStar Canada"), and 0887729 B.C. LTD., a British Columbia corporation (collectively the "Canadian Guarantors" and together with the Non-Subsidiary Guarantors, the Domestic Subsidiary Guarantors and such other guarantors from time to time party thereto, the "Guarantors" and together with the Borrower, the "Loan Parties");

(iv) the Lenders from time to time party thereto (the "Lenders"); and

(v) The Bank of New York Mellon, as administrative agent and collateral agent (in such capacities, the "Administrative Agent") (the "Credit Agreement");

is entered into by and among the Loan Parties and the Lenders.

WHEREAS, Loan Parties and the Lenders are parties to the Credit Agreement;

WHEREAS, the Loan Parties have requested that the Lenders consent to certain modification of the Credit Agreement and the other Loan Documents to change the definitions of Milestone Requirement and Plan Support Agreement, to limit investments in and transactions with the Motient Loan Parties and, under the circumstances set forth herein, to release the Motient Loan Parties as Loan Parties under the Credit Agreement and other Loan Documents ;

WHEREAS, the Lender party hereto constitutes the only Lender party to the Credit Agreement;

WHEREAS, pursuant to Section 9.08(b) of the Credit Agreement, except as set forth therein, the Credit Agreement may be amended pursuant to an agreement in writing entered into by the Borrower and the Required Lenders; and

WHEREAS, in connection with such request, the Loan Parties and the Lender have agreed to amend the Credit Agreement and other Loan Documents in certain respects, subject to the terms and conditions contained herein.

NOW, THEREFORE, the Lender and the Loan Parties hereby agree as follows:

1. <u>Definitions</u>. Any capitalized term used herein and not defined herein shall have the meaning assigned to it in the Credit Agreement.

2. <u>Amendments to Credit Agreement</u>. Effective as of the Amendment Effective Date (as defined below), the Credit Agreement is hereby amended as follows; <u>provided</u>, <u>however</u>, that the amendments to the Credit Agreement set forth in Sections 2(a), (e), (f) and (x) below shall be deemed to have been effective as of November 5, 2010:

(a) The definition of Acceptable Plan in Section 1.01 is amended in its entirety to read as follows:

""<u>Acceptable Plan</u>" shall mean a Plan in form and substance reasonably acceptable to the Required Lenders; <u>provided</u>, <u>however</u>, that a Plan, which is consistent in all respects with, and includes all the terms of, the Plan filed with the Bankruptcy Court on November 5, 2010, as such Plan has been, or may be amended pursuant to Article XI thereof, shall be deemed acceptable to the Required Lenders."

(b) The definition of Agreed Budget in Section 1.01 is amended in its entirety to read as follows:

""<u>Agreed Budget</u>" shall mean Exhibit A to the Agreed Budget Letter Agreement, dated November 12, 2010, by and between the Borrower and Lender party thereto, subject to modification pursuant to Section 5.11(a)."

(c) The definition of Milestone Requirement in Section 1.01 is amended in its entirety to read as follows:

""<u>Milestone Requirement</u>" shall mean the requirement that the Loan Parties, other than the Non-Subsidiary Guarantors, shall meet the following deadlines; <u>provided</u> however, that in the case of clauses (b), (f) and (g) below, the deadlines shall be met by all Loan Parties (which, for the avoidance of doubt, exclude the Non-Subsidiary Guarantors from and after the Repayment Date): (a) filing an Acceptable Plan by November 5, 2010, (b) filing, jointly with any person required by the FCC or Industry Canada, (i) all necessary applications for approval of the transfers of control over all the FCC Licenses, and the transfer of control over, transfer or assignment of all the Industry Canada Licenses within the terms and conditions thereof, and related authorizations held by any Loan Party that are contemplated by any Acceptable Plan and (ii) all required notifications to the FCC and Industry Canada, in each case by December 14, 2010, (c) receiving Bankruptcy Court approval of a disclosure statement by December 14, 2010, (d) commencement of a hearing by the Bankruptcy Court on confirmation of an

Acceptable Plan by January 31, 2011, (e) entry of a final, non-appealable order by the Bankruptcy Court confirming such Acceptable Plan by February 14, 2011, (f) within 7 days after request of the Administrative Agent (acting at the written request of the Required Lenders), with respect to any order of the Bankruptcy Court, a corresponding recognition order, in form and substance reasonably acceptable to the Required Lenders shall have been entered in the Canadian Court, which order shall have become final and non-appealable within twenty-one (21) days after entry of such order by the Canadian Court, and (g) the Final DIP Order and Final Recognition Order shall have become final and non-appealable within 60 and 63 days of the date of the entry of the Interim DIP Order and Initial Recognition Order, respectively."

