# Exhibit 1

## December 2, 2010 Version of Plan

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis

1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)
Joanna F. Newdeck
Ashleigh L. Blaylock

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TERRESTAR NETWORKS INC., *et al.*,[1] | ) | Case No. 10-15446 (SHL) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF TERRESTAR NETWORKS INC., TERRESTAR NATIONAL SERVICES, INC., 0887729 B.C. LTD., TERRESTAR LICENSE INC., TERRESTAR NETWORKS HOLDINGS (CANADA) INC., AND TERRESTAR NETWORKS (CANADA) INC.

> **THIS CHAPTER 11 PLAN IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT. THIS CHAPTER 11 PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. ACCORDINGLY, THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

Dated: December 2, 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: TerreStar New York Inc. (6394); TerreStar Networks Inc. (3931); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar License Inc. (6537); TerreStar National Services Inc. (6319); TerreStar Networks Holdings (Canada) Inc. (1337); TerreStar Networks (Canada) Inc. (8766) and 0887729 B.C. Ltd. (1345).

**TABLE OF CONTENTS**

ARTICLE I. ...........................................................................................................................................1
    A.    Defined Terms .....................................................................................................1
    B.    Rules of Interpretation ......................................................................................13
    C.    Computation of Time .........................................................................................13
    D.    Governing Law ...................................................................................................13
    E.    Reference to Monetary Figures ........................................................................13
    F.    Settlement of Certain Inter-Creditor Issues ...................................................13

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, U.S. TRUSTEE FEES AND
PRIORITY TAX CLAIMS.................................................................................................................14
    A.    Administrative Claims ......................................................................................14
    B.    DIP Claims .........................................................................................................15
    C.    U.S. Trustee Fees ...............................................................................................15
    D.    Priority Tax Claims ...........................................................................................15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.............15
    A.    General Rules of Classification ........................................................................15
    B.    Summary of Classification ................................................................................16
    C.    Treatment of Claims and Interests ..................................................................16

ARTICLE IV. ......................................................................................................................................18

ACCEPTANCE REQUIREMENTS.....................................................................................................18
    A.    Acceptance or Rejection of the Plan ...............................................................18
    B.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..........19

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ..................................................19
    A.    Limited Consolidation for Voting, Confirmation and Distribution Purposes .........................19
    B.    Intercompany Claims ........................................................................................19
    C.    Sources of Consideration for Plan Distributions ...........................................19
    D.    Issuance of New Securities and Debt Instruments .........................................20
    E.    The Rights Offering ...........................................................................................20
    F.    Cancellation of Securities and Agreements.....................................................20
    G.    Exemptions for Issuance of New Equity ..........................................................21
    H.    Corporate Existence...........................................................................................21
    I.    New Certificate of Incorporation and New By-Laws ......................................21
    J.    Reorganized TSN Debtors' Boards of Directors ............................................21
    K.    Officers of Reorganized TSN Debtors .............................................................22
    L.    Employee Benefits .............................................................................................22
    M.    Vesting of Assets in the Reorganized TSN Debtors.........................................22
    N.    Restructuring Transactions...............................................................................22
    O.    Intercompany Interests .....................................................................................23
    P.    Corporate Action...............................................................................................23
    Q.    Effectuating Documents; Further Transactions ............................................23
    R.    General Settlement of Claims and Interests ...................................................23
    S.    Section 1146 Exemption from Certain Taxes and Fees ..................................24
    T.    D&O Liability Insurance Policies and Indemnification Provisions................24
    U.    Preservation of Rights and Causes of Action..................................................24
    V.    Payment of Fees and Expenses of Senior Secured Notes Indenture Trustee/Agent
        and Purchase Money Agent..............................................................................25

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.....25

| | | |
|---|---|---|
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 25 |
| B. | Cure of Defaults for Executory Contracts and Unexpired Leases Assumed | 26 |
| C. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 26 |
| D. | Insurance Policies | 26 |
| E. | Modifications, Amendments, Supplements, Restatements or Other Agreements. | 27 |
| F. | Reservation of Rights | 27 |
| G. | Contracts and Leases Entered Into After the Petition Date. | 27 |

**ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS** ... 27

| | | |
|---|---|---|
| A. | Record Date for Distributions | 27 |
| B. | Timing and Calculation of Amounts to Be Distributed | 27 |
| C. | Fractional Distributions | 28 |
| D. | Disbursing Agent | 28 |
| E. | Rights and Powers of Disbursing Agent | 28 |
| F. | Distributions to Holders of Disputed Claims | 28 |
| G. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 28 |
| H. | Hart-Scott-Rodino Compliance | 29 |
| I. | Withholding and Reporting Requirements | 29 |
| J. | Setoffs | 29 |
| K. | Claims Paid or Payable by Third Parties | 30 |
| L. | Postpetition Interest | 30 |
| M. | Section 506(c) Reservation | 30 |
| N. | Single Satisfaction of Claims | 30 |

**ARTICLE VIII.** ... 31

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** ... 31

| | | |
|---|---|---|
| A. | Prosecution of Objections to Claims | 31 |
| B. | Allowance of Claims | 31 |
| C. | Disputed Claims Reserve | 31 |
| D. | Distributions After Allowance | 31 |
| E. | Distribution of Excess Amounts in the Disputed Claims Reserve | 31 |
| F. | Property Held in the Reserve for Disputed Claims | 31 |
| G. | Estimation of Claims | 32 |
| H. | Deadline to File Objections to Claims | 32 |

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS** ... 32

| | | |
|---|---|---|
| A. | Compromise and Settlement of Claims, Interests and Controversies | 32 |
| B. | Releases by the TSN Debtors | 32 |
| C. | Releases by Holders of Claims and Interests | 33 |
| D. | Exculpation | 33 |
| E. | Discharge of Claims and Termination of Interests | 33 |
| F. | Injunction | 34 |
| G. | Term of Injunctions or Stays | 35 |
| H. | Injunction Against Interference With Plan | 35 |
| I. | Injunction Related to Releases and Exculpation | 35 |
| J. | Protection Against Discriminatory Treatment | 35 |
| K. | No Consent to Change of Control Required | 35 |
| L. | Release of Liens | 36 |

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE** ... 36

| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation | 36 |
| B. | Conditions Precedent to the Effective Date | 36 |
| C. | Waiver of Conditions | 37 |
| D. | Effect of Failure of Conditions | 37 |

**ARTICLE XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN** .............................**38**
    **A.**      **Modification and Amendments**.........................................................................**38**
    **B.**      **Effect of Confirmation on Modifications** ......................................................**38**
    **C.**      **Revocation or Withdrawal of the Plan** ...........................................................**38**

**ARTICLE XII. RETENTION OF JURISDICTION**.............................................................................**38**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** ............................................................................**40**
    **A.**      **Immediate Binding Effect**.................................................................................**40**
    **B.**      **Additional Documents** ......................................................................................**40**
    **C.**      **Dissolution of Creditors' Committee**..............................................................**40**
    **D.**      **Successors and Assigns** ....................................................................................**41**
    **E.**      **Service of Documents** ......................................................................................**41**
    **F.**      **Entire Agreement** .............................................................................................**41**
    **G.**      **Severability of Plan Provisions** .......................................................................**41**
    **H.**      **Exhibits** .............................................................................................................**41**
    **I.**      **Votes Solicited in Good Faith**..........................................................................**42**
    **J.**      **Closing of Chapter 11 Cases** ...........................................................................**42**
    **K.**      **Conflicts** ............................................................................................................**42**

## INTRODUCTION

TerreStar Networks, Inc., TerreStar National Services, Inc., 0887729 B.C. Ltd., TerreStar License Inc., TerreStar Networks Holdings (Canada) Inc., and TerreStar Networks (Canada) Inc. respectfully propose the following joint chapter 11 plan of reorganization. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form:

1.      *"Accrued Professional Compensation"* means, at any given moment, all accrued, contingent and/or unpaid fees (including success fees) for legal, financial advisory, accounting and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code by any retained Professional in the Chapter 11 Cases, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation. For the avoidance of doubt, Accrued Professional Compensation shall not include any accrued, contingent and/or unpaid fees for services and obligations for reimbursement of expenses rendered or incurred before the Effective Date by (i) any Entity retained pursuant to the Ordinary Course Professional Order and authorized to be compensated thereunder without filing a fee application, or (ii) the Senior Secured Notes Indenture Trustee/Agent and the Purchase Money Agent, who are authorized to be compensated under the Final DIP Order without filing a fee application.

2.      *"Additional Shares"* means shares of New Preferred Stock, other than the Rights Offering Preferred Stock.

3.      *"Administrative Claim"* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the TSN Debtors of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2) or 507(b) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the TSN Debtors; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), 331 or 363 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; and (c) all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

4.      *"Administrative Claims Bar Date"* means the bar date for Administrative Claims as such term is defined in Article II.A.3 hereof.

5.      *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      *"Allowed Claim" or "Allowed [___] Claim"* (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or applicable law; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, indenture or other agreement entered into in connection with

the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a TSN Debtor in the ordinary course of business during the Chapter 11 Cases of the TSN Debtors to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

7.    *"Backstop Amount"* means the Backstop Party's commitment to purchase up to $100 million of the Rights Offering Preferred Stock, or such other greater amount as may be agreed upon by the Backstop Party and the TSN Debtors.

8.    *"Backstop Approval Order"* means that order entered by the Bankruptcy Court on [____], 2010, authorizing and approving (a) the TSN Debtors' entry into the EPCA and (b) the Backstop Commitment Fee, Transaction Expenses, and Indemnification Obligations.

9.    *"Backstop Commitment Fee"* means a commitment fee equal to 3% of the Backstop Amount, which shall be paid in Additional Shares.

10.    *"Backstop Indemnification Obligations"* means the indemnification obligations described in Section 10 of the EPCA.

11.    *"Backstop Party"* means, collectively, EchoStar and, if applicable, any Related Purchasers (as defined in the EPCA).

12.    *"Bankruptcy Code"* means title 11 of the United States Code, as amended from time to time.

13.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of New York.

14.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as well as the general and local rules of the Bankruptcy Court and the Order Pursuant to Sections 105(a) and (d) of the Bankruptcy Code and Bankruptcy Rules 1015(c), 2002(m) annd 9007 Implementing Certain Notice and Case Management Procedures (Docket No. 60), as it may be amended from time to time.

15.    *"Canadian Court"* means the Ontario Superior Court of Justice (Commercial List).

16.    *"Canadian Debtors"* means, collectively, TerreStar Networks (Canada) Inc., TerreStar Networks Holdings (Canada) Inc. and 0887729 B.C. Ltd.

17.    *"Canadian Proceedings"* means the recognition proceeding (Court File No.: CV-10-8944-00CL) commenced on October 20, 2010 before the Canadian Court by TSN, as foreign representative on behalf of the Debtors, pursuant to Part IV of the CCAA, to, among other things, recognize the jointly administered Chapter 11 Cases as a "foreign main proceeding".

