**REED SMITH LLP**
Nicole K. O'Sullivan, Esq.
599 Lexington Avenue
New York, NY  10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450

    -and-

Kurt F. Gwynne, Esq.
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 778-7550
Facsimile:  (302) 778-7575

*Counsel for Space Systems/Loral, Inc.*

**UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | )   Chapter 11 |
| TERRESTAR NETWORKS INC., *et al.* | )   Case No. 10-15446 (SHL) |
| | )   (Jointly Administered) |
|                    *Debtors.* | ) |

**MOTION OF SPACE SYSTEMS/LORAL, INC. FOR AN ORDER GRANTING RELIEF
FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**

TO:    THE HONORABLE SEAN H. LANE
          UNITED STATES BANKRUPTCY JUDGE

      Space Systems/Loral, Inc. ("SS/L"), by and through its undersigned attorneys, files this Motion for an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) (the "Motion").  In support of the Motion, SS/L respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. Prior to the Petition Date, the Debtor defaulted on more than $16 million of its payment obligations under the TS-2 Contract. As a result, construction of the TS-2 Satellite was suspended.

2. Harris, the subcontractor that is manufacturing the reflector for the TS-2 Satellite, informed SS/L that the allowed time period for suspending construction of the reflector will expire on April 29, 2011. Harris has demanded (a) payment of $1,304,475 to continue the Stop Work Period and (b) SS/L's commitment to pay $5.0-$6.5 million to restart construction of the TS-2 Satellite. Otherwise, Harris will terminate the Subcontract. If the Harris Subcontract is terminated, the cost of completing the TS-2 Satellite will be increased greatly and the schedule for delivery will be greatly lengthened.

3. Due to, among other things, the impending termination of the Harris Subcontract and the fact that the Debtor has not yet paid the Cure Amount, cause exists to provide SS/L with stay relief to terminate the TS-2 Contract.

4. SS/L and the Debtor are currently working towards a resolution of the issues involved in this Motion. SS/L anticipates resolving this matter with the Debtor prior to the April 26, 2011 hearing. If the parties reach a resolution, SS/L anticipates that the parties will present such resolution at the hearing. Thus, SS/L files this Motion in case the parties do not reach such a resolution.

---

[1] Capitalized terms used in the Preliminary Statement are defined *infra*.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicate for the relief sought herein is Section 362(d)(1) of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND

### A. The TS-2 Contract and the TS-2 Satellite

7. On October 19, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Prior to the Petition Date, SS/L and the Debtor entered into, among other contracts, an Amended and Restated Contract for TerreStar-2 dated December 12, 2007 (as may be amended from time to time, the "TS-2 Contract"). A copy of the TS-2 Contract (without exhibits) is attached as Exhibit A to the Declaration of Ronald Haley, SS/L's Chief Financial Officer and Senior Vice President, in Support of the Motion (the "Haley Declaration").

8. The TS-2 Contract provides for SS/L's manufacture of the TerreStar-2 satellite ("TS-2 Satellite"). The TS-2 Contract also provides for launch support services, mission operations support services, risk management insurance procurement support, training services and anomaly and other support relating to the TS-2 Satellite.

### B. The Debtor's Default under the TS-2 Contract

3

9. By letter dated August 23, 2010, SS/L exercised its rights under Article 5.3 of the TS-2 Contract to suspend its performance under the TS-2 Contract as of September 1, 2010, due to the Debtor's payment defaults in the amount of $16,247,500. A copy of the August 23, 2010 letter is attached as <u>Exhibit B</u> to the Haley Declaration. Including prepetition interest, the Debtor's prepetition arrearages total $16,512,722.01. *See* Haley Declaration at ¶¶ 11 and 12.[2] The unpaid invoices totaling $16,512,722.01 are attached as <u>Exhibit C</u> to the Haley Declaration.