(d) The definitions of Loan Parties and Guarantors from and after the Repayment Date shall exclude the Non-Subsidiary Guarantors, and, from and after such date, the Non-Subsidiary Guarantors shall cease to be Guarantors and shall cease to be Loan Parties, and any security interests granted in any of the Loan Documents in any of the Collateral of the Non-Subsidiary Guarantors shall be released and terminated.

(e) The definition of Plan Support Agreement in Section 1.01 is hereby deleted.

(f) The definition of Restructuring Term Sheet in Section 1.01 is hereby deleted.

(g) The definition of Subsequent Funding Date in Section 1.01 is amended in its entirety to read as follows:

""Subsequent Funding Date" shall mean first, on the later of (a) December 5, 2010 and (b) the earliest date that is (i) at least fifteen (15) days after the date of entry of the Final DIP Order and (ii) the date on which no stay pending appeal has been granted with respect to the Final DIP Order; second, on the later of (a) January 7, 2011 and (b) the earliest date that is (i) at least twenty-one (21) days after entry of the Final Recognition Order and (ii) the date on which no stay pending appeal has been granted with respect to the Final Recognition Order (the "Third Advance"); and (c) on the fifth Business Day of each month beginning on the month immediately following the month in which the Third Advance is made."

(h) Section 1.01 is amended by inserting the following definitions in proper alphabetical order:

""Avoidance Actions" shall have the meaning assigned to such term in Section 10.01(a)(xvii)."

""15% Notes Trustee" shall mean U.S. Bank National Association, as trustee under the 15% Notes."

""PMCA Agent" shall mean U.S. Bank National Association, as

3

collateral agent under the PMCA."

""Prepetition Secured Notice Parties" shall mean the PMCA Agent, each lender under the PMCA and the 15% Notes Trustee."

 (i) Section 1.01 is amended by inserting the following definition in proper alphabetical order:

""Repayment Date" shall mean the date when all advances made by the Borrower, any Domestic Subsidiary Guarantor or any Canadian Guarantor after the Petition Date to any Non-Subsidiary Guarantor and TerreStar Global Ltd. (and all investments made by any such Person after the Petition Date in any Non-Subsidiary Guarantor and TerreStar Global Ltd.) have been repaid in full in cash."

 (j) The definition of Monthly Performance Report in Section 1.01 is deleted and the following definition is inserted in proper alphabetical order:

""Monthly Budget Report" shall mean a report in the same form as the Agreed Budget and accompanying projections which shall contain entries detailing the actual performance during the period for which such report is being delivered, the variance from the Agreed Budget and accompanying projections for such period, if any, and an explanation of the reason for any such variance, which report shall include each of the following pages: Executive Summary; Monthly DIP Budget; 13 Week Forecast; Opex Detail; Capex Detail; Revenue; Canada; and Balance Sheet."

 (k) Section 2.01 is amended by inserting the following sentence at the end of such section: "Notwithstanding any provision of this Agreement to the contrary, the first Subsequent Funding Date is December 15, 2010 and the Loan made thereon shall be in an amount not in excess of $6,000,000."

 (l) Section 3.24(c) is amended in its entirety to read as follows:

"(c) After the entry of the DIP Order and to the extent provided therein, the Obligations will constitute allowed super-priority administrative expense claims in the Cases having priority under Section 364(c)(i) of the Bankruptcy Code over all administrative expense claims and unsecured claims against the Loan Parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expense claims of the kind specified in Sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 1113 and 1114 or any other provision of the Bankruptcy Code or otherwise, as provided under Section 364(c)(1) of the Bankruptcy Code, subject, as to priority only, to the Carve-Out to the extent set forth in the DIP Order."