18.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

19.    *"Causes of Action"* means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever of the TSN Debtors, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the

Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim set forth on the Schedule of Retained Causes of Action.

20.    *"CCAA"* means the Companies' Creditors Arrangement Act (Canada), R.S. C. 1985, c. C-36, as amended.

21.    *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under Case No. 10-15446 (SHL).

22.    *"Claim"* means any claim against a TSN Debtor as defined in section 101(5) of the Bankruptcy Code.

*23.*    *"Class"* means a category of holders of Claims or Interests as set forth in Article III.

24.    *"Class 3 Distribution"* means (i) 97% of the New Common Stock, and (ii) with respect to holders of Class 3 Claims that become Allowed Claims in accordance with the Rights Offering Procedures on or before the Subscription Record Date only, Rights to purchase 97% of the Rights Offering Preferred Stock.

25.    *"Class 5 Distribution"* means (i) at least 1% but no more than 3% of the New Common Stock, and (ii) with respect to holders of Class 5 Claims that become Allowed Claims in accordance with the Rights Offering Procedures on or before the Subscription Record Date only, Rights to purchase at least 1% but no more than 3% of the Rights Offering Preferred Stock.  The exact percentage will be determined after resolution of the Other Unsecured Claims pool; *however*, for the avoidance of doubt, (1) the TSN Debtors have assumed that the aggregate amount of Allowed Other Unsecured Claims at the TSN Debtors will be approximately $365 million; (2) any decrease in the aggregate amount of Allowed Other Unsecured Claims at the TSN Debtors will result in fewer shares of New Common Stock being issued by Reorganized TSN; and (3) Holders of the Senior Exchangeable Notes Claims will not be harmed by any increase in Allowed Other Unsecured Claims.

26.    *"Class 6 Distribution"* means (i) 3% of the New Common Stock <u>minus</u> any amount of New Common Stock distributed pursuant to the Class 5 Distribution, and (ii) with respect to holders of Class 6 Claims that become Allowed Claims in accordance with the Rights Offering Procedures on or before the Subscription Record Date only, Rights to purchase 3% of the Rights Offering Preferred Stock <u>minus</u> any Rights to purchase Rights Offering Preferred Stock distributed pursuant to the Class 5 Distribution.  The exact percentage will be determined based upon the final resolution of Allowed Other Unsecured Claims.  For the avoidance of doubt, (1) the TSN Debtors have assumed that the aggregate amount of Allowed Other Unsecured Claims at the TSN Debtors will be approximately $365 million; (2) to the extent Allowed Other Unsecured Claims are ultimately determined to be greater than $365 million, holders of Allowed Other Unsecured Claims will not receive any additional New Common Stock; (3) to the extent Allowed Other Unsecured Claims are ultimately determined to be less than $365 million, Reorganized TSN will issue fewer shares of New Common Stock.

27.    *"Collateral"* means any property or interest in property of the TSN Debtors subject to a Lien to secure the payment or performance of a Claim.

28.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases of the TSN Debtors within the meaning of Bankruptcy Rules 5003 and 9021.

30.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court concerning Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

31.     *"Confirmation Order"* means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.     *"Convenience Class"* means the Class of Unsecured Convenience Claims.

33.     *"Convenience Class Election"* means an election by a holder of an Allowed Class 6 Claim in an amount in excess of $25,000 to be treated as a Holder of an Unsecured Convenience Claim in Class 7 by electing to reduce its Class 6 Claim to the amount of $25,000 in full and final satisfaction, release, and discharge of such Allowed Class 6 Claim.  Except as may be agreed to by the TSN Debtors, any Convenience Class Election must be made on the Ballot and no Holder of a Class 6 Claim can make a Convenience Class Election after the Voting Deadline.  Upon any Convenience Class Election, the Class 6 Claim of the applicable holder shall be automatically reduced to $25,000 and shall no longer be entitled to any other distribution on account of its Other Unsecured Credit Claim as contemplated by this Plan.

34.     *"Creditors' Committee"* means the statutory committee of unsecured creditors of the TSN Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee, as such committee membership may be reconstituted from time to time.

35.     *"Cure Claim"* means a Claim based upon a monetary default, if any, by any TSN Debtor on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

36.     *"D&O Liability Insurance Policies"* means all insurance policies of any of the TSN Debtors for directors', managers' and officers' liability, as set forth on the schedule of Insurance Policies to be included in the Plan Supplement.

37.     *"Debtor"* means one of the TSN Debtors, in its individual capacity as a debtor and debtor in possession in these Chapter 11 Cases.

38.     *"Debtors"* means, collectively, the TSN Debtors and the Non-TSN Debtors.

39.     *"DIP Agent"* means The Bank of New York Mellon, or its duly appointed successor, in its capacity as administrative agent and collateral agent under the DIP Loan Agreement.

40.     *"DIP Claims"* means any Claim derived from or based upon the DIP Loan Agreement, including without limitation Claims for principal, interest, fees, or expenses (including without limitation all reasonable, actual and documented fees, expenses and disbursements of (i) EchoStar and its counsel and financial advisors, which consists of Willkie Farr & Gallagher LLP, Sullivan & Cromwell LLP, Goodmans LLP, Steptoe & Johnson LLP, and Lazard Ltd. and (ii) the DIP Agent and its counsel, Emmet, Marvin & Martin, LLP).

41.     *"DIP Lenders"* means EchoStar and the other lenders that may become party to the DIP Loan Agreement from time to time, each in their capacity as such.

42.     *"DIP Loan Agreement"* means that certain Debtor-In-Possession Credit, Security & Guaranty Agreement, dated as of October 19, 2010, by and among TSN, as borrower, each of the other Debtors, as guarantors, the DIP Agent and the DIP Lenders, as may be amended, modified, ratified, extended, renewed, or restated, as well as any other documents entered into in connection therewith.

43.     *"Disbursing Agent"* means the Reorganized TSN Debtors or the Entity or Entities chosen by the Reorganized TSN Debtors to make or facilitate distributions pursuant to the Plan.

44.     *"Disclosure Statement"* means the disclosure statement that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented (including all exhibits and schedules annexed thereto or referred to therein).

45.     "*Disallowed*" means a finding of the Bankruptcy Court in a Final Order, or provision in the Plan providing that a Disputed Claim or Interest shall not be Allowed.

46.     "*Discount Purchase Price*" means $22.71, the price at which the New Preferred Stock will be issued, as set forth in the EPCA.

47.     "*Disputed Claim*" or "*Disputed [___] Claim*" (with respect to a specific type of Claim, if specified) means a Claim that is not an Allowed Claim or Disallowed Claim as of the relevant date.

48.     "*Disputed Claims Reserve*" means the reserve to be created by the TSN Debtors to hold a contribution of New Common Stock, which reserve shall be held for the benefit of holders of Disputed Claims as of the Effective Date that subsequently become Allowed Claims, for distribution according to the procedures set forth in Article VIII.

49.     "*Distribution Date*" means any of the Initial Distribution Date or the Periodic Distribution Dates.

50.     "*Distribution Record Date*" means the date that the Confirmation Order is entered by the Bankruptcy Court.

51.     "*EchoStar*" means EchoStar Corporation and, where applicable, its Affiliates.

52.     "*Effective Date*" means the first business day after which all provisions, terms and conditions specified in Article X.B have been satisfied or waived pursuant to Article X.C.

53.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

54.     "*EPCA*" means that certain Equity Purchase and Commitment Agreement, dated as of November __, 2010, by and among Echostar Corporation and TSN (as the same may be amended, modified or supplemented from time to time).

55.     "*Equity Interests*" mean the Interests in TSN.  For the avoidance of doubt, Equity Interests include the TSN Preferred Shares.

56.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

57.     "*Exculpated Claim*" means any claim related to any act or omission in connection with, relating to or arising out of the TSN Debtors' restructuring efforts, the TSN Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement, Plan, DIP Loan Agreement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of Plan securities, or the distribution of property under the Plan or any other related agreement; *provided, however,* that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud.  For the avoidance of doubt, no Cause of Action, obligation or liability expressly set forth in or preserved by the Plan or the Schedule of Retained Causes of Action constitutes an Exculpated Claim.

58.     "*Exculpated Party*" means each of:  (a) the TSN Debtors, the Reorganized TSN Debtors and their Affiliates, (b) the Creditors' Committee and the current and former members thereof, in their capacity as such; (c) EchoStar in connection with the Chapter 11 Cases, including but not limited to the DIP Loan Agreement, the EPCA, the Plan, the Disclosure Statement, and related documents, agreements, and releases, and (d) the Indenture Trustees and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entities' subsidiaries, affiliates, members, officers, directors, agents, financial advisors, accountants, investment bankers, consultants, attorneys, employees, partners, and representatives, in each case solely in their capacity as such.

59.     *"Executory Contracts and Unexpired Leases"* means contracts and leases to which one or more of the TSN Debtors are party that are subject to assumption or rejection under section 365 of the Bankruptcy Code.

60.     "*Final DIP Order*" means the *Final Order Under Sections 105, 361, 362, 363(c), 364(c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (i) Authorizing Debtors to Obtain Postpetition Financing; (ii) Authorizing Debtors to Use Cash Collateral; and (iii) Granting Adequate Protection to Prepetition Secured Parties* (Docket No. 181).

61.     *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

62.     *"Harbinger"* means collectively, investment funds affiliated with Harbinger Capital Partners and Harbinger Capital Management.

63.     *"Holdback Amount"* means, with respect to Accrued Professional Compensation, amounts held back pursuant to an order or orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order.

64.     *"Holdback Amount Reserve"* means, with respect to Accrued Professional Compensation, a reserve established by the Reorganized TSN Debtors on the Effective Date for the benefit of the Professionals, and to be held in trust for the Professionals, for the payment of the Holdback Amount.

65.     *"Impaired"* has the meaning set forth in section 1124 of the Bankruptcy Code.

66.     *"Impaired Class"* means a Class of Claims or Interests that are Impaired. For the avoidance of doubt, Impaired Classes are Classes 3, 5, 6, 7, and 8 for each Debtor.

67.     *"Indemnification Provisions"* means each of the indemnification provisions, agreements or obligations in place as of the Petition Date, whether in the bylaws, certificates of incorporation or other formation documents in the case of a limited liability company, board resolutions or employment contracts, for the TSN Debtors and the current directors, officers, members (including *ex officio* members), employees, attorneys, other professionals and agents of the TSN Debtors.

68.     *"Indenture Trustees"* means, collectively, the Senior Secured Notes Indenture Trustee/Agent and the Senior Exchangeable Notes Indenture Trustee.

69.     *"Indentures"* means, collectively, the Senior Secured Notes Indenture and the Senior Exchangeable Notes Indenture.

70.     *"Initial Distribution Date"* means the date occurring on or as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence.

71.     *"Insurance Policies"* means, collectively, all of the TSN Debtors' insurance policies listed on the schedule of Insurance Policies to be included in the Plan Supplement.