10. The Debtor also owes post-petition interest, fees and costs (including reasonable attorneys' fees) to SS/L.

11. SS/L reserved its right to terminate the TS-2 Contract if the Debtor failed to cure those defaults within 60 days.

12. As of the time construction of the TS-2 Satellite was suspended, the Debtor asserts that it was more than ninety percent (90%) complete and approximately ninety-five percent (95%) of the construction costs had been paid. *See* Debtors' Disclosure Statement dated December 23, 2010 (D.I. 331) (the "<u>Disclosure Statement</u>") at IV.A, p. 22 n. 29.

**C. The Value of the TS-2 Satellite**

13. The Debtors operate a next-generation mobile satellite service. *See* Disclosure Statement at IV.A, p. 19. Their "business model is based on integrating ground-based technology and satellite technology into a single, North American mobile communications system intended to provide communication service in areas where traditional mobile networks currently do not reach or are unavailable." *See* Disclosure Statement at IV.B(i), p. 20.

---

[2] If the Debtor assumes the TS-2 Contract, the Debtor also will be required to pay post-petition interest on the arrearages.

4

14.     On January 13, 2010, the FCC approved the "ancillary terrestrial component" ("ATC") of the Debtors' services.  *See* Disclosure Statement at p. 22.  ATC is a "ground based infrastructure in a mobile satellite system to enhance the availability, efficiency, and economic viability of the coverage of the satellite network."  *See* Disclosure Statement at p. 22 n. 31.  Maintaining ATC authorization requires that the Debtors be able to access a "completed and operational ground spare satellite."  *See* Disclosure Statement at p. 22 n.29.  The Debtors intend the TS-2 Satellite to serve as the completed and operational ground spare satellite and are relying upon the construction of the TS-2 Satellite to remain compliant with the FCC's standards for ATC authorization.[3]  *See* Disclosure Statement at p. 22 n. 29.  The ATC authorization is critical to the Debtors' "ability to operate a combined satellite and terrestrial network."  *See* Disclosure Statement at IV.B(i), p. 23.

15.     At a hearing before this Court on November 16, 2010, Steven Zelin ("Zelin"), a senior managing director of Blackstone Advisory Partners, L.P., financial advisor to the Debtors, testified that the TS-2 Satellite was appraised in the summer of 2010 at a value of approximately $200,000,000.  *See* Transcript of November 16, 2010 Hearing ("Tr. of 11/16/10 Hrg.;" D.I. 185) at p. 74.  Zelin further testified that the current balance of the purchase money credit agreement[4] secured by the TS-2 Satellite is between $85,000,000 to $87,000,000, leaving the Debtor with approximately $100,000,000 of possible equity in the TS-2 Satellite (after payment of the prepetition cure amount).  *See* Tr. of 11/16/10 Hrg. at p. 75.

---

[3] The FCC may eliminate the requirement for a ground spare satellite for ATC authorization.

[4] On February 5, 2008, the Debtor, as borrower, U.S. Bank, as collateral agent, and Harbinger Capital Partners LLC and EchoStar Corporation as lenders entered into a $100,000,000 Purchase Money Credit Agreement (the "PMCA").  The Debtor used the funds borrowed under the PMCA to finance the Debtor's payment obligations under the TS-2 Contract.

16.     As the Debtor further explained in the notes to its liquidation analysis accompanying the Disclosure Statement, on August 17, 2010, Duff & Phelps, LLC ("D&P") was engaged to appraise the TS-2 Satellite. *See* Liquidation Analysis, Note A (D.I. 212). D&P valued the TS-2 Satellite between $185 million and $210 million. *See* Liquidation Analysis, Note A (D.I. 212). Even in a chapter 7 liquidation, the Debtor valued the TS-2 Satellite at $135 million to $158 million (a 25% discount to the D&P value range). *See* Liquidation Analysis, Note A (D.I. 212)

### D.    The Debtor's Failed Assumption of the TS-2 Contract

17.     On February 9, 2011, the Debtor identified the TS-2 Contract as among the contracts to be assumed under the Fourth Amended Joint Chapter 11 Plan of TerreStar Networks Inc., TerreStar National Services Inc, 0887729 B.C. Ltd., TerreStar License Inc., TerreStar Networks Holdings (Canada) Inc., and TerreStar Networks (Canada) Inc. (the "Plan"). *See* Assumed Executory Contract and Unexpired Lease List (D.I. 405), Ex. E, p. 8. The Debtor's proposed cure amount was $16,247,500.