 (m) The introductory sentence of Section 5.04 is amended in its entirety to read as follows:

"Section 5.04. Financial Statements, Reports, etc. Furnish to the Administrative Agent, the Statutory Committee of Unsecured Creditors and the Lenders the

4

following:"

(n)     Section 5.04(b) is amended in its entirety to read as follows:

"(b) within (3) Business Days after the end of each calendar month, beginning with the month ended November 30, 2010 (for which month the Monthly Budget Report shall include information from the Petition Date through and including November 30, 2010), the Monthly Budget Report for the preceding month;"

(o)     Section 5.04(d) is amended by (1) deleting the phrase "and figures contained in the projections in the Agreed Budget" in clause (i) thereof and (2) replacing "since the Petition Date" with "since November 1, 2010."

(p)     Section 5.04(e) is amended by deleting the phrase "and figures contained in the projections in the Agreed Budget" thereof.

(q)     The introductory sentence of Section 5.05 is amended in its entirety to read as follows:

"Section 5.05 Litigation and Other Notices. Furnish to the Administrative Agent and the Statutory Committee of Unsecured Creditors written notice of the following promptly after any Responsible Officer of any Loan Party obtains actual knowledge thereof (unless a specific time frame for providing such written notice is stated, in which case such written notice must be provided within the time frame specified):"

(r)     Section 6.03 and Section 6.07 are each amended by inserting the following sentence at the end of each such section: "Notwithstanding any provision in this Section to the contrary, from and after November 4, 2010, neither the Borrower, any Domestic Subsidiary Guarantor nor any Canadian Guarantor may make any Investment in or engage in any transaction with any Non-Subsidiary Guarantor or TerreStar Global Ltd. (including after the Repayment Date)."

(s)     Section 6.11 is amended in its entirety to read as follows:

"Section 6.11 Minimum Revenues. Permit the aggregate revenues of the Loan Parties of the type set forth in the line item "Roam-in Revenue" in the Agreed Budget on (a) December 31, 2010 or January 31, 2011, to be less than 85% of the amount set forth in the line item "Roam-in Revenue" for such month in the Agreed Budget and accompanying projections or (b) the last day of each month thereafter, to be less than 90% of the amount set forth in the line item "Roam-in Revenue" for such month in the Agreed Budget and accompanying projections."

(t)     Section 6.12 is amended in its entirety to read as follows:

"Section 6.12 Minimum Subscribers. Permit the number of subscribers on (a) December 31, 2010 or January 31, 2011, to be less than 85% of the number of subscribers on such date set forth in the line item "Subscribers" in the Agreed Budget and accompanying projections, or (b) the last day of each month thereafter, to be less than 90% of the

5

number of subscribers on such date set forth in the line item "Subscribers" in the Agreed Budget and accompanying projections."

    (u) Section 7.01(e) is amended in its entirety to read as follows:

"(e) the entry of an order in any of the Cases appointing a trustee or examiner with expanded powers to operate or manage the financial affairs of the Borrower or any of the Loan Parties;"

    (v) Section 7.01(l) is amended in its entirety to read as follows:

"(l) the Loan Parties engaging in or supporting, or using any portion of the Loans, the Collateral, including cash collateral, to support any challenge to the validity, perfection, priority, extent or enforceability of the Loans or the Prepetition Obligations or the liens on or security interests in the assets of the Loan Parties securing the Loans or the Prepetition Obligations, including without limitation seeking to equitably subordinate or avoid the liens securing the Prepetition Obligations, or (b) the Loan Parties engaging in or supporting any investigation or their assertion of any claims or causes of action (or supporting the assertion of the same) against (x) any Lender, (y) the Lenders (as defined in the PMCA) and the Collateral Agent (as defined in the PMCA) or (z) the Noteholders or Holders (as defined in the 15% Notes) and the Trustee (as defined in the 15% Notes); provided that, making information available or otherwise responding to a Statutory Committee of Unsecured Creditors shall not be a violation of this provision; provided that the Loan Parties shall seek Bankruptcy Court approval to limit to $250,000 the amount that any Statutory Committee of Unsecured Creditors may expend in fees and expenses in investigating the foregoing solely with respect to Prepetition Obligations (as opposed to filing a claim or challenge under subparts (a) or (b) above) (it being understood and agreed that any derivative action brought by any Statutory Committee of Unsecured Creditors appointed in the Cases shall not be a breach of such covenant);"