72.     *"Intercompany Claim"* means any Claim held by a TSN Debtor against another TSN Debtor. The TSN Debtors shall include a schedule listing all Intercompany Claims in the Plan Supplement.

73.     *"Intercompany Interests"* mean the Interests in a TSN Debtor held by another TSN Debtor.

74. *"Interest"* means any equity security in a TSN Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the TSN Debtors together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto. For the avoidance of doubt, with respect to TSN, the Interests include the TSN Preferred Shares.

75. *"Interim Compensation Order"* means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 174).

76. *"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

77. *"Material Contracts or Leases"* means any agreement, lease, user agreement or other type of contract of one or more of the TSN Debtors (a) where consideration has been or will be paid or received by the TSN Debtors or any of its Affiliates in excess of $100,000 in any twelve month period or in excess of $1,000,000 over the remaining term, (b) with an Affiliate, or (c) that relates to the sale, lease or use of spectrum, capacity or satellites (other than as contemplated by the Agreed Budget, as defined in the DIP Loan Agreement).

78. *"New Board"* means, with respect to each Reorganized TSN Debtor, the initial board of directors of such Entity appointed as of the Effective Date, the members of which shall be determined in accordance with Article V.J.

79. *"New By-Laws"* means, with respect to each Reorganized TSN Debtor, the new by-laws of such Entity, the form of which shall be included in the Plan Supplement and shall be reasonably satisfactory to the Plan Sponsor.

80. *"New Certificate of Incorporation"* means, with respect to each Reorganized TSN Debtor, the form of the initial certificate of incorporation (or other applicable formation document) of each such Entity, the form of which shall be included in the Plan Supplement and shall be reasonably satisfactory to the Plan Sponsor.

81. *"New Common Stock"* means a certain number of shares of common stock of Reorganized TSN authorized pursuant to the Plan, of which up to 23,263,176 shares shall be initially issued and outstanding as of the Effective Date, which shares shall be subject to dilution by the conversion of the New Preferred Stock into common stock of Reorganized TSN.

82. *"New Corporate Governance Documents"* means the New Certificates of Incorporation, the New Shareholders Agreement and the New By-Laws, substantially final forms of each of which shall be filed with the Bankruptcy Court in the Plan Supplement.

*83.* *"New Employment Agreements"* means employment agreements that the TSN Debtors shall enter into with certain individuals in the TSN Debtors' senior management, the form of which shall be included in the Plan Supplement and shall be reasonably satisfactory to the Plan Sponsor.

84. *"New Equity"* means the New Common Stock and the New Preferred Stock.

85. *"New Preferred Stock"* means newly issued Series A Preferred Convertible Stock to be issued on the Effective Date in connection with the Rights Offering, the Backstop Commitment Fee and, if purchased, the Overallotment, the terms and conditions of which shall be set forth in the New Preferred Stock Certificate of Designation.

86. *"New Preferred Stock Certificate of Designation"* means the certificate of designation dated as of the Effective Date governing the terms and conditions of the New Preferred Stock, the form of which shall be included in the Plan Supplement and shall be reasonably satisfactory to the Plan Sponsor.

87. *"New Shareholders Agreement"* means that certain agreement to be executed on or before the Effective Date providing for, among other things, the rights and obligations of the holders of the New Common

Stock, the form of which will be filed as part of the Plan supplement and shall be reasonably acceptable to the Plan Sponsor.

88.　　*"Non-Backstopped Shares"* means shares of New Preferred Stock issuable in connection with the Rights Offering that are not subject to the Backstop Party's backstop obligations described herein and in the EPCA, if any.

89.　　*"Non-Debtor Affiliate"* means any Affiliate of the TSN Debtors that is not a TSN Debtor.

*90.*　　*"Non-TSN Debtors"* means TerreStar New York Inc.; Motient Communications Inc.; Motient Holdings Inc.; Motient License Inc.; Motient Services Inc.; Motient Ventures Holding Inc.; and MVH Holdings Inc.

91.　　*"Notes"* means, collectively, the Senior Secured Notes and the Senior Exchangeable Notes.

92.　　*"Notes Claims"* means, collectively, the Senior Secured Notes Claims and the Senior Exchangeable Notes Claims.

93.　　*"Notice and Claims Agent"* means Garden City Group, Inc., located at P.O. Box 9576, Dublin, Ohio 43017-4876, (866) 405-2137, retained as the TSN Debtors' notice, claims and solicitation agent.

*94.*　　*"Ordinary Course Professional Order"* means the *Order Authorizing the Debtors' Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* (Docket No. 173).

95.　　*"Other Debtors"* means all of the Debtors other than TSN.

96.　　*"Other Priority Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than:　(a) an Administrative Claim; (b) a DIP Claim; or (c) a Priority Tax Claim.

97.　　*"Other Secured Claims"* means a Secured Claim against the TSN Debtors, other than the PMCA Claims and the Senior Secured Notes Claims.

98.　　*"Other Unsecured Claims"* means any Allowed unsecured claim against any TSN Debtor, other than a Senior Exchangeable Notes Claim and an Unsecured Convenience Claim, including without limitation, a trade claim, an unsecured claim held by a Non-Debtor Affiliate of the TSN Debtors against the TSN Debtors, or a claim arising out of the rejection of executory contracts or unexpired leases by any TSN Debtor.

99.　　*"Overallotment"* means up to $25 million of Additional Shares purchased by the Backstop Party, at its option, in its sole discretion, purchased at the Discount Purchase Price pursuant to the EPCA.

100.　　*"Periodic Distribution Date"* means, unless otherwise ordered by the Bankruptcy Court, the first Business Day that is 120 days after the Initial Distribution Date, and for the first year thereafter, the first Business Day that is 120 days after the immediately preceding Periodic Distribution Date.　After one year following the Distribution Date, the Periodic Distribution Date will occur on the first Business Day that is 180 days after the immediately preceding Periodic Distribution Date.　Notwithstanding the foregoing, if the Disbursing Agent determines, in his sole discretion, that there are not sufficient distributions to be made on a date that would otherwise be a Periodic Distribution Date, then the Periodic Distribution Date shall be the on last business day of the subsequent calendar quarter.

101.　　*"Person"* has the meaning set forth in section 101(41) of the Bankruptcy Code.

102.　　*"Petition Date"* means October 19, 2010.

103.　　*"Plan"* means this *Joint Chapter 11 Plan of TerreStar Networks, Inc., TerreStar National Services, Inc., 0887729 B.C. Ltd., TerreStar License Inc., TerreStar Networks Holdings (Canada) Inc., and*

*TerreStar Networks (Canada) Inc.* and all exhibits hereto, including the Plan Supplement, which is incorporated herein by reference.

104. *"Plan Securities"* means, collectively, the New Common Stock and the New Preferred Stock.

105. *"Plan Sponsor"* means Echostar, in its capacity as plan sponsor.

106. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed by the TSN Debtors by the Plan Supplement Filing Date compromised of, without limitation, the following:  (a) the New Corporate Governance Documents, (b) the identity of the known members of the New Boards and the nature and compensation for any director who is an "insider" under the Bankruptcy Code; (c) the Rejected Executory Contract and Unexpired Lease List; (d) the Registration Rights Agreement; (e) the Schedule of Retained Causes of Action; (f) the New Preferred Stock Certificate of Designation; (g) the New Employment Agreements; (h) a schedule of the Insurance Policies; (i) a schedule of Intercompany Claims; and all exhibits, attachments, supplements, annexes, schedules, and ancillary documents related to each of the foregoing.

107. *"Plan Supplement Filing Date"* means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least ten days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice; provided, however, that the identity of the initial members of the New Boards and the nature and compensation for any director who is an "insider" under the Bankruptcy Code known at the time shall not be required to be disclosed and filed with the Bankruptcy Court until 10 days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court without further notice.

108. *"Plan Support Agreement"* means that certain agreement, dated as of October 19, 2010, by and between the Debtors, certain Non-Debtor Affiliates, and EchoStar, as amended, supplemented or modified from time to time.

109. *"PMCA Claims"* means the Allowed Claims derived from or based upon the Purchase Money Credit Agreement, in an aggregate amount of  approximately $91.5 million.

110. *"Priority Tax Claim"* means any Claim of a governmental unit, as defined in section 101(27) of the Bankruptcy Code, of the kind specified in section 507(a)(8) of the Bankruptcy Code.

111. *"Pro Rata"* means, as applicable: (a) the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class; (b) the proportion that all Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims or Interests in such Class and other Classes entitled to share in the same recovery under the Plan; or (c) with respect to a participant in the Rights Offering who, in accordance with the Rights Offering Procedures, elects to exercise their right to purchase Non-Backstopped Shares or any Rights Offering Preferred Stock not purchased by other participants thereof or by the Backstop Party (in its capacity as holder of the Senior Secured Notes Claims), the proportion that (i) the amount of shares of Rights Offering Preferred Stock requested to be purchased by such participant (prior to issuance of the Backstopped Shares) bears to (ii) the aggregate amount of shares of Rights Offering Preferred Stock requested to be purchased by all other Rights Offering participants (excluding the Backstop Party) who elect to purchase Non-Backstopped Shares (prior to issuance of the Non-Backstopped Shares) or any Rights Offering Preferred Stock not purchased by other participants thereof or by the Backstop Party (in its capacity as holder of the Senior Secured Notes Claims).

112. *"Professional"* means an Entity:  (a) retained pursuant to a Final Order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363 and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113. *"Proof of Claim"* means a proof of Claim filed against any of the TSN Debtors in the Chapter 11 Cases.

114. "*Purchase Money Agent*" means the U.S. Bank National Association as Collateral Agent under the PMCA.

115. "*Purchase Money Credit Agreement*" means the Purchase Money Credit Agreement, dated as of February 5, 2008, among TSN, as borrower, each of the guarantors named therein, the lenders party thereto and the Purchase Money Agent.

116. "*Purchase Money Lenders*" means those lenders party to the Purchase Money Credit Agreement from time to time.

117. "*Registration Rights Agreement*" means the Registration Rights Agreement, dated as of the Effective Date, among the holders of the Senior Notes Claims and Reorganized TSN, the form of which will be included in the Plan Supplement and shall be reasonably satisfactory to the Plan Sponsor.

118. "*Rejected Executory Contract and Unexpired Lease List*" means the list (as may be amended) of Executory Contracts and Unexpired Leases that will be rejected by the TSN Debtors pursuant to the provisions of Article VI determined by the TSN Debtors; provided, however, that the disposition of any Material Contracts or Lease shall be determined by the TSN Debtors, with the reasonable consent of the Plan Sponsor.

119. "*Rejection Claim*" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

120. "*Releasing Parties*" means all Entities who have held, hold or may hold Claims or Interests that have been released pursuant to Article IX.B or Article IX.C, discharged pursuant to Article IX.E or are subject to exculpation pursuant to Article IX.D.