18.     Ultimately, the Debtor withdrew its Plan due to unresolved issues among certain creditor constituencies.

### E.    The Adversary Proceeding

19.     On January 18, 2011, the Official Committee of Unsecured Creditors (the "Committee") instituted an adversary proceeding, Adv. Pro. No. 11-01268 (the "Adversary Proceeding"), against U.S. Bank, in its capacity as Indenture Trustee and Collateral Agent for the holders of the 15% Senior Secured PIK Notes due 2014 (the "Senior Secured Notes"). *See* Adv. D.I. 1.

6

20. By the Adversary Proceeding, the Committee is seeking a declaratory judgment from this Court that the Debtor's interest (if any) in the TS-2 Satellite is excluded from the assets securing the Senior Secured Notes. The Committee and U.S. Bank have agreed to adjourn the Adversary Proceeding at this time. *See* Adv. D.I. 10.

### F. Harris, the TS-2 Contract Subcontractor, and the Impending Expiration of the Stop Work Period

21. As indicated above, work on the TS-2 Satellite has been stopped since September 1, 2010. Harris Corporation ("Harris") is the subcontractor that is manufacturing the reflector for the TS-2 Satellite. Recently, SS/L has had discussions with Harris regarding the expiration of the "stop work" time period (the "Stop Work Period") permitted under the Harris subcontract. *See* Fixed Price Procurement Order Terms & Conditions SS/L P-102 (the "Subcontract") at ¶ 23. A copy of the Subcontract (and related documents) is attached as Exhibit D to the Haley Declaration.

22. The Stop Work Period expires on April 29, 2011.

23. In exchange for extending the Stop Work Period and continuing to store the reflector, Harris seeks the following payments, which total $1,304,475 (the "Stop Work Fees"):

- $510,485 for Harris' October 21, 2010 claim for the actual cost of stopping work and protecting the TS-2 Satellite reflector in September 2010;

- $136,000 for installation of a shroud to protect and secure the reflector for long term storage;

- $60,000 down payment for storage fees commencing as of September 24, 2010 until the reflector is removed from storage ($10,000 per month, to be paid in $60,000 increments each six months); and

- $597,990 partial payment of certain milestones for work already completed at the time the Stop Work Period commenced.

7

*See* March 15, 2011 Letter from Harris ("March 15 Letter"), which is attached as Exhibit E to the Haley Declaration.

24. Harris has demanded payment of the $1,304,475 prior to the expiration of the Stop Work Period (as currently extended by Harris) on April 29, 2011. *See* March 15 Letter (Exhibit E to Haley Declaration).

25. To minimize near term expenditures, Harris proposes to extend the Stop Work Period on the reflector for the TS-2 Satellite for approximately eighteen (18) months until September 30, 2012. Harris estimates at $5.0 million to $6.5 million the cost of restarting construction of the TS-2 Satellite (the "Restart Fees"). As part of any agreement to extend the Stop Work Period, Harris also has demanded that SS/L agree to the future payment of the Restart Fees.

26. Under the TS-2 Contract, all costs and fees payable by SS/L under the Subcontract attributable to the Stop Work Period are passed through to, and must be paid by, the Debtor under the TS-2 Contract. *See* TS-2 Contract at § 5.3.2.

## RELIEF REQUESTED

27. If the Debtor and SS/L do not reach a mutually agreeable resolution with respect to the assumption of the TS-2 Contract by April 26, 2011, SS/L respectfully requests that this Court grant SS/L relief from the automatic stay to terminate the TS-2 Contract. SS/L and the Debtor are actively engaged in good faith negotiations regarding such a resolution. SS/L seeks the relief requested herein in case the parties do not reach such a resolution.