    (w) Section 7.01(cc) is amended in its entirety to read as follows:

"(cc) [Intentionally Omitted];"

    (x) The last paragraph of Section 7.01 is amended in its entirety to read as follows:

"Notwithstanding the foregoing, any Default or Event of Default which results solely from a failure of any Lender to comply with Section 9.20 hereof shall be deemed not to have occurred so long as such action or inaction continues."

    (y) Section 7.02(a) is amended in its entirety to read as follows:

"(a) upon ten (10) Business Days' written notice to the Borrower, the Statutory Committee of Unsecured Creditors, the United States Trustee, the Foreign Information Officer and the Prepetition Secured Notice Parties, the automatic stay under section 362 of the Bankruptcy Code, and any similar or corresponding stay imposed by the Canadian Court, shall be deemed lifted without further order of or application to the Bankruptcy Court or the Canadian Court, to permit the Lenders to (i) reduce or terminate outstanding Commitments,

(ii) terminate the Loans, (iii) charge the default interest on the Loans, (iv) declare the Loans then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and any unpaid accrued Fees and all other liabilities of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding, and (v) subject to the Carve-Out and applicable laws relating to regulatory approvals, exercise any and all remedies under this Agreement, including without limitation to permit the Lenders to realize on all Collateral and exercise remedies under applicable law (including the UCC and the PPSA); and"

(z) Section 9.01(a) is amended in its entirety to read as follows:

"(a) Notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(i) if to any Loan Party, to TerreStar Networks Inc., 12010 Sunset Hills Road, 6th Floor, Reston, VA 20190, with a copy to Akin, Gump, Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attention of Ira Dizengoff and Arik Preis (Facsimile (212) 872-1002);

(ii) if to the Administrative Agent, to The Bank of New York Mellon, 600 E. Las Colinas Blvd., Suite 1300, Irving, Texas 75039, Attention: Melinda K. Valentine, with a copy to Emmet, Marvin & Martin, LLP, 120 Broadway, New York, New York 10271, Attention of Elizabeth M. Clark, Esq.; and

(iii) if to the Statutory Committee of Unsecured Creditors, to Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, NY 10169-0075, Attention of Scott Hazan and David Posner (Facsimile (917) 368-7147)."

(aa) Section 9.04(b)(iii) is amended by inserting the following phrase immediately before the first parenthetical thereof:

"(except for with respect to Section 9.20 hereof)"

(bb) Section 9.17 is amended by inserting the following sentence at the end of such section: "From and after the Repayment Date the Non-Subsidiary Guarantors shall cease to be Loan Parties under this Agreement and each other Loan Document and shall be released from all obligations (including the guarantee and security interests provided by such Persons under Article X) under this Agreement and all other Loan Documents."

(cc) Section 10.01(a)(xvii) is amended in its entirety to read as follows:

"(xvii) all other personal property of such Obligor, excluding Obligor's claims and causes of action arising under sections 542-553 of the Bankruptcy Code ("Avoidance Actions"), but including, subject to entry of a Final DIP Order, any proceeds and/or recoveries from such Avoidance Actions;"

(dd) Article IX is amended by adding a new Section 9.20 at the end thereof as follows:

"Section 9.20 Vote, Cooperation. Each Lender agrees, severally and not jointly, (1) subject to its receipt of a disclosure statement and other solicitation materials in respect of an Acceptable Plan that is approved by the Bankruptcy Court, to vote its claims to accept such Plan and (2) to reasonably cooperate with the Loan Parties in respect of the pursuit and support of the transactions set forth in an Acceptable Plan on or before the applicable Milestone Dates. Nothing in this Section 9.20 shall require any Lender to consent to any modification, waiver or amendment of this Agreement or any other Loan Document."