121. "*Released Party*" means each of (in each case solely in their respective capacities): (a) the current and former directors and officers of the TSN Debtors who were directors or officers of the TSN Debtors as of or after the Petition Date; (b) the Indenture Trustees; (c) the Purchase Money Agent; (d) the DIP Lenders; (e) the Backstop Party; (f) the Plan Sponsor; (g) the Purchase Money Lenders; (h) the holders of the Notes, to the extent such parties vote to accept the Plan; (i) the DIP Agent; (j) the Creditors' Committee and the current and former members thereof; (k) Deloitte & Touche Inc., in its capacity as information officer in the Canadian Proceedings; and (l) with respect to each of the foregoing Entities in clauses (a) through (k), such Entities' subsidiaries, affiliates, members, officers, directors, agents, financial advisors, accountants, investment bankers, consultants, attorneys, employees, partners, and representatives, in each case, only in their capacity as such.

122. "*Reorganized*" means, with respect to the TSN Debtors, any TSN Debtor or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

123. "*Restructuring Transactions*" means a dissolution or winding up of the corporate existence of a debtor or the consolidation, merger, restructuring, conversion, dissolution, transfer, liquidation, contribution of assets, or other transaction pursuant to which a Reorganized TSN Debtor merges with or transfers substantially all of its assets and liabilities to a Reorganized TSN Debtor or newly formed Entity, prior to, on or after the Effective Date, as provided for in Article V.N of the Plan.

124. "*Rights*" means the non-certified subscription rights to purchase the Rights Offering Preferred Stock issued in connection with the Rights Offering on the terms and subject to the conditions set forth in the Plan, the Rights Offering Procedures, and the EPCA.

125. "*Rights Offering*" means the offering of the Rights by TSN to the Holders of the Senior Secured Notes Claims, Senior Exchangeable Notes Claims and Other Unsecured Claims to purchase the Rights Offering Preferred Stock, in accordance with the Rights Offering Procedures, the Plan and the EPCA.

126.    *"Rights Offering Preferred Stock"* means $125 million in face amount of New Preferred Stock to be issued on the Effective Date in connection with the Rights Offering, $100 million of which will be backstopped by the Backstop Party.

127.    *"Rights Offering Procedures"* means the procedures governing the Rights Offering, as agreed upon by the Backstop Party and the TSN Debtors and approved by the Bankruptcy Court, and described in the Disclosure Statement, the EPCA and offering documents relating to the Rights Offering.

128.    *"Schedule of Retained Causes of Action"* means the schedule, to be included as part of the Plan Supplement, listing the Causes of Action to be retained by the Reorganized TSN Debtors after the Effective Date.

129.    *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs filed by the TSN Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as may be amended from time to time before entry of a final decree.

130.    *"SEC"* means the Securities and Exchange Commission.

131.    *"Secured"* means, when referring to a Claim:  (a) secured by a Lien on property in which the Estate of the TSN Debtor against which the Claim is asserted has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code; (b) subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed by Final Order of the Court (which may be the Confirmation Order) as a Secured Claim.

132.    *"Securities Act"* means the U.S. Securities Action of 1933, as amended.

133.    *"Senior Exchangeable Notes"* means the 6.5% senior exchangeable payment-in-kind notes, issued by TSN pursuant to the Senior Exchangeable Notes Indenture.

134.    *"Senior Exchangeable Notes Claims"* means the Allowed Claims arising under the Senior Exchangeable Notes, in an aggregate amount of approximately $178.7 million.

135.    *"Senior Exchangeable Notes Indenture"* means the Indenture, dated as of February 7, 2008 between TSN, as issuer, each of the guarantors named therein and the Senior Exchangeable Notes Indenture Trustee, as well as any guarantees and other documents entered into in connection therewith.

136.    *"Senior Exchangeable Notes Indenture Trustee"* means Deutsche Bank National Trust Company and/or its predecessors and duly appointed successors, in its capacity as indenture trustee under the Senior Exchangeable Notes Indenture.

137.    *"Senior Secured Notes"* means the 15% senior secured payment-in-kind notes, issued by TSN pursuant to the Senior Secured Notes Indenture.

138.    *"Senior Secured Notes Claims"* means the Allowed Claims arising under the Senior Secured Notes, in an aggregate amount of approximately $1,016.7 million.

139.    *"Senior Secured Notes Indenture"* means the Indenture, dated as of February 14, 2007 between TSN, as issuer, the guarantors from time to time party thereto and the Senior Secured Notes Indenture Trustee, as well as any guarantees and other documents entered into in connection therewith, and as amended by those certain First and Second Supplemental Indentures, each dated as of February 7, 2008.

140.     *"Senior Secured Notes Indenture Trustee/Agent"* means U.S. Bank National Association and/or its duly appointed successor, in its capacity as indenture trustee and collateral agent under the Senior Secured Notes Indenture.

141.     *"Senior Secured Notes Security Agreements"* means, collectively:  (i) the Security Agreement, dated as of February 14, 2007, among TSN and the domestic guarantors to the Senior Secured Notes Indenture, as grantors, and U.S. Bank National Association, as trustee and collateral agent for the holders of the Senior Secured Notes;  and (ii) the Security Agreement, dated as of February 14, 2007, among TSN and the Canadian guarantors to the Senior Secured Notes Indenture, as grantors, and U.S. Bank National Association, as trustee and collateral agent for the holders of the Senior Secured Notes.

142.     *"Subscription Expiration Date"* means 5:00 p.m. (prevailing Eastern Time) on [____], 2011.

143.     *"Subscription Record Date"* means the record date established by TSN and approved by the Bankruptcy Court in connection with the Rights Offering, as provided in the EPCA.

144.     *"Transaction Expenses"* has the meaning ascribed to it in the EPCA.

145.     *"TSC"* means TerreStar Corporation.

146.     *"TSN"* means TerreStar Networks Inc.

147.     *"TSN Debtors"* means TerreStar Networks, Inc., TerreStar National Services, Inc., 0887729 B.C. Ltd., TerreStar License Inc., TerreStar Networks Holdings (Canada) Inc., and TerreStar Networks (Canada) Inc.

148.     *"TSN Preferred Shares"* means collectively, the TSN Series A Preferred Shares and the TSN Series B Preferred Shares.

149.     *"TSN Series A Preferred Shares"* means the one share of non-voting Series A preferred stock of TSN, which was issued to EchoStar.

150.     *"TSN Series B Preferred Shares"* means the one share of non-voting Series B preferred stock of TSN, which was issued to Harbinger.

151.     *"Unimpaired"* means any Claim or Interest that is not designated as Impaired.

152.     *"Unsecured Convenience Claims"* means any prepetition unsecured claim against any of the TSN Debtors that, but for being defined as a Unsecured Convenience Claim, would be an Other Unsecured Claim, and either (a) is Allowed in an amount of $25,000 or less or (b) is Allowed in an amount greater than $25,000, but is subject to an irrevocable election by the holder thereof to reduce the Allowed amount of the Other Unsecured Claim to $25,000 for the purpose of rendering such Claim an Unsecured Convenience Claim.

153.     *"Unsubscribed Shares"* means those shares of New Preferred Stock issued in connection with the Rights Offering that are not subscribed for pursuant to the Rights Offering as of the Subscription Expiration Date.

154.     *"U.S. Trustee"* means the United States Trustee for the Southern District of New York.

155.     *"U.S. Trustee Fees"* means fees arising under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717.

156.     *"Voting Deadline"* means 5:00 p.m. (prevailing Eastern Time) on [____], 2011.

B.    *Rules of Interpretation*

For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Reorganized TSN Debtors in a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

C.    *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the TSN Debtors or the Reorganized TSN Debtors, as applicable, not incorporated in New York shall be governed by the laws of the jurisdiction of incorporation of the applicable TSN Debtor or Reorganized TSN Debtor, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Settlement of Certain Inter-Creditor Issues*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the TSN Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS, DIP CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III and shall have the following treatment:

*A.        Administrative Claims*

1.    Administrative Claims

Except with respect to Administrative Claims that are Claims for Accrued Professional Compensation and except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim shall, in complete satisfaction of such Allowed Administrative Claim, be paid Cash in the full amount of such Allowed Administrative Claim on the later of: (a) the Initial Distribution Date; (b) the first date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (c) the date such Allowed Administrative Claim becomes due and payable by its terms, or as soon thereafter as is reasonably practicable.

2.    Professional Compensation

(a)        Claims for Accrued Professional Compensation

Professionals or other Entities asserting a Claim for Accrued Professional Compensation for services rendered before the Effective Date must file and serve on the TSN Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Interim Compensation Order or order of the Bankruptcy Court an application for final allowance of such Claim for Accrued Professional Compensation no later than 30 days after the Effective Date.  Objections to any Claim for Accrued Professional Compensation must be filed and served on the Reorganized TSN Debtors, the Creditors' Committee, the Office of the U.S. Trustee and the requesting party no later than the earlier of (a) 45 days after such application is filed or (b) 75 days after the Effective Date.

(b)        Treatment of Claims for Accrued Professional Compensation

A Claim for Accrued Professional Compensation in respect of which a final fee application has been properly filed and served pursuant to Article II(A)(2)(a) shall be payable to the extent approved by order of the Bankruptcy Court.  Subject to the Holdback Amount, on the Effective Date, or as soon thereafter as reasonably practicable, to the extent not otherwise paid, all Allowed Claims for Accrued Professional Compensation (including estimated Accrued Professional Compensation through the Effective Date) shall be paid in full in Cash.  To receive payment on the Effective Date for unbilled fees and expenses incurred through the Effective Date, each Professional shall reasonably estimate fees and expenses due for unbilled fees and expenses for periods that will not have been billed as of the Effective Date and shall deliver such estimates to the TSN Debtors, the Plan Sponsor and the U.S. Trustee prior to the Effective Date.  If the estimated payment received by such Professional exceeds the actual allowed Accrued Professional Compensation for the estimated period, such excess amount shall be deducted from the Holdback Amount for such Professional and if the Holdback Amount is insufficient, such Professional shall disgorge the difference.  If the estimated payment received by the Professional is lower than the Accrued Professional Compensation of such Professional, the difference shall be promptly paid to the Professional.

On the Effective Date, the Reorganized TSN Debtors shall fund the Holdback Amount Reserve for payment of the Holdback Amount.  Upon final allowance by the Bankruptcy Court of the Accrued Professional Compensation, or entry of an earlier order of the Bankruptcy Court granting the release of the Holdback Amount, such amount, less any excess paid in connection with estimated fees and expenses through the Effective Date, shall be paid promptly and directly to the Professionals.

(c)     Post- Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized TSN Debtors may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action (including, without limitation, without the need to file a fee application), order or approval of the Bankruptcy Court.

### 3. Administrative Claim Bar Date

Except as otherwise provided in this Article II.A, requests for payment of Administrative Claims must be filed and served on the Reorganized TSN Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 days after the Effective Date. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the TSN Debtors or Reorganized TSN Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served on the Reorganized TSN Debtors and the requesting party no later than 90 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order, including all Administrative Claims expressly Allowed under this Plan.