28. SS/L further requests that an Order granting this Motion be effective immediately in light of the April 29, 2011, deadline imposed by Harris.

## BASIS FOR RELIEF REQUESTED

A. **Stay Relief under Section 362(d)(1) of the Bankruptcy Code Is Mandatory When "Cause" Exists.**

29. The operative effect of section 362 of the Bankruptcy Code is to enjoin "any acts to obtain possession of property of the estate," which includes prohibiting a non-debtor party to an executory contract from terminating that contract without Court approval. *See* 11 U.S.C. §362(a)(3).

30. Section 362(d) of the Bankruptcy Code provides a mechanism for obtaining relief from the automatic stay to enable a party to a contract to exercise its rights thereunder. Section 362 provides that

> On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. §362(d)(1) (emphasis added); *see* 11 U.S.C. § 102(3) (providing that "'includes' and 'including' are not limiting" for the purposes of construing provisions of the Bankruptcy Code).

31. The Bankruptcy Code does not define "cause." *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990)("Neither the statute nor the legislative history defines the term for cause….")(quotations omitted). The "legislative history indicates that the 'facts of each request will determine whether relief is appropriate under the circumstances.'" *Sonnax*, 907 F.2d at 1286 (*quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess. 343-44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6300). Thus, whether "cause" exists should be decided on a case-by-case basis. *See In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999)("Thus the facts of each request will determine whether relief is appropriate under the circumstances."); *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004) ("cause" is determined on a case-by-case basis).

32. Both prepetition and postpetition conduct is relevant under a "totality of the circumstances" analysis in deciding whether "cause" exists to lift the automatic stay. *In re Mack*, 347 B.R. 911, 916 (Bankr. M.D.Fla. 2006), *aff'd*, 2007 WL 1222575 (M.D.Fla. 2007).

33. "The burden of proof on a motion to lift or modify the automatic stay is a shifting one." *Sonnax*, 907 F.2d at 1285. If the movant makes an initial showing of cause, the burden shifts to the debtor to prove that cause does not exist. *See id.; Balco Equities*, 312 B.R. at 749 (debtor bears burden of proving lack of "cause").

34. "Section 362(d) is mandatory, not permissive. Congress has provided that the Court *shall* grant relief from the stay" when "cause" is shown. *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000).

**B. If The Debtor Does Not, or Is Unable To, Assume the TS-2 Contract, SS/L Is Entitled To Relief from the Automatic Stay "For Cause" Pursuant to Section 362(d)(1).**

35. In this instance, if the Debtor has not assumed the TS-2 Contract prior to April 29, 2011, relief from automatic stay would be mandatory because "cause" exists to permit SS/L to terminate the TS-2 Contract.

36. If the Debtor and SS/L do not reach a mutually agreeable resolution with respect to the assumption of the TS-2 Contract by April 26, 2011, this Court should grant SS/L relief from the automatic stay to terminate the TS-2 Contract. (SS/L and the Debtor are actively engaged in good faith negotiations regarding such a resolution).

37. The Debtor withdrew the Plan and, presently, there is no clear indication when or how the Debtor will exit chapter 11. While the Debtor is contemplating its exit strategies, SS/L is confronted with the Stop Work Period expiration on April 29, 2011. The only means to avoid

10

termination of the Subcontract is for SS/L to (a) pay a Stop Work Fee in the amount of $1,304,457 and (b) agree to pay a Restart Fee in the amount of $5.0 million to $6.5 million.

38.     SS/L should not have to expose itself to greater risk of loss due to the Debtor's failure to assume the TS-2 Contract. *See generally In re Beker Indus. Corp.*, 64 B.R. 890, 896-98 (Bankr. S.D.N.Y. 1986) ("The obligee is not expected to incur significant added detriment while those who have an interest in the property or the bankruptcy estate are unable to resolve how to deal with an asset. Particularly is that so when the delay adds uncertainty and threatens the obligee with additional post-petition costs.").