3. Representations and Warranties. The Loan Parties hereby represent and warrant to the Lender, after giving effect to the amendment set forth herein, as follows:

(a) The representations and warranties contained herein, in the Credit Agreement and in each certificate or other writing delivered to the Lender or the Administrative Agent pursuant hereto on or prior to the date hereof are true and correct in all material respects on and as of the date hereof as though made on such date (except to the extent that such representations and warranties relate solely to an earlier date, in which case, such representations and warranties are true and correct in all material respects on and as of such earlier date).

(b) No Default or Event of Default has occurred and is continuing as of the date of this Amendment.

4. Conditions to Effectiveness. This Amendment shall become effective as of the first date (the "Amendment Effective Date") on which the Lender shall have received duly executed counterparts hereof that, when taken together, bear the authorized signatures of the Loan Parties.

5. Miscellaneous.

(a) Continued Effectiveness of the Credit Agreement. This Amendment shall be effective only in this specific instance for the specific purpose set forth herein. Except as otherwise expressly provided herein, the Credit Agreement is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects and the each Loan Party hereby reaffirms all obligations of the such Loan Party under the Credit Agreement. Except as expressly provided herein, the execution, delivery and effectiveness of this Amendment shall not operate as an amendment or waiver of any right, power or remedy of the Lenders under the Credit Agreement, nor constitute an amendment or waiver of any provision of the Credit Agreement or any other Loan Document, nor constitute a waiver of, or consent to, any Default or Event of Default now existing or hereafter arising under the Credit

Agreement or any other Loan Document, and the Lenders expressly reserve all of their rights and remedies under the Credit Agreement and the other Loan Documents, under applicable law or otherwise.

(b) <u>Counterparts</u>. This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Amendment by telefacsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Amendment.

(c) <u>Headings</u>. Section headings herein are included for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

(d) <u>Costs and Expenses</u>. The Borrower agrees to pay on demand all fees, costs and expenses in connection with the preparation, execution and delivery of this Amendment

(e) <u>Reference to Credit Agreement</u>. On and after the Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Credit Agreement, and each reference in the other Loan Documents to the "Credit Agreement", "thereunder", "thereof" or words of like import referring to the Credit Agreement shall mean and be a reference to the Credit Agreement as amended by this Amendment.

(f) <u>Amendment as Loan Document</u>. The Loan Parties acknowledge and agree that this Amendment constitutes a "Loan Document" under the Credit Agreement. Accordingly, it shall be an Event of Default under the Credit Agreement (i) if any representation or warranty made by the Loan Parties under or in connection with this Amendment shall have been untrue, false or misleading in any material respect when made or (ii) subject to the applicable grace periods set forth in the Credit Agreement, if any Loan Party fails to comply with any covenant or agreement set forth herein.

(g) <u>Governing Law</u>. **THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND, AS APPLICABLE, THE BANKRUPTCY CODE.**

(h) <u>Waiver of Jury Trial</u>. **EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B)**

**ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 5(g).**

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their respective authorized officers as of the day and year first above written.

TERRESTAR NETWORKS INC.,
debtor and debtor-in-possession, as the Borrower

By: /s/ Douglas Brandon
Name: Douglas Brandon
Title: Secretary

MOTIENT HOLDINGS INC.
MOTIENT COMMUNICATIONS INC.
MOTIENT LICENSE INC.
MOTIENT SERVICES INC.
TERRESTAR NEW YORK INC.
MVH HOLDINGS INC.
MOTIENT VENTURES HOLDING INC.
TERRESTAR NATIONAL SERVICES, INC.
TERRESTAR LICENSE INC.,
each a debtor and debtor-in-possession, as
Guarantors

By: _____
Name: Douglas Brandon
Title: Secretary


0887729 B.C. LTD.,
a debtor and debtor-in-possession, as Canadian
Guarantors

By: _____
Name: Douglas Brandon
Title: Secretary

TERRESTAR NETWORKS HOLDINGS
(CANADA) INC.
TERRESTAR NETWORKS (CANADA) INC.
each a debtor and debtor-in-possession, as Canadian
Guarantors

By: /s/ Jacques Leduc
Name:
Title: CFO & TREASURER

ECHOSTAR CORPORATION,
as Lender

By:_____
Name:
Title:

*Signature Page to Amendment to Debtor-in-Possession Credit Agreement*