### B.     DIP Claims

On the Effective Date, unless otherwise agreed to by the DIP Lenders, the DIP Claims shall be paid in full in Cash as provided under the DIP Loan Agreement. Upon payment and satisfaction in full of all Allowed DIP Claims, all liens and security interests granted to secure such obligations shall be terminated and immediately released and the DIP Lenders shall execute and deliver to the Reorganized TSN Debtors such instruments of release, satisfaction and/or assignments (in recordable form) as may be reasonably requested by the Reorganized TSN Debtors.

### C.     U.S. Trustee Fees

On the Effective Date, the TSN Debtors shall pay all U.S. Trustee Fees that are due and owing on the Effective Date.

### D.     Priority Tax Claims

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the Distribution Date, at the option of the TSN Debtors (which option shall be reasonably satisfactory to the Plan Sponsor), one of the following treatments, in complete satisfaction of such Allowed Priority Tax Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such holder and the TSN Debtors or otherwise determined upon an order of the Bankruptcy Court.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.     General Rules of Classification

(i)     Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the TSN Debtors. A Claim or Interest is placed in a particular Class only to the

extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

(ii)   The TSN Debtors shall be treated as if they were consolidated solely for Plan voting, confirmation and distribution purposes as described in Article VII; provided, however, that if any Class of Impaired Claims votes to reject the Plan, the TSN Debtors' ability to confirm the Plan with respect to such rejecting Class pursuant to the cramdown standards of section 1129(b) of the Bankruptcy Code will be determined by reference to the treatment to which the holders of Claims in such Class would be entitled were (i) their Claims limited to the specific TSN Debtor(s) that are liable for such Claims, and (ii) the TSN Debtors not treated as consolidated for distribution and confirmation purposes. This limited consolidation treatment is designed to consensually pool the assets and liabilities of the TSN Debtors solely to implement the settlements and compromises reached by the primary constituencies in the TSN Debtors' Chapter 11 Cases.

B.    *Summary of Classification*

The following chart represents the general classification of Claims and Interests against the TSN Debtors pursuant to the Plan:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Senior Secured Notes Claims | Impaired | Yes |
| 4 | PMCA Claims | Unimpaired | No (deemed to accept) |
| 5 | Senior Exchangeable Notes Claims | Impaired | Yes |
| 6 | Other Unsecured Claims | Impaired | Yes |
| 7 | Unsecured Convenience Claims | Impaired | Yes |
| 8 | Equity Interests | Impaired | No (deemed to reject) |

C.    *Treatment of Claims and Interests*

1.    Class 1 – Other Priority Claims

(a)    *Classification:*  Class 1 consists of Other Priority Claims.

(b)    *Treatment:*  Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid by the TSN Debtors, in whole or in part, prior to the Effective Date or (ii) agrees to a less favorable treatment, each holder of an Allowed Other Priority Claim shall receive, on the Initial Distribution Date and in full satisfaction, settlement, release, and discharge of, and in exchange for such Other Priority Claim, Cash in the full amount of such Allowed Other Priority Claim.

(c)    *Voting:*  Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Secured Claims

(a)　　*Classification:*  Class 2 consists of Other Secured Claims.  Although all Other Secured Claims have been placed in one Class for the purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on any property or interest in property of the TSN Debtors different than that securing any other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

(b)　　*Treatment:*  On the Initial Distribution Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, at the option of the TSN Debtors or the Reorganized TSN Debtors (which option shall be reasonably satisfactory to the Plan Sponsor), (i) each Allowed Other Secured Claim shall be reinstated and Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Other Secured Claim, either (w) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest accrued pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (y) the collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code.

(c)　　*Voting:* Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.　　Class 3 – Senior Secured Notes Claims

(a)　　*Classification:*  Class 3 consists of the Senior Secured Notes Claims.

(b)　　*Treatment:*  Each holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata share of the Class 3 Distribution.

(c)　　*Voting:*  Holders of Senior Secured Notes Claims are Impaired.  Therefore, each holder of a Senior Secured Notes Claim is entitled to vote to accept or reject the Plan.

4.　　Class 4 – PMCA Claims

(a)　　*Classification:*  Class 4 consists of the PMCA Claims.

(b)　　*Treatment:*  The PMCA Claims will be reinstated pursuant to section 1124 of the Bankruptcy Code.

(c)　　*Voting:*  Class 4 is Unimpaired, and the holders of PMCA Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of PMCA Claims are not entitled to vote to accept or reject the Plan.

5.　　Class 5 – Senior Exchangeable Notes Claims

(a)　　*Classification:*  Class 5 consists of the Senior Exchangeable Notes Claims.

(b)　　*Treatment:*  Each holder of a Senior Exchangeable Notes Claim shall receive, on the Initial Distribution Date, its Pro Rata share of the Class 5 Distribution.

(c)     *Voting:*   Holders of Senior Exchangeable Notes Claims are Impaired. Therefore, each holder of a Senior Exchangeable Notes Claim is entitled to vote to accept or reject the Plan.

6.   Class 6 – Other Unsecured Claims

(a)     *Classification:*   Class 6 consists of the Other Unsecured Claims.

(b)     *Treatment:*   Unless such holder has made a Convenience Class Election, each holder of an Allowed Other Unsecured Claim shall receive its Pro Rata share of the Class 6 Distribution.

(c)     *Voting:*   Holders of Other Unsecured Claims are Impaired. Therefore, each holder of an Other Unsecured Claim is entitled to vote to accept or reject the Plan.

7.   Class 7 – Unsecured Convenience Claims

(a)     *Classification:*   Class 7 consists of Unsecured Convenience Claims.

(b)     *Treatment:*   Each holder of an Allowed Unsecured Convenience Claim shall receive Cash in an amount equal to the lesser of: (i) 10% of such holders' Unsecured Convenience Claim; and (ii) such holder's Pro Rata share of $500,000.

(c)     *Voting:*   Class 7 is Impaired by the Plan. Therefore, each holder of an Unsecured Convenience Claim is entitled to vote to accept or reject the Plan.

8.   Class 8 – Equity Interests in TSN

(a)     *Classification:*   Class 8 consists of all Equity Interests.

(b)     *Treatment:*   On the Effective Date, all Equity Interests shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution to the holders of Equity Interests.

(c)     *Voting:*   Class 8 is Impaired, and the holders of Equity Interests are conclusively presumed to have rejected the Plan. Therefore, holders of Equity Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE IV.

## ACCEPTANCE REQUIREMENTS

A.     *Acceptance or Rejection of the Plan*

1.   Voting Class

Classes 3, 5, 6 and 7 are Impaired under the Plan and are receiving property under the Plan. Therefore, such Classes are entitled to vote to accept or reject the Plan.

2.   Presumed Acceptance of the Plan

Classes 1, 2, and 4 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The TSN Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The TSN Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *Limited Consolidation for Voting, Confirmation and Distribution Purposes*

1.     This Plan provides for substantive consolidation of the TSN Debtors' Estates, but solely for purposes of voting, confirmation, and making distributions to the holders of Allowed Claims under this Plan. On the Effective Date, and solely for purposes of voting, confirmation, and making distributions to the holders of Allowed Claims under this Plan: (a) all guarantees of any TSN Debtor of the payment, performance or collection of another TSN Debtor with respect to Claims against such TSN Debtor shall be eliminated and cancelled; (b) any single obligation of multiple Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases; and (c) all guarantees by a TSN Debtor with respect to Claims against one or more of the other TSN Debtors shall be treated as a single obligation in the consolidated Chapter 11 Cases. On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the TSN Debtors, all Claims based upon guarantees of collection, payment, or performance made by a TSN Debtor as to the obligation of another TSN Debtor shall be released and of no further force and effect. Except as set forth in this Article V.A.1, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized TSN Debtors, or (b) any obligations under any leases or contracts assumed in this Plan or otherwise after the Petition Date.

2.     Such election to treat the Estates as if they were consolidated solely for the purpose of implementing the Plan shall not affect: (1) the legal and corporate structures of the TSN Debtors, subject to the right of the TSN Debtors to effect the Restructuring Transactions contemplated pursuant to the Plan; (2) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts and unexpired leases that have been or will be assumed pursuant to the Plan; (3) Intercompany Interests; (4) distributions from any insurance policies or proceeds of such policies; (5) the revesting of assets in the separate Reorganized TSN Debtors pursuant to Article V.N of the Plan.  In addition, such election to treat the Estates as consolidated for the purpose of implementing the Plan will not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the TSN Debtors.

B.     *Intercompany Claims*

Each Allowed Intercompany Claim shall be reinstated on the Effective Date, except as otherwise determined to by the TSN Debtors with the reasonable consent of the Plan Sponsor.  After the Effective Date, the Reorganized TSN Debtors shall have the right to resolve or compromise Disputed Intercompany Claims without approval of the Bankruptcy Court.

C.     *Sources of Consideration for Plan Distributions*

1.     Cash Consideration

All Cash consideration necessary for the TSN Debtors or the Reorganized TSN Debtors, as applicable, to make payments or distributions pursuant hereto shall be obtained from the Rights Offering (and the Backstop Party's purchase of the Overallotment, if applicable) or other Cash on hand, including Cash derived from business operations.

D.    *Issuance of New Securities and Debt Instruments*

    1.    <u>Issuance of New Common Stock</u>

On the Effective Date, TSN shall issue the New Common Stock to the Holders of Claims entitled thereto.

    2.    <u>Issuance of New Preferred Stock</u>

On the Effective Date, the Reorganized TSN Debtor shall issue the New Preferred Stock, on such terms and conditions as set forth in the New Preferred Stock Certificate of Designation.

    3.    <u>New Shareholders Agreement</u>

The holders of the New Common Stock and New Preferred Stock shall be parties to the New Shareholders Agreement.  As of the Effective Date, and as a condition to receiving any distribution of New Common Stock or New Preferred Stock, holders of Claims or Interests that receive the New Common Stock or New Preferred Stock shall be deemed bound by the New Shareholders Agreement.

E.    *The Rights Offering*

    1.    <u>General Description</u>

Pursuant to the Rights Offering, TSN will offer and sell the Rights Offering Preferred Stock.  The Rights Offering Preferred Stock shall be subject to the New Preferred Stock Certificate of Designation.

    2.    <u>Rights Offering Procedures</u>

Each holder of Rights will be entitled to exercise such Rights in order to subscribe for and acquire their Pro Rata share of the Rights Offering Preferred Stock, calculated prior to giving effect to dilution resulting from the Backstop Commitment Fee and, if exercised, the Overallotment.  The Rights Offering will be consummated pursuant to the Rights Offering Procedures.