39.     If the Debtor does not assume the TS-2 Contract and pay the cure amount (including amounts due to Harris) prior to April 29, 2011, the Subcontract will be terminated. Once the Subcontract is terminated, SS/L should be entitled to terminate the TS-2 Contract. *See In re Pocono Springs Co.*, 1997 WL 347906, at * 9 (Bankr. E.D.Pa. June 18, 1997) ("BEI shall file a motion to assume its executory contracts with DPSU on or before August 15, 1997, or the said contracts shall be deemed rejected. If the contracts are rejected, or it [sic] BEI is unable to successfully assume the said contracts, DPSU is granted relief from the automatic stay to take all measures appropriate under state law to terminate those contracts."); *Buffkin v. Goodson (In re Goodson)*, 12 B.R. 883, 885 (Bankr. S.D.Fla. 1981) (lease terminated where debtor failed to cure pre-petition default and provide adequate assurance of future performance).

40.     If the Debtor does not assume the TS-2 Contract and cure then-existing defaults thereunder, SS/L should not be forced to further increase its exposure, which already exceeds $16.5 million, and effectively provide financing to the Debtor without assurance of being paid back. Accordingly, SS/L should be entitled to terminate the TS-2 Contract.

11

    **C.**    **The Hearing on April 26, 2011 Must be a Final Hearing on SS/L's Request for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1).**

41.    Section 362(e)(1) of the Bankruptcy Code provides that "[a] hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section." 11 U.S.C. § 362(e)(1). In light of the upcoming expiration of the Stop Work Period on April 29, 2011, SS/L requests that the April 26, 2011 hearing on this Motion be a final, evidentiary hearing.

    **D.**    **An Order Granting Stay Relief Should Be Effective Immediately.**

42.    Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of he order, unless the court orders otherwise." See Fed.R.Bankr.P. 4001(a)(3).

43.    Harris' deadline is April 29, 2011. The hearing on this Motion is scheduled for April 26, 2011, just three (3) days prior to the expiration of the Stop Work Period. Thus, there is no reason to stay for 14 days an Order granting this Motion. Rather, an order granting this Motion should be effective immediately.

### NOTICE

44.    SS/L has provided notice of this Motion to (a) the Debtors, (b) the Office of the United States Trustee for Region 2, (c) counsel to the Official Committee of Unsecured Creditors, and (d) the parties in interest requesting notice in accordance with Bankruptcy Rule 2002(i). SS/L respectfully submits that no further notice is necessary.

### NO PREVIOUS REQUEST

45.    No previous motion for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, SS/L respectfully requests that the Court enter an order, substantially in the form attached to this Motion as Exhibit A, (i) granting the Motion, (ii) lifting the automatic stay for "cause" so that SS/L may terminate the TS-2 Contract, and (iii) granting SS/L such further relief as is appropriate.

Dated:  April 5, 2011                                 REED SMITH LLP

                                     By:   */s/ Nicole K. O'Sullivan*
                                             Nicole K. O'Sullivan, Esquire (No. NO9872)
                                             599 Lexington Avenue, Floor 22
                                             New York, NY 10022
                                             Phone: (212) 521-5400
                                             Facsimile: (212) 521-5450
                                             E-mail: nosullivan@reedsmith.com

                                                         and

                                             Kurt F. Gwynne, Esquire (*pro hac vice*)
                                             Kathleen A. Murphy, Esquire
                                             1201 Market Street, Suite 1500
                                             Wilmington, DE  19801
                                             Phone:  (302) 778-7500
                                             Facsimile:  (302) 778-7575
                                             E-mail:  kgwynne@reedsmith.com
                                                       kmurphy@reedsmith.com

                                             Counsel to Space Systems/Loral, Inc.