    3.    <u>The Backstop Commitment and Overallotment</u>

Pursuant to the terms of the EPCA, in order to facilitate the Rights Offering and implementation of the Plan, the Backstop Party has agreed to purchase, and TSN has agreed to sell and issue to the Backstop Party, at the Discount Purchase Price: (a) [___] shares of Rights Offering Preferred Stock, and (b) any Unsubscribed Shares, up to the Backstop Amount in accordance with and subject to the terms and conditions of the EPCA.  To the extent that there are Non-Backstopped Shares, participants in the Rights Offering may, subject to a right of first refusal of the Backstop Party with respect to the Non-Backstopped Shares, elect to purchase the Non-Backstopped Shares on a Pro Rata basis.  In addition, the Backstop Party shall have the option to purchase the Overallotment at the Discount Purchase Price pursuant to the EPCA.  On the Effective Date, in accordance with the Backstop Approval Order, (i) the TSN Debtors will pay to the Backstop Party the Transaction Expenses and (ii) the Backstop Party will receive the Backstop Commitment Fee and be entitled to the Backstop Indemnification Obligations.

F.    *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the TSN Debtors under the Senior Secured Notes Security Agreement and the Indentures, and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the TSN Debtors giving rise to any Claim or Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of the TSN Debtors that are specifically reinstated pursuant to the Plan), shall be cancelled as to the TSN Debtors, and the Reorganized TSN Debtors shall not have any continuing obligations thereunder and (2) the obligations of the TSN Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of

designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the TSN Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the TSN Debtors that are specifically reinstated or assumed pursuant to the Plan) shall be released and discharged; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of Senior Secured Notes Claims and Senior Exchangeable Notes Claims (as applicable) to receive distributions under the Plan as provided herein, (b) allowing the Indenture Trustees, if applicable, to make distributions under the Plan as provided herein, and in accordance with any payment priorities established under the Indentures and to deduct therefrom such compensation, reasonable fees and expenses due thereunder or incurred in making such distributions and to create a reserve, in an amount no greater than $[___], for future fees and expenses the Indenture Trustees may incur after the Effective Date and (c) allowing the Indenture Trustees to seek compensation and/or reimbursement of reasonable fees and expenses in accordance with the terms of the Indentures and this Plan; *provided further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan, or result in any expense or liability to the Reorganized TSN Debtors, except to the extent set forth in or provided for under this Plan.  On and after the Effective Date, all duties and responsibilities of the Indenture Trustees under the Indentures, as applicable, shall be discharged except to the extent required in order to effectuate the Plan.

G.      *Exemptions for Issuance of New Equity*

        The issuance of the New Common Stock, the New Preferred Stock, including the Rights Offering Preferred Stock and the Additional Shares (and the issuance of any common stock of Reorganized TSN upon conversion of the New Preferred Stock) shall be authorized and exempt from registration under the securities laws pursuant to, as applicable, section 1145 of the Bankruptcy Code, section 4(2) of the Securities Act of 1933, as amended, and/or other applicable laws, as of the Effective Date without further act or action by any person, unless required by provision of the relevant corporate documents or applicable law, regulation, order or rule; and all documents evidencing the same shall be executed and delivered as provided for in the Plan or the Plan Supplement.

H.      *Corporate Existence*

        Subject to any Restructuring Transaction and except as otherwise provided herein, in the New Corporate Governance Documents or elsewhere in the Plan Supplement, each Debtor, as Reorganized, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed. The Corporate Governance Documents shall be substantially in the form filed with the Plan Supplement.

I.      *New Certificate of Incorporation and New By-Laws*

        On or as soon as reasonably practicable after the Effective Date, each of the Reorganized TSN Debtors will file their respective New Certificates of Incorporation with the applicable Secretaries of State and/or other applicable authorities in their respective states of incorporation in accordance with the corporate laws of the respective states of incorporation.  After the Effective Date, each of the Reorganized TSN Debtors may amend and restate their respective New Certificates of Incorporation and New By-Laws and other constituent documents as permitted by the laws of their respective states of incorporation and their respective New Certificates of Incorporation and New By-Laws.

J.      *Reorganized TSN Debtors' Boards of Directors*

        To the extent known, the identity of the members of the New Boards of each of the Reorganized TSN Debtors will be identified in the Plan Supplement.

K.       *Officers of Reorganized TSN Debtors*

To the extent known, officers of each of the other Reorganized TSN Debtors shall be identified in the Plan Supplement. Such officers shall serve in accordance with applicable non-bankruptcy law and, to the extent applicable, the New Employment Agreements.

L.       *Employee Benefits*

Except as otherwise provided herein, on and after the Effective Date, the Reorganized TSN Debtors may: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation (other than equity based compensation related to Interests), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance and accidental death and dismemberment insurance for the directors, officers and employees of any of the TSN Debtors who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; *provided, however,* that the TSN Debtors' or Reorganized TSN Debtors' performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan. Nothing herein shall limit, diminish or otherwise alter the Reorganized TSN Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

M.       *Vesting of Assets in the Reorganized TSN Debtors*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date any and all property in each Estate and all Causes of Action (except those released pursuant to the Releases by the TSN Debtors) shall vest in each respective Reorganized TSN Debtor, free and clear of all Liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized TSN Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

N.       *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized TSN Debtors may enter into the Restructuring Transactions and may take all actions as may be necessary or appropriate to effect a restructuring of their respective businesses or the overall organizational structure of the Reorganized TSN Debtors. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations as may be reasonably determined by (i) the TSN Debtors, with the reasonable consent of the Plan Sponsor or (ii) the Reorganized TSN Debtors to be necessary or appropriate. The actions to effect the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions. In the event a Restructuring Transaction is a merger transaction, upon the consummation of such Restructuring Transaction, each party to such merger shall cease to exist as a separate corporate entity and thereafter the surviving Reorganized TSN Debtor shall assume and perform the obligations of each Reorganized TSN Debtor under the Plan. In the event a Reorganized TSN Debtor is liquidated, the Reorganized TSN Debtors (or the Reorganized TSN Debtor which owned the stock in such liquidating Debtor prior to such liquidation) shall assume and perform such obligations. Implementation of the Restructuring Transactions shall not affect the distributions under the Plan.

## O.    Intercompany Interests

Subject to any Restructuring Transaction, in order to implement the Plan, at the option of the Reorganized TSN Debtors (with the reasonable consent of the Plan Sponsor), Intercompany Interests shall either (i) be retained, in which case the Debtor holding such Intercompany Interest shall continue to hold such Interest and the legal, equitable and contractual rights to which the holders of such Intercompany Interests are entitled shall remain unaltered or (ii) be cancelled and new Intercompany Interests in the applicable Other Debtor shall be issued pursuant to the Plan to the Reorganized TSN Debtor that holds such Intercompany Interests.

## P.    Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (1) entry into the New Employment Agreements; (2) selection of the directors and officers of the Reorganized TSN Debtors; (3) the distribution of the New Common Stock as provided herein; and (4) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the TSN Debtors or the Reorganized TSN Debtors, and any corporate action required by the TSN Debtors or the Reorganized TSN Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the TSN Debtors or the Reorganized TSN Debtors.

On or (as applicable) before the Effective Date, the appropriate officers of the TSN Debtors or the Reorganized TSN Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized TSN Debtors, including any and all agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article V.O shall be effective notwithstanding any requirements under non-bankruptcy law.

## Q.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized TSN Debtors and the managers, officers and members of the boards of directors thereof are authorized to issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized TSN Debtors, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

## R.    General Settlement of Claims and Interests

As discussed in detail in the Disclosure Statement and as otherwise provided herein, as one element of, and in consideration for, an overall negotiated settlement of disputed Claims and issues embodied in the Plan, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, the settlement of issues arising from or related to (a) the litigable issue concerning whether the holders of the Senior Secured Notes have a security interest in TSN's rights in the TerreStar-2 satellite, and (b) the structural seniority which the holders of the Senior Exchangeable Notes have as a result of the guarantees granted to them by certain of the TSN Debtors, each as more fully described in the introduction to Article VIII of the Disclosure Statement. Pursuant to Rule 408 of the Federal Rules of Evidence, this Plan, the Disclosure Statement, the Plan Support Agreement (and any exhibits or supplements relating to the foregoing) and all negotiations relating thereto shall not be admissible into evidence in any proceeding unless and until this Plan in consummated, and then only in accordance with this Plan. In the event this Plan is not consummated, provisions of this Plan, the Disclosure Statement, the Plan Support Agreement (and any exhibits or supplements relating to the foregoing) and all negotiations relating thereto shall not be binding or probative.

Subject to Article VII, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final and indefeasible.

S.    *Section 1146 Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States or Canada, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by Article V.O hereof; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

T.    *D&O Liability Insurance Policies and Indemnification Provisions*

Notwithstanding anything herein to the contrary, as of the Effective Date, the D&O Liability Insurance Policies shall be deemed to be, and shall be treated as though they are, executory contracts and the TSN Debtors shall assume (and assign to the Reorganized TSN Debtors if necessary to continue the D&O Liability Insurance Policies in full force) all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the TSN Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. On or before the Effective Date, the Reorganized TSN Debtors shall obtain tail coverage under a directors' and officers' liability insurance policy for the current and former directors, officers and managers of the TSN Debtors for a period of five years, and placed with such insurers, the terms of which shall be set forth in the Plan Supplement.

As of the Effective Date, the directors, officers, members, attorneys, employees and other agents of the TSN Debtors who served the TSN Debtors prior to (but not on or after) the Effective Date shall be entitled to the full benefit of any applicable Indemnification Provisions; provided, that any claims by such directors, officers, members, attorneys, employees or other agents relating to or arising out of the Indemnification Provisions shall be deemed to be, and treated as though they are, Other Unsecured Claims against the TSN Debtors. For the avoidance of doubt, the Reorganized TSN Debtors shall have no liability to such directors, officers, members, attorneys, employees or other agents in respect of the Indemnification Provisions.

In addition, on the Effective Date, the New Corporate Governance Documents of the Reorganized TSN Debtors shall contain provisions which (i) eliminate the personal liability of the TSN Debtors' and the Reorganized TSN Debtors' then-present and future directors and officers for post-emergence monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the jurisdiction in which the subject Reorganized TSN Debtor is organized; and (ii) require such Reorganized TSN Debtor, subject to appropriate procedures, to indemnify the TSN Debtors' and the Reorganized TSN Debtors' directors, officers, and other key employees (as such key employees are identified by the New Board) serving on or after the Effective Date for all claims and actions to the fullest extent permitted by applicable law in the jurisdiction in which the subject Reorganized TSN Debtor is incorporated or organized.

U.    *Preservation of Rights and Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Releases by the TSN Debtors provided by Article IX.B hereof), the Reorganized TSN Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including Causes of Action under chapter 5 of the Bankruptcy Code, whether arising before or after the Petition Date, and the Reorganized TSN Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. No Entity may rely on the absence of a specific reference in the Plan, the Disclosure Statement, or

the Schedule of Retained Causes of Action, to any Cause of Action against them as any indication that the TSN Debtors or Reorganized TSN Debtors, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such retained Causes of Action upon, after or as a consequence of the Confirmation or consummation of the Plan.

V.     *Payment of Fees and Expenses of Senior Secured Notes Indenture Trustee/Agent and Purchase Money Agent*

In accordance with the Final DIP Order, the fees and expenses of the Senior Secured Notes Indenture Trustee/Agent and the Purchase Money Agent shall be finally allowed. On the Effective Date (and thereafter with respect to fees and expenses relating to post-Effective Date service under the Plan) or as soon as reasonably practicable thereafter, the TSN Debtors or Reorganized Debtors shall pay in Cash all reasonable and documented unpaid fees and expenses of the Senior Secured Notes Indenture Trustee/Agent and the Purchase Money Agent and their advisors, including counsel. The TSN Debtors or Reorganized Debtors may dispute any portion of such fees and expenses in which case (a) the TSN Debtors or Reorganized Debtors shall pay the portion of such fees and expenses that is not specifically disputed and (b) in the absence of a consensual resolution, the affected Indenture Trustee/Agent or the Reorganized Debtors shall submit the dispute to the Bankruptcy Court for adjudication. For the avoidance of doubt, nothing herein affects an Indenture Trustee's right to exercise its charging lien against distributions to holders of the Notes.

# ARTICLE VI.

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each of the TSN Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the TSN Debtors; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume filed on or before the Effective Date; or (4) is identified on the Rejected Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Confirmation Order shall constitute an order of the Bankruptcy Court, approving (i) the assumption and assignment, or rejection, as the case may be, of Executory Contracts and Unexpired Leases, as described above, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, (ii) that the Reorganized TSN Debtors had properly provided for the cure of any defaults that might have existed, (iii) that each assumption and assignment was in the best interest of the Reorganized TSN Debtors, their estates, and all parties in interest in the Chapter 11 Cases, and (iv) the requirements for assumption and assignment of any Executory Contract or Unexpired Lease to be assumed had been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized TSN Debtor in accordance with its terms, except as such terms may have been modified by such order. Notwithstanding anything to the contrary in the Plan, the TSN Debtors (with the reasonable consent of the Plan Sponsor) or the Reorganized TSN Debtors, as applicable, reserve the right to alter, amend, modify or supplement the list of Executory Contracts and Unexpired Leases identified in the Plan Supplement at any time before the Effective Date; <u>provided</u>, that to the extent that, as of the Effective Date, there is any pending dispute between one or more of the TSN Debtors and a counterparty to an Executory Contract or Unexpired Lease regarding such counterparty's Cure Claim, the TSN Debtors and Reorganized TSN Debtors shall reserve the right to add the applicable Executory Contract or Unexpired Lease to the Rejected Executory Contract and Unexpired Lease List following the resolution of such dispute, in which event such Executory Contract or Unexpired Lease shall be deemed rejected and such counterparty shall have any and all rights with respect thereto. After the Effective Date,

the Reorganized TSN Debtors shall have the right to terminate, amend or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

B.     *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized TSN Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (3) any other matter pertaining to assumption, the payment of Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be made no later than ten (10) business days following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least ten days before the Confirmation Hearing, the TSN Debtors shall distribute, or cause to be distributed, notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties, which notices shall include procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases and any amounts of Cure Claims to be paid in connection therewith and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Claim amount must be filed, served and actually received by the TSN Debtors at least three days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

C.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of Executory Contracts and Unexpired Leases not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the TSN Debtors or the Reorganized TSN Debtors, the Estates or their property without the need for any objection by the Reorganized TSN Debtors or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the TSN Debtors' Executory Contracts and Unexpired Leases shall be classified as Class 6 Other Unsecured Claims against the applicable Debtor and shall be treated in accordance with Article III of the Plan. The deadline to object to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, shall be the later of (a) 180 days following the date on which such Claim was filed and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

D.     *Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the TSN Debtors (with the reasonable consent of the Plan Sponsor) shall assume (and assign to the Reorganized TSN Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the TSN Debtors' foregoing assumption of each of the Insurance Policies.

E.      *Modifications, Amendments, Supplements, Restatements or Other Agreements.*

Unless otherwise provided, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Executory Contracts and Unexpired Leases that have been executed by the TSN Debtors during the Chapter 11 Cases shall not be deemed (unless otherwise agreed by the contract counterparty) to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the TSN Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized TSN Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the TSN Debtors or Reorganized TSN Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any TSN Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized TSN Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order, unless the parties thereto agree to any modifications, amendments, supplements or restatements.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Record Date for Distributions*

As of the entry of the Confirmation Order, the various transfer registers for each of the Classes of Claims or Interests as maintained by the TSN Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Interests. The TSN Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the applicable Distribution Date, each holder of an Allowed Claim or Interest against the TSN Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Interests in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII hereof. Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or

accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

C.       *Fractional Distributions*

No fractions of New Common Stock, New Preferred Stock or Rights shall be distributed. Cash shall not be distributed under the Plan in denominations of less than one cent ($0.01). For purposes of distribution, fractions of New Common Stock, New Preferred Stock or Rights shall be rounded down to the nearest whole number. The Disbursing Agent shall have no obligation to make any distribution of Cash that is less than $10.00.

D.       *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized TSN Debtors as Disbursing Agent or such other Entity designated by the Reorganized TSN Debtors as a Disbursing Agent on the Effective Date. If the Disbursing Agent is not one of the Reorganized TSN Debtors, such entity shall obtain a bond or surety for the performance of its duties, and all costs and expenses of procuring any such bond or surety shall be borne by the TSN Debtors or Reorganized TSN Debtors; *provided*, *however*, that the Indenture Trustees shall not be required to obtain such a bond or surety..

E.       *Rights and Powers of Disbursing Agent*

1.       Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.       Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent in carrying out its obligations under this Article VII of the Plan on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent related thereto shall be paid in Cash by the Reorganized TSN Debtors in their reasonable discretion.

F.       *Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the TSN Debtors (with the reasonable consent of the Plan Sponsor) or the Reorganized TSN Debtors, in each case in their sole discretion, and the holder of a Disputed Claim, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim or Interest have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

G.       *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.       Delivery of Distributions in General

Except as otherwise provided in the Plan and subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made to holders of record as of the Distribution Record Date by the Disbursing Agent: (a) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the TSN Debtors have been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if

no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. Distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. None of the TSN Debtors, the Reorganized TSN Debtors and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence, willful misconduct or fraud.

Except as otherwise provided in the Plan, all distributions to holders of Notes Claims shall be governed by the Notes and the Indentures, and shall be deemed completed when made to the respective Indenture Trustees, who shall in turn make distributions in accordance with the Notes and Indentures.

### 2. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable Distribution Date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized TSN Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

### H. Hart-Scott-Rodino Compliance

Any shares of New Common Stock or New Preferred Stock to be distributed under the Plan to any entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or to meet any similar requirements under applicable non-U.S. law, shall not be distributed until the notification and waiting periods applicable under such law to such entity shall have expired or been terminated.

### I. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### J. Setoffs

The TSN Debtors and the Reorganized TSN Debtors may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the TSN Debtors or the Reorganized TSN Debtors may hold against the holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the TSN Debtors or the Reorganized TSN Debtors may hold against the holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the TSN Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim) the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the TSN Debtors or the Reorganized TSN Debtors may hold against the holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the TSN Debtors or the Reorganized TSN Debtors of any such claims, equity interests, rights and Causes of Action that the TSN Debtors or the Reorganized TSN Debtors may possess against any such holder, except as specifically provided herein.

K.     *Claims Paid or Payable by Third Parties*

    1.     <u>Claims or Interests Paid by Third Parties</u>

The TSN Debtors or the Reorganized TSN Debtors, as applicable, shall reduce in part or in full a Claim or Interest to the extent that the holder of such Claim or Interest receives payment in part or in full on account of such Claim or Interest from a party that is not a TSN Debtor or Reorganized TSN Debtor.  To the extent a holder of a Claim or Interest receives a distribution on account of such Claim or Interest and receives payment from a party that is not a TSN Debtor or a Reorganized TSN Debtor on account of such Claim or Interest, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized TSN Debtor, to the extent the holder's total recovery on account of such Claim or Interest from the third party and under the Plan exceeds the amount of such Claim or Interest as of the date of any such distribution under the Plan.

    2.     <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of Allowed insured Claims until the holder of such Allowed insured Claim has exhausted all remedies with respect to the TSN Debtors' Insurance Policies.  To the extent that one or more of the TSN Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

    3.     <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any cause of action that the TSN Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

L.     *Postpetition Interest*

Unless expressly provided herein, the Confirmation Order, the Final DIP Order, or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or required by the Bankruptcy Code (including without limitation sections 506(b) and 1129(b) of the Bankruptcy Code), postpetition interest shall not accrue on or after the Petition Date on account of any Claim.

M.     *Section 506(c) Reservation*

The TSN Debtors and the Reorganized TSN Debtors reserve all rights under section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims, except to the extent waived pursuant to the Final DIP Order.

N.     *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claim, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of the Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Prosecution of Objections to Claims*

The TSN Debtors (with the reasonable consent of the Plan Sponsor) or the Reorganized TSN Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan. From and after the Effective Date, the Reorganized TSN Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The TSN Debtors reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

B.      *Allowance of Claims*

Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), the Reorganized TSN Debtors after the Effective Date will have and retain any and all rights and defenses held by the TSN Debtors with respect to any Claim as of the Petition Date. All claims of any Entity against any TSN Debtor shall be disallowed unless and until such Entity pays, in full, the amount it owes each such Debtor.

C.      *Disputed Claims Reserve*

On the Effective Date (or as soon thereafter as is reasonably practicable), the Reorganized TSN Debtors shall deposit in the Disputed Claims Reserve New Common Stock having an aggregate value equal to the aggregate value of the consideration that would have been distributed to the holders of all Disputed Claims as if such Disputed Claims had been Allowed Claims on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves, to be the lesser of (a) the asserted amount of the Disputed Claims filed with the Bankruptcy Court, or (if no proof of such Claim was filed) scheduled by the TSN Debtors, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code pursuant to Article VIII.G or (c) the amount otherwise agreed to by the TSN Debtors and the holder of such Disputed Claims for reserve purposes. In any vote by holders of New Common Stock, the New Common Stock held in the Disputed Claims Reserve shall be deemed to have been voted in the same proportions as the New Common Stock that was actually voted.

D.      *Distributions After Allowance*

On the Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

E.      *Distribution of Excess Amounts in the Disputed Claims Reserve*

Any Cash held in the Disputed Claims Reserve after all Disputed Claims have been Allowed or Disallowed shall be transferred by the Disbursing Agent or Reorganized TSN Debtors (as applicable), in a supplemental distribution to the holders of Allowed Claims in accordance with this Plan on a Pro Rata basis. Any New Common Stock held in the Disputed Claims Reserve after all Disputed Claims have been Allowed or Disallowed shall be cancelled.

F.      *Property Held in the Reserve for Disputed Claims*

Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed New Common Stock and/or Cash (if applicable) held in the Disputed Claims Reserve for satisfaction

of the distributions to which holders of Allowed Claims are entitled under the Plan, and not to any Reorganized TSN Debtor, their property or any assets previously distributed on account of any Allowed Claim.

G.    *Estimation of Claims*

The TSN Debtors (before the Effective Date) or Reorganized TSN Debtors (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the TSN Debtors (before the Effective Date) or the Reorganized TSN Debtors (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

H.    *Deadline to File Objections to Claims*

Any objections to Claims shall be filed on or before the date that is the later of (a) one hundred and eighty (180) days after the Effective Date and (b) the last day of such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to certain Claims.

## ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests and Controversies*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the TSN Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized TSN Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

B.    **Releases by the TSN Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the contributions of the Released Parties to facilitate the expeditious reorganization of the TSN Debtors and the implementation of the restructuring contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, the Released Parties are deemed released and discharged by the TSN Debtors, the Reorganized TSN Debtors and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the TSN Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter**

arising, in law, equity or otherwise, that the TSN Debtors, the Reorganized TSN Debtors, the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the TSN Debtors, the Released Parties, the Reorganization Cases, this Plan or the Disclosure Statement, the EPCA, or related agreements, instruments or other documents, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order.

## C.      *Releases by Holders of Claims and Interests*

As of the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, for good and valuable consideration, including the contributions of the Released Parties to facilitate the expeditious reorganization of the TSN Debtors and the implementation of the restructuring contemplated by the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, each holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors, the Reorganized Debtors and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative Claims, asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Released Parties, the Reorganization Cases, this Plan or the Disclosure Statement, or related agreements, instruments or other documents, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud or willful misconduct, as determined by a Final Order; **provided**, that nothing herein shall be deemed a waiver or release of a Releasing Party's right to receive a distribution pursuant to the terms of this Plan.

## D.      *Exculpation*

Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, obligation, cause of action or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The TSN Debtors and the Reorganized TSN Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## E.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the TSN Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or

502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the TSN Debtors or their Affiliates with respect to any Claim or Interest that existed before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

*F.      Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE IX HEREOF, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.B OR ARTICLE IX.C, DISCHARGED PURSUANT TO ARTICLE IX.E, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.D, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN; AND (5) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THIS PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE TSN DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE TSN DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE EQUITY INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE TSN DEBTORS SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL EQUITY INTERESTS SHALL BE CANCELLED, AND THE TSN DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE

EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE TSN DEBTORS, THE TSN DEBTORS' ESTATES, THE REORGANIZED TSN DEBTORS, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court or any order of the Canadian Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Injunction Against Interference With Plan*

To the fullest extent permitted by applicable law, upon the entry of the Confirmation Order, all of the Releasing Parties shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

I.    *Injunction Related to Releases and Exculpation*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Articles IX.C and IX.D of this Plan.

J.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized TSN Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized TSN Debtors or another Entity with whom such Reorganized TSN Debtors have been associated, solely because one of the TSN Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

K.    *No Consent to Change of Control Required*

To the fullest extent permitted by applicable law, except as otherwise expressly provided by order of the Bankruptcy Court, none of (a) the facts or circumstances giving rise to the commencement of, or occurring in connection with, the Chapter 11 Cases, (b) the issuance of the New Common Stock or New Preferred Stock pursuant to the Plan, or (c) consummation of any other transaction pursuant to the Plan (including, without limitation, the Restructuring Transactions) shall constitute a "change in ownership" or "change of control" (or a change in working control) of, or in connection with, any TSN Debtor requiring the consent of any person other than the TSN Debtors or the Bankruptcy Court.

L.      *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized TSN Debtor and its successors and assigns.  For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court, the Canadian Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code, the Personal Property Security Act (Ontario) or in accordance with any other real or personal property registry system in any of the applicable provinces in Canada; *provided*, that nothing in the Plan shall be deemed to release the Liens securing the PMCA Claims, which PMCA Claims and Liens are being reinstated hereby, or the Indenture Trustees' charging liens for unpaid fees, costs, expenses and indemnification under the Indentures or other agreements.

# ARTICLE X.

# CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article X.C.

1.      The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the TSN Debtors, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article X.C.

1.      The Confirmation Order, in a form reasonably satisfactory to the TSN Debtors and Plan Sponsor, shall be a Final Order.

2.      The Canadian Court shall have entered an order, in form and substance reasonably acceptable to the TSN Debtors and the Plan Sponsor, recognizing the Bankruptcy Court's entry of the Confirmation Order, and such order shall have become a Final Order.

3.      The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order), in form and substance reasonably acceptable to the TSN Debtors and the Plan Sponsor, authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the TSN Debtors as contemplated herein, which shall have become Final Orders.

4.      The Canadian Court shall have entered orders, in form and substance reasonably acceptable to the TSN Debtors and the Plan Sponsor, recognizing the Bankruptcy Court's entry of the orders described in Article X.B.3 above, and such orders shall have become Final Order.

5.      The Rights Offering shall have been consummated pursuant to the terms of this Plan, the Rights Offering Procedures, and the EPCA.

6.     All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance reasonably acceptable to the TSN Debtors and the Plan Sponsor.

7.     All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the New By-Laws, the New Certificate of Incorporation, and the Registration Rights Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

8.     A decision released by the FCC or a bureau or subdivision thereof (an "***FCC Order***") approving the transfer of control to the Plan Sponsor over the licenses and authorizations held by Debtors, and all other governmental, regulatory and third party licenses, approvals, waivers and/or consents required under applicable law to consummate the transactions contemplated by the Plan, including without limitation the Industry Canada Approval (defined below), shall have been obtained and shall be final and in full force and effect without any condition or requirement that would reasonably be expected to have, individually or in the aggregate, a material impact on the current business operations of the Plan Sponsor.  In addition, the FCC shall not have reconsidered the FCC Order on its own motion within 30 days (or, if released by a bureau or other subdivision of the FCC, within 40 days) of its release, and the FCC and the courts will have denied all petitions for reconsideration, applications for review and appeals (collectively, "***Appeals***") of the FCC Order (or of an FCC or court order affirming the FCC Order), or the periods for filing such Appeals have passed and no Appeal has been filed.  Moreover, there shall exist no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the transactions contemplated by the Plan.

9.     The prior approval of the Minister of Industry (the "***Industry Canada Approval***") approving the transfer of control of the Canadian Debtors to the Plan Sponsor or, at the option of the Plan Sponsor, the transfer or assignment of the licenses and authorizations held by the TSN Debtors to a party designated by the Plan Sponsor that is eligible to hold such licenses, to the extent required by applicable law, including the licenses and authorizations to consummate the transactions contemplated by the Plan, shall have been obtained and shall be final and in full force and effect without any condition or requirement that would reasonably be expected to have, individually or in the aggregate, a material impact on the current or future business operations of the Plan Sponsor. In addition, the courts will have denied all applications for judicial review or other court challenges to the Industry Canada Approval or appeals of any court order upholding the Industry Canada Approval or the periods for filing such appeals have passed and no appeal has been filed.

10.  The TSN Debtors shall have cash on hand as of the Effective Date of at least $5 million.

C.     *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article X may be waived at any time by the TSN Debtors, with the written consent of the Plan Sponsor; *provided, however,* that the TSN Debtors may not waive entry of the Confirmation Order.

D.     *Effect of Failure of Conditions*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the TSN Debtors; (2) prejudice in any manner the rights of the TSN Debtors, any holders of Claims or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the TSN Debtors, any holders or any other Entity in any respect.

# ARTICLE XI.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided herein, the TSN Debtors reserve the right, subject to the reasonable consent of the Plan Sponsor, to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the TSN Debtors expressly reserve their rights, subject to the reasonable consent of the Plan Sponsor, to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

In addition, prior to the Effective Date, the TSN Debtors (with the reasonable consent of the Plan Sponsor) may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The TSN Debtors (with the reasonable consent of the Plan Sponsor) reserve the right to revoke or withdraw the Plan before the Effective Date. If the TSN Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests or Claims by any TSN Debtor against any other Entity; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of or related to, the Chapter 11 Cases and the Plan including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or Unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount or allowance of Claims;

2.　　　　decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.　　　　resolve any matters related to:　(a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a TSN Debtor is party or with respect to which a TSN Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Rejection Claims, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized TSN Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article VI, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired.

4.　　　　ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.　　　　adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving a TSN Debtor that may be pending on the Effective Date;

6.　　　　adjudicate, decide or resolve any and all matters related to any Cause of Action;

7.　　　　adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.　　　　enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

9.　　　　resolve any avoidance or recovery actions under sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

10.　　　　resolve any cases, claims, controversies, suits, disputes or causes of action that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

11.　　　　resolve any cases, controversies, suits, disputes or causes of action that may arise in connection with or under the DIP Loan Agreement;

12.　　　　resolve any cases, controversies, suits, disputes or causes of action that may arise in connection with or under the Notes;

13.　　　　issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

14.　　　　resolve any cases, controversies, suits, disputes or causes of action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in Article IX and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

15.　　　　enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

16.　　　　determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.      consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code, including requests by Professionals for payment of Accrued Professional Fees;

20.      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

21.      hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

22.      hear and determine all disputes involving the existence, nature or scope of the TSN Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.      enforce all orders previously entered by the Bankruptcy Court;

24.      hear any other matter not inconsistent with the Bankruptcy Code; and

25.      enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article X.B, and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the TSN Debtors, the Reorganized TSN Debtors and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the TSN Debtors.

B.      *Additional Documents*

On or before the Effective Date, the TSN Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The TSN Debtors or Reorganized TSN Debtors, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of Creditors' Committee*

On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights, duties, responsibilities and obligations from or related to the Chapter 11 Cases. In addition, the retention and employment of the Creditors' Committee's attorneys, accountants and other agents shall terminate on the Effective Date.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

E.    *Service of Documents*

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the TSN Debtors or the Reorganized TSN Debtors shall be served on:

TerreStar Networks, Inc.
12010 Sunset Hills Road, 6th Flr.
Reston, Virginia 20190
Attn:  Doug Brandon, General Counsel

with copies to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attn: Ira Dizengoff
       Arik Preis

After the Effective Date, the TSN Debtors may, in their sole discretion, notify Entities that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the TSN Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the TSN Debtors' consent; and (3) nonseverable and mutually dependent.

H.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the TSN Debtors' counsel, by contacting Ashleigh L. Blaylock, Akin Gump

Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, D.C. 20036, Telephone: (202) 887-4064, email: blaylocka@akingump.com, at the Bankruptcy Court's web site at *www.ecf.nysb.uscourts.gov* or at the website of the Notice and Claims Agent, at http://www.terrestarinfo.com.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Votes Solicited in Good Faith*

        Upon entry of the Confirmation Order, the TSN Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the TSN Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Plan securities offered and sold under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the New Common Stock or New Preferred Stock offered and sold under the Plan.

J.      *Closing of Chapter 11 Cases*

        The Reorganized TSN Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

K.      *Conflicts*

        Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however,* that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control; and *provided further, however*, that to the extent that any provision of the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

Dated:  December 2, 2010

                                        Respectfully submitted,

                                        TerreStar Networks Inc. (for itself and on behalf of each
                                        of the TSN Debtors)


                                        By: */s/ Jeffrey Epstein*
                                             Name:  Jeffrey Epstein
                                             Title:  Chief Executive Officer